**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Cheritylee Ann Stevens and David Matthew Stevens,**

**Plaintiffs,**

**v.**

**Brookdale Dodge, Inc.,**

**Defendant.**

**Civil No. 00-2632 (JEL/JGL)**

**REPORT AND RECOMMENDATION**

---

Thomas J. Lyons, Esq., on behalf of Plaintiffs.

Gregory J. Johnson, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on June 26, 2002, on Defendant's Motion for Summary Judgment (Doc. No. 17) and Plaintiffs' Cross Motion for Summary Judgment (Doc. No. 21). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendant's motion be denied and Plaintiffs' motion be granted.

## I. FACTUAL BACKGROUND

Defendant is an automobile dealership located in Brooklyn Center, Minnesota. (Affidavit of Michael Martinez (Martinez Aff.) ¶ 2.) Defendant maintains business relationships with lending institutions, which extend financing to Defendant's customers. Id. If a customer desires,

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Defendant will attempt to arrange financing with one of these lending institutions, to facilitate the sale of its automobiles. Id. In such a case, Defendant will complete the installment contract forms provided by the lending institution, and then assign the contract to the lending institution. Id.

On January 11, 2000, Plaintiffs purchased from Defendant a 1999 Dodge Stratus for a purchase price of $14,490, with a $4,000 trade-in allowance on their 1991 Honda Civic, and a $1,500 cash down payment. (Martinez Aff. ¶ 3.) Plaintiffs executed a vehicle purchase contract setting forth the terms of the purchase. (Martinez Aff.; Ex. A.) The contract stated "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." Id.

After Plaintiffs executed the vehicle purchase contract, they completed a service contract application. (Martinez Aff.; Ex. B.) Defendant's Finance and Insurance (F&I) Manager, Michael Martinez, then completed a Community Credit installment contract, and presented it to Plaintiffs. (Martinez Aff. ¶ 4.) The installment contract contained a segregated truth-in-lending disclosure box, which identified in bold, the **"Annual Percentage Rate"** (15.00%), **"Finance Charge"** ($6,602.51) **"Amount Financed"** ($15,153.49), **"Total of Payments"** ($21,756.00), and **"Total Sale Price"** ($23,485.53). (Martinez Aff.; Ex. C.) The installment contract also contained a paragraph titled in bold, **"Buyer's Agreement Regarding Relationship with Seller, Price Quotation and Seller's Right to Sell Contract."** Id. This paragraph included a sentence stating "I have the right and opportunity to obtain financing for the vehicle from any source that I choose, and I have chosen to obtain such financing through the seller." Id. It also contained a paragraph titled in bold **"Refund for Early Payment in Full."** Id. This paragraph included a

sentence stating "I may prepay this contract at any time." Id.

Plaintiffs reviewed the installment contract and signed it. (Martinez Aff. ¶ 5.) Martinez was standing in front of Plaintiffs while he went over the financing terms with them. (Affidavit of Cheritylee Stevens and David Stevens (Stevens Aff.) ¶ 6.) He also had one hand on the contract during this time. Id. After Plaintiffs signed, Martinez tore off a carbon copy of the installment contract and gave it to Plaintiffs. Id. Plaintiffs then took delivery of the vehicle. (Stevens Aff. ¶ 4.) Martinez did not give Plaintiffs a written copy of the financing terms at any time before presenting the contract for their signature. Id. Plaintiffs also did not request a copy of the installment contract before they signed it. Id.

On December 4, 2000, Plaintiffs filed a Complaint alleging that Defendant violated the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, et seq.. (Complaint.) Specifically, Plaintiffs alleged that Defendant violated 15 U.S.C. § 1638(b)(1) and Revised Regulation Z, 12 C.F.R. § 226.17, by failing to provide TILA disclosures prior to the extension of credit.

## II. DISCUSSION

### A. Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any," which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enterprise Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996). Nevertheless, the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.' Fed. Rule Civ. Proc. 1." Celotex, 477 U.S. at 327.

"Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial." Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002) citing Celotex, 477 U.S. at 323. "The nonmoving party may not, however, 'rest on mere allegations or denials' but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) quoting Fed. R. Civ. P. 56(e). "In opposing a motion for summary judgment, the nonmovant must make a showing that, if reduced to admissible evidence, would be sufficient to carry the nonmovant's burden of proof at trial." Celotex, 477 U.S. at 323.

**B. TILA.**

The Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq., was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate credit billing and credit card practices." 15 U.S.C. § 1601(a).

The specific provision at issue in the present case requires a creditor "for each consumer credit transaction plan other than under an open end credit plan," to disclose: (1) its identity; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; and (5) the sum of the amount financed, or "the total of payments" 15 U.S.C. § 1638(a). In addition, a creditor is required to make these disclosures "before the credit is extended" and "conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization." 15 U.S.C. § 1638(b)(1).

Pursuant to its grant of authority, the Federal Reserve Board adopted Regulation Z, 12 C.F.R. § 226.1, et seq., for implementing TILA. Regulation Z requires the following:

> (a) Form of disclosures
>
> (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep
>
> (b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction.

12 C.F.R. § 226.17.

> Because the TILA is a remedial consumer protection statute, we have held it "should be construed liberally in favor of the consumer." *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir.1998); *accord Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948, 950 (6th Cir.1998) ("We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer."); *Fairley v. Turan-Foley Imps., Inc.*, 65 F.3d 475, 482 (5th Cir.1995) ("The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers....").

Rossman v. Fleet Bank Nat'l Ass'n, 280 F.3d 384, 390 (3d Cir. 2002).

**1. Statutory Damages Under TILA.**

The following are the relevant TILA provisions for statutory damages:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part [part B], including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of–
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction.... or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000; or
>
> (B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; . . .
>
> In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title....

15 U.S.C. § 1640(a).

### C. <u>The Parties' Positions.</u>

#### 1. TILA Violation.

**Defendant.**

Defendant states that it made all the required disclosures in the present case. Defendant maintains that TILA has always allowed a creditor "to make the TIL disclosures on the installment contract to be signed by the customer, as was done in Plaintiffs' transaction." Therefore, Defendant argues that it is entitled to judgment as a matter of law in the present case.

Addressing TILA's legislative history, Defendant explains that Congress' concern has always been to ensure that consumers understand the credit terms they are being offered, and are able to shop effectively for the best credit buy. Defendant argues that it attains this goal through its practice of providing the TIL disclosures in a segregated section of the actual contract its customers sign. It emphasizes that courts have held TIL disclosures may be made in the underlying contract or note to be signed by the consumer at the closing of the transaction. As examples, Defendant cites <u>Bissette v. Colonial Mortgage Corp.</u>, 477 F.2d 1245 (D.C. Cir. 1973), and <u>Stravides v. Mellon Nat'l Bank & Trust Co.</u>, 353 F. Supp. 1072 (W.D. Pa.), <u>aff'd on other grounds</u>, 487 F.2d 953 (3d Cir. 1973). These courts considered and rejected the argument that TILA required the disclosures be provided in a separate document. In both cases, the courts considered the text, purpose, and legislative history of TILA, as well as the implementing regulations.

Defendant distinguishes its practice from those in which consumers must sign commitment letters, or purchase orders prior to seeing the TIL disclosures in the actual contracts. In the latter case, consumers are forced to obligate themselves prior to being presented with the

TIL disclosures. Defendant explains that the courts in Postow v. OBA Federal Savings & Loans Ass'n, 627 F.2d 1370 (D.C. Cir. 1980), and Tirado v. "Z" Frank, Inc., 522 F. Supp. 405 (N.D. Ill. 1981) found this practice violates TILA. Unlike these cases, Plaintiffs in the present case entered no contractual obligations prior to being presented with the TIL disclosures.

**a. Legislative history.**

Defendant argues that its practice also does not violate the Truth in Lending Simplification Reform Act (TILSRA) that Congress passed in 1980, or the corresponding Revised Regulation Z. Under 15 U.S.C. § 1638(b)(1), the relevant disclosures "shall be conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization." Defendant states that the term "segregated" implies the disclosures may be provided on the actual contract. Further, according to Defendant, this interpretation is consistent with the legislative history behind TILSRA. Defendant quotes the following statement of purpose for TILSRA,

> First, to eliminate unnecessary disclosures which detract from key credit information; second, to limit a creditor's liability so that damages attach only to violations of a meaningful nature; third, to make compliance easier for creditors, and more understandable to consumers by requiring the Federal Reserve Board to issue simple, easily understood model forms and clauses . . ; fourth, to provide increased information to consumers through 'shoppers guides to credit'; and finally, to strengthen administrative enforcement of the act.

S. 1312, 95th Cong., 123 Cong. Rec. 11332-33 (Apr. 20, 1977).

Defendant explains that in a memorandum supporting its draft bill on simplification of truth in lending, the Federal Reserve Board (FRB) explicitly chose not to require that disclosures be made on a separate piece of paper. The FRB stated that while a separate statement would

enhance the visibility of the disclosures, "its effectiveness would depend on how, in fact, the separate statement is delivered, and it would be difficult to prevent a creditor from burying the disclosure statement amid other papers." Further, the FRB stated that "[t]his alternative would also add another piece of paper in all transactions and could have the effect of requiring duplication of some items of information." In the 1979 Senate Report accompanying S.108, the committee stated that it had adopted the FRB's suggestion with minor variations. The language of the Senate Report indicates that it did not modify the FRB's recommendations concerning the placement of the disclosures.

Following enactment of TILSRA, the FRB published proposed revisions to Regulation Z. In its December 5, 1980 proposal, the FRB required that the disclosures be made "either on the credit contract or on a separate document." Federal Register, Vol. 45, No. 236 at p. 80706 (December 5, 1980). The FRB subsequently decided to eliminate this phrase because it was unnecessary. Federal Register, Vol. 46, No. 66 at p. 20873 (April 7, 1981). Defendant argues that the additional language was unnecessary because "authorization for this method of disclosure was implicit with the requirement that the TIL disclosures be 'segregated' from the other contract terms." Finally, Defendant observes that the Official Staff Commentary to Regulation Z actually states "the disclosures may appear on a separate sheet of paper or may be set off from other information on the contract . . ." 12 C.F.R. Pt. 226, Supp. I, § 226.17(a)(1), cmt. 2 (2000). Therefore, Defendant concludes that the statute and implementing regulation have always permitted creditors to make the TIL disclosures on the actual underlying contract.

**b. <u>Unfavorable case law.</u>**

Defendant addresses the case law unfavorable to its position by stating that it is either

distinguishable, or wrongly decided. Defendant contends that Lozada v. Dale Baker Oldsmobile, Inc., 197 F.R.D. 321, 326 (W.D. Mich. 2000) is distinguishable, because the dealership failed to provide copies of retail installment contracts to its purchaser "until some days or weeks after" the agreements were signed. Unlike Lozada, Defendant in the present case provided a copy of its contract immediately after Plaintiffs signed it.

Defendant argues that Polk v. Crown Auto, Inc., 221 F.3d 691 (4th Cir. 2000) is also distinguishable. In Polk, the dealership conceded that it had not made the required TIL disclosures in writing in a form the plaintiff could keep prior to consummating the transaction. In addition, Defendant cites to the plaintiff's brief in Polk, in which the plaintiff alleged the dealership first obligated him to accept $177.39 of credit on a handwritten Buyer's Order, and then rewrote the $177.39 credit obligation into a retail installment contract. From these facts, Defendant argues that "the customer in Polk had become obligated to credit terms before the required TIL disclosures were made." And the court in Postow had already explained that this practice amounted to untimely disclosures.

Further, Defendant argues that in Polk, "the court's analysis is fundamentally flawed." Defendant notes that in Fong Vang v. Morrie's Minnetonka Ford, Civil No. 01-82 (Frank, District Judge, December 11, 2001), and Peter v. Village Imports Co., Civil No. 01-12 (Doty, District Judge, October 9, 2001), Minnesota courts chose not to follow Polk's holding. Defendant also repeats its earlier argument that the legislative history of TILSRA demonstrates Congress always intended to permit creditors to make the TIL disclosures on the underlying contract. Further, "the main thrust of the TILSRA was to eliminate unnecessary disclosures which detracted from key credit information." Defendant asserts that "the court's ruling in Polk,

however, effectively eliminates a creditor's ability to make the TIL disclosures on the contract itself." Defendant contends that this conclusion is in conflict with the language of Revised Regulation Z, which allows a creditor to include an "acknowledgment of receipt" with the disclosures. According to Defendant, the acknowledgment of receipt provision demonstrates that the dealership "need not furnish a customer with a separate TIL disclosure before it presents the customer with the installment contract."

Finally, with respect to Polk, Defendant states that 15 U.S.C. § 1638(b)(1) and 12 C.F.R. § 226.17 refer to one set of mandatory disclosures. The court's ruling in Polk, however, requires dealerships to furnish two sets, "resulting in confusion and duplication of information." Defendant isolates the provision requiring a creditor to make the disclosures "in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Defendant argues that this phrase must refer to the underlying contract. Defendant cites Dryden v. Lou Budke's Arrow Finance Co., 661 F.2d 1186, 1189 (8th Cir. 1981), to explain that the purpose of providing the underlying contract is to allow the consumer to "safeguard his or her rights over the course of the loan and avoid default." The court in Polk, however, interpreted this phrase to relate to an earlier TIL disclosure. Defendant contends that "under Polk, a dealership would have no obligation under the TILA to furnish the customer with a copy of the installment contract signed by the customer.

Defendant states that "the TILA and applicable regulations should be interpreted in a fashion consistent with the intent of Congress and commercial reality. The commercial reality in an installment sale transaction for the purchase of a motor vehicle is that people buy cars on the spot." Defendant argues that the court in Stravides recognized this commercial reality, when it held that "the terms of the loan could be revealed before the credit was extended (just before the

buyer signed the papers in the dealer's officer) and could be disclosed in the loan papers themselves." 353 F. Supp. at 1078. Accordingly, Defendant asserts that the Court in the present case should adopt the same interpretation of TILA.

Defendant also states that the court in Polk erred in finding that a disclosure can only be meaningful if it occurs at a time when comparison shopping is still possible. Defendant explains that the court in Bissette recognized that the word meaningful "was more precisely intended to connote effectiveness of communication rather than effectiveness of result because the prime statutory goal was to eliminate the confusion generated by numbers which, because based on different computations, could not be easily juxtaposed to judge their relative desirability."

Moreover, Defendant explains that TILA's provisions for closed-end credit transactions are not the same as those dealing with mortgages. The mortgage section of TILA, and corresponding regulations, require that lenders hold open their terms for a certain amount of time to allow borrowers to effectively shop for better credit. But there are no similar provisions for closed-end credit transactions. Therefore, Defendant states that "the requirement that a creditor in a closed-end credit transaction furnish a TIL form to a customer (i.e., to make the disclosures in a form the customer may keep), as opposed to the requirement that TIL information be disclosed to the customer prior to consummation, has nothing to do with credit shopping." As a result, Defendant contends that Regulation Z should not be construed to require that dealerships furnish a separate TIL form to customers prior to reviewing and signing the contract, in order to allow them to take the form home to study before deciding whether to accept the terms.

Defendant also emphasizes that a purchaser does not become committed to any credit

terms until being presented with, viewing, and signing the contract, and taking delivery of the vehicle. Martinez also contests the assertion that he held the installment contract to the table with his hand. In addition, if that fact is material to the outcome of the TILA claim, Defendant argues it would "effectively eliminate any possibility that the case could be pursued on a class action basis because each customer would have to present individualized testimony as to the precise manner in which the dealership presented the installment contract to them." Further, the customer is still able to look for better credit after entering the contract, because the contract allows for full prepayment without penalty. Hence, providing the customer with a copy of the contract after it is signed, satisfies TILA's requirements. Therefore, Defendant concludes that summary judgment is appropriate.

**Plaintiffs.**

Plaintiffs respond that they, rather than Defendant, should be granted summary judgment. They argue that Defendant "violated the Truth in Lending Act by failing to deliver to them the required disclosures in writing, in a form that they could keep, prior to consummation of the transaction." Plaintiffs contend that Defendant has "through crafty and discriminating use of legislative history, tried to reform TILA from a remedial consumer protection statute into a creditor protection statute."

Citing Mourning v. Family Publications Service, Inc., 411 U.S. 356, 363-64 (1973), they quote the United States Supreme Court's statement that TILA was designed to promote "the efficient functioning of a free economic system," by allowing customers to compare the costs of credit. Plaintiffs concede that TILA does not require a creditor to hold a deal open while the customer goes credit shopping. They state, however,

> this is completely irrelevant to whether a consumer can take the TILA disclosures to another dealership and ask whether they can beat these terms. It also begs the question of why a dealership (which makes its money by selling vehicles and related products) would offer a consumer terms on day one that it does not intend to offer on day two.

Plaintiffs explain that

> the statute and its implementing regulations are clear. "[T]he disclosures under this subsection (a) of this section shall be made before the credit is extended." 15 U.S.C. § 1638(b)(1). "The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). The creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 226.17(b). Taken together these provisions mean just what they say, that the financing disclosures mandated by 15 U.S.C. § 1638(a) must be given to a consumer in writing, in a form that the consumer can keep, before consummation of the transaction.

**a. <u>Legislative history.</u>**

Plaintiffs observe that when Congress amended TILA, it eliminated from § 1638(b)(1) the phrase, "and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor."[1] Plaintiffs contend that if anything can be inferred from this elimination, it is that Congress intended to revoke the creditor's ability to include the disclosure on the installment sales contract.

Plaintiffs offer a similar explanation with respect to the modified language of Regulation Z. They also observe that the draft of regulation Z reads, "the disclosures shall be made clearly and conspicuously in writing in a form that the consumer may keep, either on the credit contract or on a separate document." But the enacted Regulation Z eliminated the phrase, "either on the

---

[1]This phrase was contained in 15 U.S.C. § 1639(b), which was repealed upon passage of TILSRA in 1980.

credit contract or on a separate document." Plaintiffs suggest that if this language was deleted as unnecessary, it was unnecessary because the corresponding language in the statute had been removed by the amendment. Hence, any deletion does not imply that a creditor can comply with TILA by presenting the disclosures only on the contract that the customer signs.

Plaintiffs address the FRB's memorandum in support of its draft bill by explaining that it was a submitted over two years before the statute was amended. Thus, its importance is questionable. In addition, Plaintiffs observe that the memorandum was in support of the FRB's own draft of the TILA amendment, and "neither the Court nor Plaintiffs have any idea of what the proposed draft bill actually said or whether any member of Congress considered this draft when amending TILA between 1977 and 1980." Hence, Defendant is merely speculating when it states that the initial draft contained the phrase, "and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor."

Finally, Plaintiffs explain that the legislative history Defendant presents is unnecessary, because it concerns the form of the disclosures, not the timing. Plaintiffs explain that timing, rather than form, is at issue in the present case.

Plaintiffs distinguish Bissette, Stravides, and Postow, by explaining that they were all interpreting TILA prior to its amendment. Plaintiffs maintain that all of these decisions depended on the since revoked phrase, "and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor."

Plaintiffs state that Polk and its progeny read the plain language of the current TILA to require that disclosures be made in writing, in a form the consumer can keep, before the consumer is obligated to the transaction. In addition, Plaintiffs cite Eighth Circuit cases, such as

First Nat'l Bank v. Office of the Comptroller of the Currency, 956 F.2d 1456 (8th Cir. 1992) for the proposition that TILA is to be interpreted according to its clear and unambiguous language.

Plaintiffs explain that the court in Polk recognized the meaning and purpose of TILA when it stated "[b]y having the terms of the credit disclosed in a form that he can take with him, the [consumer] can more readily compare those terms to the terms offered by other sellers." 221 F.3d at 692. Lozada, according to Plaintiffs, followed this same reasoning. Further, Plaintiffs contend that "following Polk and Lozada, the courts to consider the question have nearly unanimously held that providing the disclosures for the first time on the installment sales contract that Plaintiff must sign in order to consummate the transaction does not comply with the 'previous delivery requirement' of TILA."

Plaintiffs further argue that Lozada can not be distinguished from the present case on the ground that the consumers in Lozada did not receive copies of the contract until sometime after signing. To illustrate their point, Plaintiffs cite Spearman v. Tom Wood Pontiac, Cause No. IP00-13400-C-TG (S.D. Ind. July 30, 2001). In Spearman, the court stated that "[t]he courts that have considered the issue have uniformly concluded that merely showing the consumer the disclosures in a contract before he or she signs the contract is insufficient, the consumer must be given a copy of the disclosures before signing the contract." Under this general rule, the relevant question is simply whether the customer was given a copy of the disclosures before signing the contract. If the creditor fails to do so, the creditor violates TILA, and it is irrelevant how long after signing the contract the customer is provided with a copy.

**b. Unfavorable case law.**

Plaintiffs state that the cases which are unfavorable to their position were wrongly

decided. They cite Nigh v. Koons Buick Pontiac GMC, Inc., 143 F. Supp.2d 535 (E.D. Va. 2001), and Peter v. Village Imports Co., Civil No. 01-12 (Doty, District Judge, October 9, 2001) as examples. Plaintiffs state that both these cases "rest on the erroneous conclusion that giving a buyer credit terms on the form that he is to sign complies with the timing requirements of the Act." Plaintiffs observe that neither court cites any authority to support this position. In addition, Plaintiffs state that both incorrectly placed the burden on the customers to demand a copy of the credit terms prior to signing. Plaintiffs state that this approach is incorrect, because it is the creditor's burden to comply with TILA. Plaintiffs also state that Peter is distinguishable from the present case, because the interest rate in the retail installment contract was 0.00%.

Finally, Plaintiffs emphasize that Martinez kept his hand on the contract the entire time he was presenting it to them for signing. Plaintiffs argue that in such a situation, no reasonable person would believe he was free to take the contract to another dealership to shop for credit.

**2. Statutory Damages.**

Defendant asserts that it is entitled to summary judgment because Plaintiffs suffered no actual damages to support a TILA claim. Defendant explains that statutory damages under 15 U.S.C. § 1640(a)(2) are confined to certain enumerated TILA violations. The section at issue in the present case, § 1638(b)(1), is not one of these enumerated violations. Defendant explains that the court in Brown v. Payday Check Advance, Inc., 202 F.3d 987 (7th Cir. 2000) held that a § 1638(b)(1) violation does not give rise to statutory damages for this reason. Moreover, the court in Brown rejected the argument that a § 1638(b)(1) timing violation renders all of the disclosures ineffectual. Hence, according to Defendant, Plaintiffs can not claim that Defendant effectively committed one of the enumerated violations of § 1640(a)(2). As a result, Defendant

states that Plaintiffs are not entitled to statutory damages.

Plaintiffs argue that statutory damages are available for a 15 U.S.C. § 1638(b)(1) violation. They emphasize that when Polk was remanded to the district court, statutory damages were awarded on facts "indistinguishable" from the present case. Plaintiffs explain that statutory damages were also awarded for 15 U.S.C. § 1638(b)(1) violations in Lozada III, 145 F. Supp.2d 878, 886 (W.D. Mich. 2001), and Walters v. First State Bank, 134 F. Supp.2d 778, 782 (W.D. Va. 2001).

Plaintiffs observe that the section of TILA dealing with statutory damages is not exceedingly clear. Their argument for statutory damages is that 15 U.S.C. § 1640(a) contains a general grant of statutory damages. It then identifies specific sections and subsections of the statute where statutory damages might not apply. Finally, 15 U.S.C. § 1640(a) specifically identifies the provisions within the listed sections and subsections to which statutory damages will apply. By exclusion, Plaintiffs argue the other provisions within the listed sections and subsections will not receive statutory damages.

Plaintiffs then quote the court's language in Lozada III, to illustrate their argument. In Lozada III, the court explained as follows,

> the language of the exception as it applies to section 1638 specifically states that the exception applies only "[i]n connection with the disclosures referred to in section 1638 of this title". The exception does not state "in connection with section 1638 of this title" or "in connection with the requirements of section 1638 of this title". The TILA does not encompass only disclosure requirements. Instead, it requires certain disclosures, prohibits certain kinds of charges, and addresses the form and timing in which disclosures are made. As a result, the word "disclosures" is not a comprehensive description of all types of potential violations of the TILA generally or of § 1638 specifically. Instead, the word has its ordinary and more narrow meaning. *See* RANDOM HOUSE

> COLLEGE DICTIONARY, p. 379 (Rev. Ed. 1980) ("1. The act or instance of disclosing; exposure; revelation. 2. Something that is disclosed; a revelation.")
>
> The only "disclosures referred to in section 1638" are contained in subsection 1638(a), which is entitled, "Required disclosures by creditor." . . .
>
> However, the remaining subsections, §§ 1638(b) through 1638(d), are not "disclosures referred to in section 1638. . . ." 15 U.S.C. § 1640(a). Instead, they are provisions addressing the form and timing of the disclosures. A requirement that a disclosure be made in a certain manner and at a certain time does not fall within the previously stated definition of "disclosure." Because these provisions are not "disclosures referred to in section 1638." they are not within the language of the exception to statutory damages contained in § 1640(a). As a result, they fall within the general language of § 1640(a), which states that "except as otherwise provided" statutory damages are available.

145 F. Supp.2d at 888.

Alternatively, Plaintiffs argue that a violation of 15 U.S.C. § 1638(b)(1) is effectively also a violation of 15 U.S.C. § 1638(a), and, therefore, qualifies for statutory damages. They argue that "a disclosure after credit has been extended is in effect the same as no disclosure at all." They quote the court's statement in Lozada III, that "no basis exists for considering a disclosure made if it is not made in accordance with the requirements of § 1638(b)(1). Since § 1638(b)(1) expressly provides the form and time in which disclosures under § 1638(a) must be made, § 1638(a) disclosures may not be said to be made unless and until they are made in compliance with § 1638(b)(1)." 145 F. Supp.2d at 889.

Plaintiffs state that Brown is distinguishable from the present case, because in Brown the violation was failing to "conspicuously segregate" the cost-of-credit disclosures. In addition, Plaintiffs assert that "although Brown is distinguishable from the present case in a meaningful

way, to the extent that Brown has re-written the statue and eliminated the statutory damages where the statutory damages were available, Brown was decided in error."

**3. Estimate Claim.**

Defendant argues that it did not violate 12 C.F.R. § 226.17(c)(2) by not marking its disclosures as estimates. It argues that the disclosures were not estimates, because "there is not evidence that Community Credit, the lender that extended financing to Plaintiffs, had not approved financing at the time Plaintiffs reviewed and signed the installment contract." In addition, Defendant argues that Plaintiffs' claim "is entirely lacking in legal merit." Defendant cites multiple district court decisions holding that the condition of financing approval by a third-party lender does not require that the disclosed terms be labeled estimates. Finally, Defendant explains that Plaintiff have acknowledged that they have no actual damages, and a violation of 12 C.F.R. § 226.17(c)(2) does not entitle a consumer to TILA's statutory penalties.

Plaintiffs respond that neither party moved for summary judgment on this issue, and, therefore, "the Court does not need to rule on the issue at this time and the claim should go forward." Nevertheless, Plaintiffs state that in Johnson v. Bismarck Pub. Sch. Dist., 949 F.2d 1000, 1004-05 (8th Cir. 1991), the Eighth Circuit held that "where both parties had opportunity to brief and be heard on the issue, both parties agreed that summary judgment was appropriate, and there were no issues of material fact to be determined, there was no point in delaying the resolution of the case."

**D. The Court's Recommendation.**

**1. TILA Violation.**

The Court recommends granting Plaintiffs' motion and denying Defendant's motion with

respect to the TILA violation. There are no Eighth Circuit cases specifically on this subject. After reviewing the various decisions from other circuits, the Court understands TILA and Revised Regulation Z to require a creditor to provide written disclosures in a form the consumer can keep prior to signing the credit contract. The Court further finds that Defendant's practice of tearing off a copy of the installment contract and giving it to the customer after she signs the contract does not satisfy these requirements.

12 C.F.R. § 226.17(a)(1) states that the creditor "shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(b) requires the creditor to "make disclosures before consummation of the transaction." The court acknowledges that subpart (b) mentions disclosures, and not specifically the disclosures. But the Court agrees with the conclusion in Polk that "the plain meaning of the regulation must be understood to be that written disclosure in the *form* specified in subpart (a) must be provided to the consumer at the *time* specified in subpart (b)." 221 F.3d at 692[2]; see also Lozada, 197 F.R.D. at 337 (finding the two provisions together require "delivery of a copy of the required disclosures to a consumer before consummation of the transaction"). In other words, both provisions are qualifying the same disclosures. This means that one set of disclosures must be provided to the consumer in writing, in a form she can keep, before consummation of the transaction.

---

[2]The Court is also not persuaded that Polk is distinguishable because the briefing mentioned that the plaintiff was first obligated to accept $177.39 of credit on a hand written order, which was later rewritten into the retail installment contract. Those details do not appear in the court's decision. The only relevant facts that the court recorded were that after both parties signed the two retail installment contracts, the plaintiff was given copies of both of them, which included the terms of credit. 221 F.3d at 691. Therefore, the Court presumes that Polk's holding is based on those facts.

Defendant's procedure does not satisfy both requirements. Plaintiffs were only supplied with the written disclosures in a form they could keep after consummating the transaction with their signatures. "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). This finding also comports with Congress' statement that TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate credit billing and credit card practices." 15 U.S.C. § 1601(a).

The Court's concern for TILA's purpose requires it to part from the reasoning in certain other district court opinions.[3] In Diaz v. Joe Rizza Ford, Inc., 2001 WL 1360315 at *2 (N.D. Ill. 2001), the court stated "we fail to see any meaningful distinction between separation of the copies before or after she [the consumer] signed." This statement has since been cited in Fong Vang. But given TILA's purpose, there is a meaningful distinction between providing the consumer with a written copy of the disclosures prior to instead of after her signing. In order to effectively shop for better credit, the consumer must feel able to leave with a copy of the credit terms prior to being contractually obligated.

Defendant argues that Plaintiffs could simply have taken the contract with them, instead

---

[3]In particular, these cases include Fong Vang v. Morrie's Minnetonka Ford, Civil No. 01-82 (Frank, District Judge, December 11, 2001), and Peter v. Village Imports Co., Civil No. 01-12 (Doty, District Judge, October 9, 2001). The Court has considered these cases carefully, and appreciates the reasoning behind them. Nevertheless, in order for TILA to adequately serve its function in the present case, the Court must interpret it to require that Plaintiffs be provided with written copies of the disclosures prior to being presented with the actual contract for signing. This is the only procedure by which Plaintiffs are assured of a meaningful disclosure that will enable them to more readily compare the credit terms. See 15 U.S.C. § 1601(a).

of signing it at that time. But it is unlikely that a consumer in Plaintiffs' situation would have felt free simply to take the contract with them, or request another copy prior to signing it.[4] Hence, they will only be provided with a written copy of the terms if they sign the contract. And at that point, they are already contractually obligated. The Court also can not accept Defendant's argument that its prepayment provision allows consumers to shop for better credit after they have entered a contract. The regulations require making the disclosures before consummation. And while Defendant's practice may provide a return policy, it does not comply with this requirement.

Requiring prior written disclosure does not ignore the commercial reality of sales. Nor does it do a disservice to the consumer by imposing a waiting period. TILA is designed to enable consumers to compare the terms offered with other readily available terms. But at the point at which consumers are being presented with an actual financing contract, they will likely feel compelled to agree to the terms, rather then comparing them to others. That is the commercial reality that TILA recognizes. The corresponding regulations reduce that problem by requiring that creditors provide the disclosures in a separate form at an earlier point. Clearly, there are consumers who will wish to enter a contract at that time, rather than leaving the store to compare terms. The regulations do not prevent these consumers from doing so. They merely require that creditors provide the opportunity to compare.

The Court does not find TILSRA's legislative history helpful in determining the present issue. The FRB's decision to eliminate the phrase "either on the credit contract or on a separate document," does not imply that a specific interpretation of the current statute is correct. Too

---

[4]This is true regardless of whether Martinez was actually holding his hand on the contract the entire time.

much speculation is required to infer that the FRB eliminated the phrase believing it was already implicit that a creditor could include the terms in the underlying contract. And it is at least as likely that the FRB eliminated the phrase because the corresponding phrase "and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor" had been deleted from the amended statute. Absent a clearer statement, the Court does not believe this history demonstrates either party's interpretation is correct. Plaintiff is correct, however, that given Congress' elimination of this relevant phrase in TILSRA, the Court can not rely on the holdings interpreting the statute prior to its amendment.

**2. Statutory Damages.**

The Court recommends granting Plaintiffs' motion and denying Defendant's motion with respect to statutory damages. The statutory damages provision at issue is not entirely clear. Section 1640 limits statutory damages, and the section defines its scope as being "in connection with the disclosures referred to in section 1638 of this title." Section 1638(a) is titled "Required disclosures by creditor," while § 1638(b) is titled "Form and timing of disclosures." Hence, the court in Lozada III, inferred that the limiting language should not refer to § 1638(b), which is concerned with form and timing, rather than actual disclosures.

The Court finds this interpretation is supported by the two earlier provisions of § 1640, dealing with open-end credit. Within open-end credit transactions, TILA statutory damages are available for violations of § 1637(a). Section 1637(a) begins with the statement "Before opening any account under an open end consumer credit plan . . ." Hence, the timing requirement is contained within the disclosure requirement. Consequently, a timing violation would qualify for statutory damages. This is also true with § 1637a, which deals specifically

with open-end credit plans secured by a consumer's principal dwelling. Section 1637a contains separate paragraphs for the time and form requirements of these disclosures. But none of § 1637a is barred from statutory damages. Therefore, a timing violation here would also qualify for statutory damages. In reading these different sections of TILA in pari materia, the Court concludes that if Congress intended to provide statutory damages for timing violations in both types of open-end credit transactions, it also intended to provide statutory damages for timing violations in closed-end credit transactions. If there were some meaningful distinction between open-end and closed-end credit, such that statutory damages were only appropriate for the former, Congress or the FRB would have presumably made the distinction clear.

Moreover, it is consistent with TILA's purpose to apply statutory damages in the present case. The disclosures which do qualify for statutory damages include parts of § 1638(a)(2), § 1638(a)(3-6), and § 1638(a)(9). These disclosures include the amount financed, finance charge, annual percentage rate, total of payments, schedule of repayments, and finally, in the case of secured credit, that a security interest has been taken in either the purchased property or other property. These are the disclosures which a consumer could most obviously compare to those offered by other creditors, thus placing herself in a superior bargaining situation. This situation falls within Congress' statement of purpose that "the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). TILA's statutory damages provision advances this goal by compelling creditors to make these disclosures.

In the present case, Defendant violated § 1638(b)(1) by not providing Plaintiffs with the disclosures in time to effectively shop for better credit. Consequently, they were not able to use

the disclosures for TILA's stated purpose. The most reasonable interpretation of TILA is that statutory damages should apply in this case as well. See United States v. American Trucking Associations, 310 U.S. 534, 542 (1940) ("In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress."); Marlowe v. Bottarelli, 938 F.2d 807, 812(7th Cir. 1991).

As a final note, the Court wishes to clarify that it is not holding that a § 1638(b)(1) violation is, in effect, a § 1638(a) violation. In the present case, the § 1638(a) disclosures were made, they were simply made too late to be of use.

**3. Estimate Claim.**

Neither party formally moved for summary judgment on this claim. In the introduction to Plaintiffs' memorandum in support of their cross motion for summary judgment, they assert that Defendant violated TILA by failing to provide proper disclosures prior to consummation of the credit transaction, "and by not marking the required disclosures as estimates." But that is their entire argument. The issue is not raised in any detail until the parties' reply memoranda. In addition, the parties made almost no mention of this claim during oral argument. Consequently, the Court finds it inappropriate at this stage to rule on this claim. See Williams v. City of St. Louis, 783 F.2d 114, 116 (8th Cir.1986) (reversing grant of summary judgment to defendant on issues not raised in its motion; district court, at minimum, should have provided plaintiffs with notice of intention to consider unraised issue and meaningful opportunity to address it); Winfrey v. Brewer, 570 F.2d 761, 764 (8th Cir.1978) ("Absent notice of the district court's intention to treat the motion as one for summary judgment, we are unpersuaded that a brief filed in response to a motion to dismiss represents the type of meaningful opposition contemplated by Rule 56.");

American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859, 863 (8th Cir. 2001) (finding sua sponte grant of summary judgment on issues not raised in the movant's motion for summary judgment constitutes reversible error).

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

(1) Defendant's Motion for Summary Judgment (Doc. No. 17) be **DENIED**;

(2) Plaintiffs' Cross Motion for Summary Judgment (Doc. No. 21) be **GRANTED**.

Dated: August 27, 2002.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by September 10, 2002, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.