UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cheritylee Ann Stevens and David Matthew Stevens, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Brookdale Dodge, Inc.,

Defendant.

Civ. No. 00-2632 (JEL/JGL)
ORDER

Defendant Brookdale Dodge, Inc. extended credit to Plaintiffs Cheritylee Ann Stevens and David Matthew Stevens in connection with their purchase of a used car from Defendant's lot. Plaintiffs now seek to recover statutory damages under the Truth in Lending Act, 15 U.S.C. §§ 601-1667f (2000) (TILA), claiming that Defendant violated the timing requirements of the TILA and Regulation Z, 12 C.F.R. pt. 226 (2001), by failing to make required disclosures in a written form that Plaintiffs could keep before the transaction was consummated.[1] The parties' cross-motions for summary judgment were referred to the Honorable Susan R. Nelson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) (2000), and D. Minn. R. 72.1(c)(1). In a Report and Recommendation issued August 27, 2002, the Magistrate Judge recommended that Plaintiffs' motion be granted, and that Defendant's motion be denied. Defendant objected to the Report and Recommendation as permitted by 28 U.S.C. § 636(b)(1), and D. Minn. R. 72.1(c)(2). For the reasons given below, the Court declines to adopt the Magistrate Judge's recommendations.

---

[1] In an Amended Complaint filed after the cross-motions for summary judgment, Plaintiffs added a claim that Defendant violated Regulation Z, 12 C.F.R. § 226.17(c)(2)(i), by failing to label its disclosures as estimates. The Magistrate Judge declined to rule on this claim because (1) neither party formally moved for summary judgment on the claim; (2) the claim was not discussed "in any detail until the parties' reply memoranda"; and (3) "the parties made almost no mention of [the] claim during oral argument." The Court agrees that it would be inappropriate to rule on Plaintiffs estimate claim at this time.

FILED DEC 27 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

## I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2000), and 15 U.S.C. § 1640(e).

## II. BACKGROUND

Defendant is an automobile dealership located in Brooklyn Center, Minnesota. (Martinez Aff. ¶ 2.) On January 11, 2000, Plaintiffs visited Defendant's lot and agreed to purchase a 1999 Dodge Stratus. (*Id.* ¶ 3; Stevens Aff. ¶ 2.) Plaintiffs executed a vehicle purchase contract, which stated in part: "If DEALER [Defendant] is arranging credit for you [Plaintiffs], this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you [Plaintiffs] have accepted the credit extended." (Martinez Aff. ¶ 3; *Id.*, Ex. A.) Plaintiffs agreed to have Defendant arrange credit for them. (*Id.* ¶ 4.)

Defendant's finance and insurance manager, Michael Martinez, filled out a retail installment contract (RIC) and printed a packet comprising the original RIC and several carbon copies. (*See id.*; *Id.*, Ex. C; Stevens Aff. ¶ 5.) The parties agree that Martinez "presented" the RIC to Plaintiffs for their signature. (Martinez Aff. ¶ 4; Stevens Aff. ¶¶ 4-5.) According to Plaintiffs, however, Martinez did not "give" them the RIC; rather, he held it "firmly" to his desk with his hand as he stood before them and explained the financing terms. (Stevens Aff. ¶¶ 6-10.) For his part, Martinez claims that he sat behind his desk, and that he did not hold the RIC to his desk with his hand. (Martinez Supp. Aff. ¶ 2.)

Displayed on the front of the first page of the RIC was a box labeled "**DISCLOSURE STATEMENT**." (Martinez Aff., Ex. C.) The information provided in the box included the "**Amount Financed**," the "**FINANCE CHARGE**," the "**ANNUAL PERCENTAGE RATE**," the "**Total of Payments**," the "Number of Payments," "Amount of Payments," information related to

"When Payments Are Due," and a statement indicating that **"I [Plaintiffs] give you [Defendant] a security interest in the goods or property being purchased."** (*Id.*) The RIC also disclosed additional terms, among them: "I [Plaintiffs] have the right and opportunity to obtain financing for the vehicle from any source that I [Plaintiffs] choose, and I [Plaintiffs] have chosen to obtain such financing through the Seller [Defendant]." (*Id.*)

Plaintiffs signed the RIC directly below the following acknowledgement: **"I [Plaintiffs] have read this contract and received a complete copy."** (*Id.*; *Id.* ¶ 5; Stevens ¶ 9.) After Plaintiffs executed the RIC, Martinez removed one of the carbon copies from the packet and gave it to them. (Martinez Aff. ¶ 5; Stevens ¶ 9.)

## III. DISCUSSION

### A. Standard of Decision

When, as here, a party objects to a magistrate judge's report and recommendation on a motion for summary judgment, a district court must "make a de novo determination of those portions [of the report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); D. Minn. R. 72.1(c)(2). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, courts must view the evidence in the record and the inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B. Timing Claim**

The purpose of the TILA is to "assure a meaningful disclosure of credit terms so that . . . consumer[s] will be able to compare more readily the various credit terms available to [them] and avoid the uninformed use of credit, and to protect . . . consumer[s] against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Accordingly, the TILA requires creditors to disclose certain credit terms to consumers. The list of required disclosures for the type of credit transaction at issue in this case is found at 15 U.S.C. § 1638(a). Requirements as to the timing and form of the disclosures are set forth in 15 U.S.C. § 1638(b)(1), which provides that the disclosures must "be made before the credit is extended," and must be "conspicuously segregated from all other terms, data, or information provided in connection with [the] transaction." Regulation Z, 12 C.F.R. pt. 226, promulgated by the Federal Reserve System's Board of Governors pursuant to rulemaking authority granted in the TILA, also addresses the timing and form of the disclosures. Regulation Z provides in part that the disclosures must be made "clearly and conspicuously in writing, in a form that the consumer may keep," *id.* § 226.17(a)(1), "before consummation of the transaction," *id.* § 226.17(b).

In this case, Plaintiffs concede that the RIC contained all of the disclosures required by 15 U.S.C. § 1638(a), but they claim that Defendant failed to provide them with a copy of the RIC in a written form they could keep before the transaction was consummated, in violation of 15 U.S.C. § 1638(b)(1), and 12 C.F.R. § 226.17(a)-(b). Assuming that Defendant *did* violate the TILA's timing

requirement, an issue the Court does not decide, Defendant is nevertheless entitled to summary judgment on this claim because Plaintiffs have failed to establish that they are entitled to damages.

Plaintiffs admit that they have not suffered any actual damages. They contend, however, that a creditor who violates the TILA's timing requirements is liable for statutory damages pursuant to 15 U.S.C. § 1640(a)(2). Section 1640(a) begins with the general rule that creditors who violate the TILA are liable for statutory damages "[e]xcept as otherwise provided in this section." It then goes on to provide several exceptions to this rule. Of relevance here is the exception for violations "[i]n connection with the disclosures referred to in section 1638," which states:

> In connection with the disclosures referred to in section 1638 of this title, a creditor shall [be liable for statutory damages] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning . . . as any of the terms referred to in any of those paragraphs of section 1638(a) of this title.

15 U.S.C. § 1640(a). For simplicity's sake, the Court will refer to the language just quoted as "the Section 1638 Exception."

There are two lines of authority on the question whether section 1640(a) authorizes statutory damages for a violation of section 1638(b)(1). The leading case holding in the negative is *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir. 2000). In *Brown*, the Seventh Circuit reasoned that, because a violation of section 1638(b)(1) is a violation "[i]n connection with the disclosures referred to in section 1638," the Section 1638 Exception applies. *Brown*, 202 F.3d at 991. Under the Section 1638 Exception, a creditor is liable for statutory damages "*only* for failing to comply with" section 1635, various subsections of section 1638(a), or certain state law requirements. *Brown*, 202 F.3d at 991. Because section 1638(b)(1) does not appear on this "closed list," a creditor who violates section 1638(b)(1) is not liable for statutory damages. *Brown*, 202

F.3d at 991. Several cases, including three cases from district courts in the Eighth Circuit, have reached the same conclusion. *See, e.g.*, *Wojcik v. Courtesy Auto Sales, Inc.*, No. 8:01CV506, 2002 WL 31663298, at *5 (D. Neb. Nov. 25, 2002); *Malchow v. GMI Acquisition, Inc.*, Civ. No. 01-1662, 2002 WL 31185865, at *3-5 (D. Minn. Oct. 1, 2002) (Rosenbaum, C.J.); *Kilbourn v. Candy Ford-Mercury, Inc.*, 209 F.R.D. 121, 125-28 (W.D. Mich. 2002); *Collins v. Ray Skillman Olds-GMC Truck Inc.*, No. IP 00-1281-C-T/K, 2001 WL 1711466, at *3-4 (S.D. Ind. Dec. 3, 2001); *Peter v. Village Imports Co.*, Civ. No. 01-12, 2001 WL 1640130, at *3 (D. Minn. Oct. 9, 2001) (Doty, J.); *Crowe v. Joliet Dodge*, No. 00-C-8131, 2001 WL 811655, at *4 (N.D. Ill. July 18, 2001); *Nigh v. Koons Buick Pontiac GMC Inc.*, 143 F. Supp. 2d 535, 549 (E.D. Va. 2001).

The leading case holding that statutory damages *are* available for a creditor's violation of section 1638(b)(1) is *Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F. Supp. 2d 878 (W.D. Mich. 2001). *Lozada* based its holding on a narrow interpretation of the Section 1638 Exception's introductory phrase, which limits the exception to violations "[i]n connection with the disclosures referred to in section 1638." *Lozada*, 145 F. Supp. 2d at 888. *Lozada* reasoned that "[t]he only 'disclosures referred to in section 1638' are contained in section 1638(a)." *Lozada*, 145 F. Supp. 2d at 888. The remaining subsections of section 1638, including section 1638(b)(1), merely address the form and timing of those disclosures, rather than the disclosures themselves. *Lozada*, 145 F. Supp. 2d at 888. As a result, the Section 1638 Exception does not apply to violations of section 1638(b)(1); instead such violations fall within the general rule that a creditor who violates the TILA is liable for statutory damages. *Lozada*, 145 F. Supp. 2d at 888. Other cases reaching the same conclusion include *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1035-37 (W.D. Mich. 2002), and *Walters v. First State Bank*, 134 F. Supp. 2d 778, 782 (W.D. Va. 2001).

In essence, *Lozada* holds that the Section 1638 Exception applies only when a creditor violates section 1638(a). It is evident from the statutory language, however, that the exception is not so narrow. Again, the Section 1638 Exception provides that, "[i]n connection with the disclosures referred to in section 1638 of this title, a creditor shall [be liable for statutory damages] only for failing to comply with the requirements of," among other things, "*section 1635 of this title*." (Emphasis added.) This reference to section 1635 demonstrates that the scope of the Section 1638 Exception extends beyond violations of section 1638(a). The connection between section 1635 and the "disclosures referred to in section 1638" is rather tenuous. Section 1635 addresses a consumer's right to rescind certain credit transactions; it does not even cross-reference section 1638. Thus, given that a violation of section 1635 is a violation "[i]n connection with the disclosures referred to in section 1638," the Court concludes that a violation of section 1638(b)(1), which sets forth requirements as to the timing and form of the disclosures referred to in section 1638(a), also falls within the Section 1638 Exception. The Court concludes further that, under the terms of that exception, a creditor who violates section 1638(b)(1) is not liable for statutory damages. *See Brown*, 202 F.3d at 991; *Wojcik*, 2002 WL 31663298, at *5; *Malchow*, 2002 WL 31185865, at *3-5; *Kilbourn*, 209 F.R.D. at 125-28; *Collins*, 2001 WL 1711466, at *3-4; *Peter*, 2001 WL 1640130, at *3; *Crowe*, 2001 WL 811655, at *4; *Nigh*, 143 F. Supp. 2d at 549.

Plaintiffs next argument is that Defendant's alleged violation of section 1638(b)(1) must be treated as a violation of section 1638(a)(3)-(6). They insist that a creditor does not "disclose" a credit term for purposes of section 1638(a)(3)-(6) unless the disclosure occurs at the time specified in section 1638(b)(1). The Seventh Circuit considered a similar argument in *Brown*:

> [A]ccording to plaintiffs, any violation of . . . § 1638(b)(1) *also* violates § 1638(a)(3) (which requires the lender to disclose the finance charge), § 1638(a)(4) (which requires the lender to express the finance charge as an annual percentage rate), and so on. Because § 1638(a)(3) and (a)(4) are on the list of violations eligible for

> statutory damages, plaintiffs say that they must prevail. Yet accepting this argument would destroy the point of § 1640(a)(2). What sense would it make to omit . . . § 1638(a)(1), (a)(2) (in part), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), and all of § 1638(b) . . . from the candidates for statutory damages if they came in through the back door on the theory that all formal shortcomings infect the disclosures of the items that *are* on the list? Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a).

*Brown*, 202 F.3d at 991; *see also Malchow*, 2002 WL 31185865, at *4; *Kilbourn*, 209 F.R.D. at 126-27; *but see Lozada*, 145 F. Supp. 2d at 889 ("Since § 1638(b)(1) expressly provides the form and time in which disclosures under § 1638(a) must be made, § 1638(a) disclosures may not be said to be made unless and until they are made in compliance with § 1638(b)(1)."). The Court finds *Brown* persuasive on this point, and it therefore rejects Plaintiffs argument that a violation of section 1638(b)(1) necessarily results in a violation of section 1638(a)(3)-(6).

Because Plaintiffs concede that they have not suffered any actual damages as a result of Defendant's alleged violation of section 1638(b)(1), and because Plaintiffs cannot recover statutory damages for such a violation, the Court grants Defendant's Motion for Summary Judgment with respect to Plaintiffs' timing claim.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 17] is GRANTED.

2. Plaintiffs' Cross-Motion for Summary Judgment [Docket No. 21] is DENIED.

Dated: December 26, 2002

JOAN ERICKSEN LANCASTER
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

## NOTICE

The latest amendments to the federal rules of procedure, (Civil, Criminal, Appellate and Bankruptcy), went into effect on December 1, 2002. The new amendments and related committee notes can be found at www.uscourts.gov/rules/amendments0202.htm.

One change is particularly noteworthy. That is Rule 7.1 of the Federal Rules of Civil Procedure. This rule requires that corporations file a "disclosure statement" whenever they initially appear as a party in a federal court action. The Rule 7.1 Disclosure Statement must identify "any parent corporation and any publicly held corporation that owns 10% or more" of the stock of the corporate party filing the statement. The purpose of the disclosure statement is to help judges and magistrate judges identify potential conflicts of interest. (Similar disclosure statement requirements are prescribed by Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 12.4 of the Federal Rules of Criminal Procedure.)

Beginning December 1, 2002, a Rule 7.1 Disclosure Statement must be filed by every corporation when it first appears in a federal action, even if the corporation merely reports that there is no parent corporation or publicly held corporation that owns 10% or more of its stock. These Disclosure Statements must also be filed retroactively, for every corporation which is a party to an action pending in this District as of December 1, 2002. The retroactive Rule 7.1 statements must be filed immediately.

It also should be noted that there have been extensive stylistic changes, (as well as a few substantive changes), to the Federal Rules of Criminal Procedure. Attorneys who appear in federal criminal cases should review the amended version of the Rules.