COPY

UNITED STATES DISTRICT COURT
STATE OF MINNESOTA
FOURTH DIVISION

Court File No.: CV- 00-2632 MJD/SRN

Cheritylee Ann Stevens and David Mathew Stevens,

Plaintiff,

vs.

**AFFIDAVIT OF MICHAEL MARTINEZ**

Brookdale Dodge, Inc.

Defendant.

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

Michael Martinez, being duly sworn, states and alleges as follows:

1. That I was the Finance and Insurance ("F&I") Manager of Brookdale Dodge, Inc. ("Brookdale Dodge") that dealt with Plaintiffs regarding their January 11, 2000 transaction with the dealership.

2. Brookdale Dodge is an automobile dealership located at 6800 Brooklyn Boulevard in Brooklyn Center, Minnesota. The dealership had business relationships with lending institutions which extend financing to its customers to purchase motor vehicles. If the customer desires, Brookdale Dodge will attempt to arrange financing with a lending institution to enable its customers to purchase motor vehicles. Although Brookdale Dodge completes the installment contract forms provided by the lending institutions, it ultimately assigns the contract to the lender.

3. In early January of 2000, Plaintiffs were shopping around for a motor vehicle. In early January, Plaintiffs visited Carlson Toyota and sought financing through Community Credit Company to purchase a vehicle. On January 11, 2000, Plaintiffs visited Brookdale Dodge and agreed to purchase a used 1999 Dodge Stratus for $14,490 with a $4,000 trade-in allowance on their 1991 Honda Civic and a $1,500 cash downpayment. Plaintiffs executed a vehicle purchase contract setting forth the terms of the purchase and the "Total Amount Due on Delivery" of $13,691.42. The vehicle purchase contract stated: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as



SCANNED
JUN 15 2004
U.S. DISTRICT COURT ST. PAUL

described in Regulation Z and you have accepted the credit extended." A true and correct copy of the front page of the purchase contract is attached as Exhibit A.

4. Plaintiffs also agreed to purchase a service contract and have the dealership attempt to arrange financing. A true and correct copy of the front page of the service contract application is attached as Exhibit B. After Plaintiffs executed the vehicle purchase contract and service contract application, I completed a Community Credit installment contract and presented it to Plaintiffs for their review and, if acceptable, signature. The installment contract contained a segregated truth-in-lending disclosure box which identified in bold, the "**Annual Percentage Rate**" (15.00%), "**Amount Financed**" ($15,153.49), "**Finance Charge**" ($6,602.51), "**Total of Payments**" ($21,756.00), and the "**Total Sales Price**" ($23,485.43). A true and correct copy of the installment sales contract is attached as Exhibit C.

5. Plaintiffs reviewed the installment sale contract and both signed it. Thereafter, I tore off a carbon copy and gave Plaintiffs that copy, which they attached to their complaint. Plaintiffs did not request a copy of the installment sale contract before they signed the installment sale contract. After executing the above-referenced documents, Plaintiffs took delivery of the 1999 Dodge Stratus.

6. If Plaintiffs did not like the terms of the Community Credit installment contract they signed, they could have chosen not to sign it on January 11, 2000. The installment contract Plaintiffs executed contained a paragraph entitled, "Buyer's Agreement Regarding Relationship with Seller, Price Quotation and Seller's Right to Sell Contract," wherein Plaintiffs acknowledged that "I have the right and opportunity to obtain financing for the vehicle from any source that I choose . . . ." If they wanted to shop around for a better interest rate, they could have chosen not to sign the Community Credit installment contract, requested that the dealership hold the vehicle and taken a copy of the installment contract with them to shop around. If they could have obtained a better rate elsewhere, they could have used the proceeds of that financing to pay the dealership. A customer can also search for a better rate after she or he signs an installment contract. An installment contract can be pre-paid at any time without penalty. Plaintiffs' installment contract, for example, contained a paragraph entitled, "Refund for Early Payment in Full" which stated: "I may prepay this contract at any time." As a result, customers can, if they so desire, look elsewhere for better credit terms and, if successful, use the proceeds of the alternate financing to pay off the amount owed under the installment contract they signed.

FURTHER YOUR AFFIANT SAITH NAUGHT.

Michael Martinez

Subscribed and sworn to before me
this 8th day of October, 2001.

Notary Public

ELIZABETH ANN COOPER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2005

VEHICLE PURCHASE CONTRACT

# BROOKDALE DODGE

6800 BROOKLYN BLVD. • TEL. 560-8000
BROOKLYN CENTER, MINNESOTA 55429

DATE 11 JAN 2000
SOLD BY: MITZU, BILL YOVICSON, M

BUYER'S NAME: CHERIFYLEE ANN STEVENS
BUYER'S DRIVERS LIC. #: S-315-115-067-939 DOB 12/10/75
STREET ADDRESS: 3955 119TH AVE NW
CITY, STATE COUNTY, ZIP: COON RAPIDS, MN ANOKA 55433
INSURANCE CO.: GEICO INS
INSURANCE AGENT:

CO-BUYER'S NAME: DAVID MATTHEW STEVENS
CO-BUYER'S DRIVERS LIC. #: S-315-135-589-091 DOB 03 FEB 1973
RESIDENCE PHONE: (612)433-9596
BUSINESS PHONE: (612)551-7400
POLICY #: 3383824
PHONE #: 800-841-3000

PLEASE ENTER MY ORDER FOR ONE ☐ NEW X ☐ USED ☐ DEMO ☐ OTHER AS FOLLOWS

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 1999 | DODG | TRS | 1B3EJ46X9XN592477 |

| BODY STYLE | COLOR | TRIM | STOCK NUMBER | MILEAGE | LICENSE NO. | EXPIRATION DATE |
|---|---|---|---|---|---|---|
| SD | MAROON | | 7173 | 20069 | | |

| | | |
|---|---|---|
| RUSTPROOFING | ☐ YES | ☐ NO |
| PAINT SEALANT | ☐ YES | ☐ NO |
| FABRIC GUARD | ☐ YES | ☐ NO |

ALL INCENTIVES ASSIGNED TO BROOKDALE DODGE
⊗

BUYER CERTIFIES THAT THE TRADE-IN VEHICLE DOES NOT HAVE A "SALVAGE" OR "LETTERED" TITLE HISTORY
⊗ Cherifylee Stevens

**TRADE-IN DATA**

| | | | |
|---|---|---|---|
| YEAR 1991 | MAKE HOND | MODEL CIVI | BODY STYLE CP |
| VIN JHMED936XMS012146 | | | |
| LIENHOLDER'S NAME NORWEST BANK MN NA | | | |
| ADDRESS | | | |
| LICENSE PLATE # 8YS894 | LICENSE STATE MN | EXP. DATE 7-00 | |
| MILEAGE NOW 11621 | TRANSMISSION | | |

**POLLUTION CONTROL SYSTEM DISCLOSURE (TRADE-IN VEHICLE)**

In order to comply with Minnesota Statutes, Section 325E.0951, no person may transfer a motor vehicle without providing a written disclosure to the transferee (buyer) certifying the condition of the pollution control system. Transferor (seller) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being traded in, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

Seller's Signature ⊗ Cherifylee Stevens

**DEALER'S DISCLAIMER OF WARRANTY**

The Dealer expressly disclaims all warranties, either express or implied on the vehicle sold, except any warranties offered and explained in Paragraphs 10 through 13 on the back of this contract. Buyer acknowledges receiving this information before the sale and further acknowledges having read and understood the provisions on the back of this contract.

Buyer's Signature ⊗ Cherifylee Stevens

**DEALER'S POLLUTION CONTROL SYSTEM DISCLOSURE (VEHICLE BEING SOLD)**

Transferor (Dealer) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being sold, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

| | |
|---|---|
| SELLING PRICE | 14490.00 |
| DEALER INSTALLED OPTIONS | |

The following items are not under Warranty from Chrysler

KEY CODE : NONE
x Cherifylee Stevens

LIENHOLDER NAME COMMUNITY CREDIT CO.
LIENHOLDER ADDRESS 11000 W 78TH ST STE 111
EDEN PRAIRIE MN 55344

| | |
|---|---|
| TOTAL | 14490.00 |
| LESS TRADE IN ALLOWANCE FOR USED VEHICLE | 4000.00 |
| LESS CHRYSLER CORP. INCENTIVE/REBATE | N/A |
| TOTAL TAXABLE AMOUNT | 10490.00 |

| | | | |
|---|---|---|---|
| LICENSE PLATE | 206.00 | STATE & LOCAL TAXES | 681.85 |
| TITLE & TRANSFER FEES | 18.00 | FEDERAL LUXURY TAX | N/A |
| LIEN RECORDING FEE | N/A | DOCUMENT ADMINISTRATIVE FEE | 25.00 |
| | | SERVICE CONTRACT | N/A |
| TOTAL LICENSE & FEES | → | | 224.00 |
| CASH SUBMITTED WITH ORDER | 500.00 | SUBTOTAL | 11420.85 |
| LESS BALANCE OWING TO LIENHOLDER ON TRADE-IN | 3770.57 | | 3770.57 |
| TOTAL DOWN PAYMENT | → | | -3270.57 |
| TOTAL AMOUNT DUE ON DELIVERY | | | 13691.42 |

The front and back of this CONTRACT comprise the entire CONTRACT affecting this purchase. THE DEALER will not recognize any verbal agreement, or any other agreement or understanding of any nature. You certify that no credit has been extended by dealer for the purchase of this motor VEHICLE. You certify that you are 18 years of age or older, and acknowledge receiving a copy of this contract.

The terms of this CONTRACT were agreed upon and the CONTRACT signed in this dealership on the date noted at top of this form. If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended.

NOTICE OF SALESPERSON'S LIMITED AUTHORITY. This contract is not valid unless signed and accepted by Sales Manager or officer of dealership.

Accepted X [signature]

IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.

X Cherifylee Stevens
Buyer's Signature Accepting Terms of Contract

BD000003

EXHIBIT A

Service Contracts
DaimlerChrysler Corporation

# DAIMLERCHRYSLER SERVICE CONTRACT APPLICATION

## VEHICLE AND PURCHASER INFORMATION

| | | | | |
|---|---|---|---|---|
| VEHICLE IDENTIFICATION NO. 1B3EJ46X9XN592477 | *IN SERVICE DATE 01-04-99 | ALL OR 4-WHEEL DRIVE YES ☐ NO ☐ | PRODUCT CODE N/A | ODOMETER READING AND TYPE (NO TENTHS) 20069 MILES ☐ KM ☐ |
| YEAR 1999 | MAKE / MODEL DODG STRS | MR. MRS MS ☐ ☐ ☐ ☐ | INITIALS C A | PURCHASER'S LAST NAME OR COMPANY NAME STEVENS |
| ADDRESS 3555 119TH AVE NW | | ADDRESS LINE 2 | | |
| CITY COON RAPIDS | STATE MN | ZIP CODE 55433 | PLUS 4 | TELEPHONE NO. (612)433-9596 |

## PLAN INFORMATION

| PLAN NAME | PLAN CODE | CUSTOMER PAID AMOUNT | SALES TAX | TOTAL | PAYMENT METHOD | DSC DEALER PAYMENT PLAN: AMOUNT DOWN | AMOUNT FINANCED |
|---|---|---|---|---|---|---|---|
| A0560G N/A | 1462.07 | N/A | | 1462.07 | | | |
| | | | | | | | |
| 100 Deductible | | | | | | | |
| TOTALS | 1462.07 | N/A | | 1462.07 | | | |

FILL IN DEDUCTIBLE AMOUNT $ 100

CHECK BOX IF TAX EXEMPT ☐

PAYMENT METHOD KEY: A-DSC DEALER PAYMENT PLAN B-FINANCED WITH VEHICLE C-OTHER

NUMBER OF PAYMENTS (2-12) ____

CHECK BOX for ROAD HAZARD TIRE PROTECTION OPTION ☐

PLAN SALE DATE 01/11/00

THE TIME AND MILEAGE LIMITS OF ALL NEW VEHICLE PLANS BEGIN THE DATE THE VEHICLE WAS FIRST PUT IN SERVICE AND AT "0" MILES.

FINANCE SOURCE (COMPLETE ONLY IF PLAN(S) FINANCED WITH VEHICLE) COMMUNITY CREDIT CO.

IMPORTANT NOTICE TO PURCHASER ......

**Your signature means the plan and the actual service contract indicated above has been reviewed by you and, if your application is approved by DaimlerChrysler Service Contracts, you accept its terms and conditions.**

**Pre-Owned vehicle plans MUST be purchased at time of vehicle sale or within the 3 month / 3,000 mile Limited Warranty period.**

**This service contract is not required to purchase or finance a motor vehicle. New and Pre-owned vehicle service contracts are transferable to subsequent purchasers prior to expiration date or mileage with contract owner's authorization.**

*NOTE: WHEN THERE IS AN EXISTING WARRANTY ON A VEHICLE, THE CONTRACT TERM WILL INCLUDE THE WARRANTY PERIOD. REFER TO YOUR CONTRACT PROVISIONS FOR A DEFINITION OF "IN-SERVICE" DATE.

DATE 01/11/00 PURCHASER'S SIGNATURE [signature] Christa Stevens

## DEALER INFORMATION

| | | | | |
|---|---|---|---|---|
| DEALERSHIP NAME BROOKDALE DODGE INC. | | TELEPHONE NO. 612-560-8000 | | |
| STREET ADDRESS 6800 BROOKLYN BLVD | CITY, STATE & ZIP BROOKLYN CENTER, MN 55429 | | ZONE 53 | DEALER CODE 44313 |

IMPORTANT NOTICE TO DEALER ......

Your signature on this form signifies that: (1) This vehicle qualifies for the service contract; (2) You have reviewed the service contract with the purchaser; (3) You have delivered a copy of this form to the purchaser for the amount you have recorded on the form; (4) You will provide service to the purchaser in accordance with the provisions of the service contract DaimlerChrysler will issue to the purchaser; (5) You have reviewed the DaimlerChrysler Service Contracts Dealer Guide and agree to abide by the policies and procedures specified therein. (6) DaimlerChrysler may set off any money it owes you to reimburse for any claim due to a breach of representations. 01/11/00

SALESPERSON NAME ____ AUTHORIZED DEALER SIGNATURE X [signature] DATE 1/11/00

**IMPORTANT! The following vehicles are not eligible for a DaimlerChrysler Service Contract:** Vehicles placed in taxi or limousine service (except vehicles placed in van pool service); vehicles used for hire, emergency service, ambulance, towing or police service; vehicles placed in postal or dump truck service or severe off-road use; vehicles converted from two to four-wheel drive; vehicles altered or converted from the original manufacturer's specifications; vehicles equipped with a diesel engine (except Dodge); vehicles with a gross weight (G.V.W.) of over 14,000 pounds, vehicles with salvaged, assembled, junk or rebuilt titles.

**NOTE: Retain this form as evidence you have applied for the plan(s) indicated above. The Dealer will transmit this data to DaimlerChrysler. DaimlerChrysler Service Contracts will notify you of acceptance by mailing your Plan Provisions. IF YOU HAVE NOT RECEIVED YOUR PLAN PROVISIONS WITHIN 60 DAYS, PHONE THE TOLL FREE NUMBER LISTED BELOW. This document is an application for the DaimlerChrysler Service Contract and does not constitute a service contract until accepted by DaimlerChrysler Service Contracts.**

TOLL-FREE TELEPHONE ASSISTANCE IS AVAILABLE
8:30 A.M. THRU NOON OR 1:00 P.M. THRU 5:15 P.M. EASTERN TIME MONDAY THRU FRIDAY.
**1-800-521-9922**

FL LIC #AL00427

**TRANSMIT VIA DIAL TO: DaimlerChrysler Service Contract**

COPIES. #1 (WHITE) DIAL ENTRY DOCUMENT
#2 (GREEN) FINANCE SOURCE (IF ANY)
#3 (BROWN) TO OWNER
#4 (BLUE) DEALER'S FILE

81-770-3012 (4/99)

BD000098

EXHIBIT R

4 TO DEALER'S FILE

131 05/99 (MN) (CCC)

# RETAIL INSTALLMENT CONTRACT – MOTOR VEHICLE

Date ___ JAN 06

BUYER(S) ("I" "Me") (Name, Address, Zip Code)

CHERI LEE ANN STEVENS
DAVID MATTHEW STEVENS
3965 119TH AVE NW
COON RAPIDS, ANOKA, MN 55433

SELLER ("You") (Name, Address, Zip Code)

BROOKDALE DODGE INC
6800 BROOKLYN BLVD
BROOKLYN CENTER, MN 55429

## DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ |
|---|---|---|---|---|
| 15.00 % | $ 6802.51 | $ 15253.49 | $ 21756.00 | $ 23465.49 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 362.60 | Monthly Beginning 25 FEB 2000 |

**Security: I give you a security interest in the goods or property being purchased.**

**Filing Fees $**

**Late Charge: If a payment is late 10 days or more, I will be charged $5 or 5% of the payment, whichever is greater.**

**Prepayment: If I pay off early, I may be entitled to a refund of part of the finance charge.**

See the other side of this contract document for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

EXHIBIT 2

## INSURANCE

If I want either credit life or credit life and disability insurance, you can provide me with the coverage through an insurance company that you select. I UNDERSTAND THAT CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS I SIGN AND AGREE TO PAY THE ADDITIONAL COST. I also understand that only the policy or certificate of insurance that you give me contains the terms of the insurance coverage. Single credit life insurance covers only 1 buyer. Joint credit life insurance covers 2 buyers. Credit disability insurance covers only 1 buyer. The insured buyer is shown on the policy or certificate of insurance.

I may cancel the credit insurance within 10 days from the date of this contract and receive a full refund of the premium. To cancel and get this refund, I must return the certificate or policy to you within the 10 days.

| TYPE OF COVERAGE | PREMIUM | TERM |
|---|---|---|
| ☐ Credit disability and joint decreasing credit life insurance | $ N/A | ___ months |
| ☐ Credit disability and single decreasing credit life insurance | $ N/A | ___ months |
| ☐ Joint decreasing credit life insurance only | $ N/A | ___ months |
| ☐ Single decreasing credit life insurance only | $ N/A | ___ months |
| ☐ Single level credit life insurance only | $ | ___ months |

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| 1. Cash Sale Price (without tax) | $ 229.43 |
| 2. Less: Downpayment | |
| (a) Trade-in allowance less the amount I owe on the trade-in | $ 1500.00 |
| (b) Cash Downpayment | $ |
| Total Downpayment (2 (a) + (b)) | $ |
| 3. Amount Paid to Seller for balance of Cash Price (1 minus 2) | $ [illegible] |
| 4. Charges/Amounts Paid to Others on my behalf | |
| (a) Government Agencies/Public Officials | $ 581.85 |
| Sales Tax | $ [illegible] |
| License Fees on Purchased Vehicle | $ [illegible] |
| Title & Transfer Fees on Purchased Vehicle | $ N/A |
| Title & Transfer Fees on Trade-in | $ [illegible] |
| Lien Recording Fees (Filing Fees) | $ |
| (b) Credit Life Insurance Company* | $ N/A |
| | N/A |
| (c) Credit Disability Insurance Company* | $ |

EXHIBIT C

...want the insurance checked above

Buyer ______ Date 01/11/00

Buyer ______ Date ______

I may obtain physical damage property insurance from anyone I want that is acceptable to you. If I get the insurance from you, I will pay $______. The term of insurance is ______ months.

**THIS IS NOT LIABILITY INSURANCE**

I may obtain a mechanical breakdown contract from anyone I want. If I buy it from you, I will pay $ 1462.02. The term of the mechanical breakdown contract is ______ months.

I understand that you do not provide public liability insurance protecting me against damages from the negligent use of the vehicle.

(d) Physical Damage Property Insurance Co. $ N/A

(e) Other Charges Paid To: BROOKDALE DODGE INC.

Charge for preparing Documents $ 25.00

CHRY SERVICE CONTRACT

To: For Mechanical Breakdown Contract $ 1462.02

To: For: $ N/A

5. Amount Financed (3 + 4(a) through (e)) $ 15153.49

You may be retaining a portion of this amount.

**DESCRIPTION OF MOTOR VEHICLE (THE "VEHICLE")** ☐ NEW ☒ USED

| Year | Make | Model | Serial No. |
|---|---|---|---|
| 1999 | DODGE | STRATUS | 1B3EJ46X9XN... |

This contract will be assigned to: COMMUNITY CREDIT CO. (the "Assignee")

Address: 3101 West 69th STREET, EDINA, MINNESOTA 55435

**WARRANTIES.** Except for any written warranty by the manufacturer, I understand that the vehicle is sold **"AS IS" and "WITH ALL FAULTS." THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH ME, THE BUYER. I ALSO UNDERSTAND THAT I RECEIVE NO GUARANTEE, EXPRESS WARRANTY, OR IMPLIED WARRANTY (INCLUDING IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE)** with regard to the vehicle. This means that if the vehicle is defective, damaged or not suitable for my use or any use, you will not be liable and I may not cancel the sale. A warranty of merchantability generally means that the vehicle is fit for the ordinary purpose for which such vehicles are generally used. A warranty of fitness for a particular purpose is a warranty that may arise when the Seller has reason to know the particular purpose for which I require the vehicle and I rely on the Seller's skill or judgment to furnish a suitable vehicle. You have made no promise to repair or replace the vehicle. This paragraph does not affect any written warranties that may be given by the manufacturer or a mechanical breakdown contract I buy.

**NOTICE FOR USED VEHICLES.** If the vehicle is a used vehicle or a demonstrator, the following notice applies: THE INFORMATION I SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**I ACKNOWLEDGE THE EXISTENCE OF THE ARBITRATION AGREEMENT SET FORTH ON THE REVERSE SIDE, AND I SPECIFICALLY AGREE TO BE BOUND BY ITS TERMS.**

**I have read this contract and received a complete copy. I UNDERSTAND AND AGREE THAT THE TERMS ON THE OTHER SIDE ARE PART OF THIS CONTRACT. IMPORTANT: THIS MAY BE A BINDING CONTRACT AND I MAY LOSE ANY DEPOSIT IF I DO NOT PERFORM ACCORDING TO ITS TERMS.**

11 JAN 2000

Buyer ______ Seller ______

Buyer ______ By ______ Title ______

**Guarantee:** I guarantee that all amounts owed under this contract will be paid when due. I will still be obligated even if any of the Buyers are released or if you waive (give up) or delay enforcement of any of your rights under this contract. You do not have to give me notice of any such release, waiver, or delay.

______ (Signed) ______ (date)

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**SEE THE OTHER SIDE OF THIS FORM. THIS CONTRACT CONTINUES ON THE OTHER SIDE.**

White — Original Copy / Canary — Borrower's Copy / Pink — Assignee's Copy / Gold — Seller's Copy

# ADDITIONAL TERMS OF THE CONTRACT

**Definitions.** In this Retail Installment Contract, the words "I", "me", "my", and "mine" mean each and all Buyer(s) who have signed this contract. The words "you" and "your" refer to the Seller and the Assignee shown on the other side of this contract. The word "vehicle" means the motor vehicle which is described on the other side of this contract, together with any equipment, replacement parts, accessories and improvements to the vehicle. The "Annual Percentage Rate", "Finance Charge", "Total of Payments", "Total Sale Price", and "Payment Schedule" all appear on the Disclosure Statement on the other side of this contract.

**Liability.** I am responsible, individually and together with all other Buyers who sign this contract. This contract binds my heirs and legal representatives.

**Total Agreement.** This contract contains all my rights and responsibilities. My agreement cannot be changed unless you agree in writing. If I agree you may extend or defer the scheduled due date of a payment. You may collect a $5 charge for that extension or deferment plus interest at the Annual Percentage Rate from the date of the extension or deferment.

**Buyer's Promise to Pay.** I may buy the vehicle for cash or on credit. If I pay cash, I will pay the cash sale price shown on the other side of this contract. If I buy on credit, I will pay the Total Sale Price (time – sale price shown on the other side of this contract. If I buy on credit, I will pay the Total Sale Price (time – cash sale price) shown in the Disclosure Statement. (The Total Sale Price also includes the cost of insurance and any other charges we have agreed on). I choose to buy on credit. I promise to pay you the Total of Payments shown in the Disclosure Statement.

**Payments.** You will assign this contract to the Assignee shown on the other side of this contract. I will make my payments to the Assignee. I will pay the Total of Payments according to the payment schedule shown in the Disclosure Statement. I must make my payments on the same day of each consecutive month unless the payment schedule shows a different schedule. If any month does not have a date which is the same as the due date, I must make my payment on the last day of that month. [illegible] the order they become due. [illegible] you interest on the amount I owe from time to time at the rate of 8% per year. [illegible]

**Late Payment Charge.** I will pay you a charge for late payments as provided in the Disclosure Statement.

**Bad Check Charge.** I agree to pay a $20 bad check charge to you when a check given in payment of this loan is returned unpaid by the bank due to insufficient funds or no account with the bank.

**Refund For Early Payment In Full.** I may prepay this contract at any time. This means that I may pay any payment (or payments) before it is due. If this contract is prepaid in full, you will credit me with an actuarial refund of the unearned Finance Charge (time – price differential) according to Minnesota Statutes Section 168.73 as in effect on the date of this contract. You will subtract $15 from the refund so calculated. You will not credit me with any refund due that is less than $1.

**Buyer's Agreement Regarding Relationship with Seller, Price Quotation and Seller's Right to Sell Contract.** By signing this Agreement, I (Buyer) agree as follows: The Seller has not acted as my agent, fiduciary or broker for purposes of obtaining financing for the vehicle being purchased or otherwise. I have the right and opportunity to obtain financing for the vehicle from any source that I choose, and I have chosen to obtain such financing through the Seller. I understand and agree that the actual sale or purchase price of the vehicle is set forth in the Retail Installment Contract. I was not quoted a lower price if I agreed to purchase the vehicle for cash instead of credit, nor was the price increased because I elected to purchase on credit. The Seller has the right to sell, transfer and assign the Retail Installment Contract to a third party for any amount which is equal to, more than or less than the Amount Financed under the Retail Installment Contract, and any such sale, transfer or assignment will not affect the price that I pay for the vehicle.

**Security Interest.** To secure all my obligations under this contract, I give you a security interest under the Minnesota Uniform Commercial code in the following property: (1) the vehicle (see the definition above); (2) proceeds of the vehicle (for example, any money or property payable to me for the loss, destruction, or sale of the vehicle); (3) the amount payable to me from any mechanical breakdown contract covering the vehicle; (4) the amount payable to me from any insurance I buy as part of this contract; (5) the refund of any insurance premium or cost of mechanical breakdown contract which is part of Amount Financed. If you extend or renew this contract, your security interest will cover the amount you renew or extend. [illegible]

**INSURANCE ON COLLATERAL**

**I MUST KEEP THE COLLATERAL INSURED.** I will keep the collateral insured against physical damage and loss until I pay this contract in full. Collision and comprehensive or all-risk insurance would satisfy this requirement. I may buy the insurance from anyone I want, but the insurance company, the amount of insurance and the deductible must be acceptable to you. I will have the insurance company name you in the policy as a secured party, have the policy provide for payment to you in case of loss and will require the insurance company to notify you in writing at least 10 days before canceling coverage. I will give you a copy of the policy or give you other proof of the required insurance acceptable to you.

**COLLATERAL PROTECTION INSURANCE.** If I fail to keep the collateral insured as required or fail to give you proof of the required insurance acceptable to you, you may buy insurance (Collateral Protection Insurance) to protect your collateral, but you are not required to. If I haven't given you proof that the required insurance was in force as of the date of this contract, the effective date of the Collateral Protection Insurance can be as early as the date of this contract, even if the certificate of insurance for the Collateral Protection Insurance is not issued until later. If I have given you proof that the required insurance was effective as of the date of this contract, the effective date of the Collateral Protection Insurance can be as early as the date the required insurance expired or was canceled, even if the certificate of insurance for the Collateral Protection Insurance is not issued until later.

**PAYMENT FOR COLLATERAL PROTECTION INSURANCE.** If you buy Collateral Protection Insurance, you may add the premium for the insurance to the unpaid balance of my contract and increase my monthly payment to pay the premium during the remaining term of the insurance, or you may require me to pay the full premium for the insurance immediately.

**CANCELLATION OF COLLATERAL PROTECTION INSURANCE.** If you buy Collateral Protection Insurance, I may still obtain the required insurance from the insurance company or agent of my choice. If I do this and give you proof of the required insurance acceptable to you, you will cancel the Collateral Protection Insurance as of the effective date of the insurance I obtain. If my account is paid off while the Collateral Protection Insurance is in effect, you will cancel the Collateral Protection Insurance as of the date my account is paid off. If you cancel the Collateral Protection insurance, you will credit any refund of unearned insurance premium to my account. I will remain obligated to pay any earned insurance premium.

**IT IS BETTER FOR ME TO GET MY OWN INSURANCE.** I understand that if you buy Collateral Protection Insurance, it will probably be more expensive and will probably provide less insurance protection than insurance I could obtain from the insurance company or agent of my choice. The amount the Collateral Protection Insurance will pay may be less than the unpaid balance of my contract and may be less than the full value of the collateral. I understand that you urge me to contact an insurance agent to assist me in evaluating my own insurance needs and to advise me whether other, less expensive, insurance is available.

**Risk Of Loss.** If the vehicle is lost, damaged, or destroyed, I will still have to pay you all amounts due under this agreement.

**Replacement Of Vehicle.** If there is any damage or loss to the vehicle, I agree to notify you immediately of such loss or damage. I will instruct any insurance company and anyone else responsible for the damage or loss to make payment directly to you. You may, at your option, either release these payments to me to repair or replace the vehicle, or apply these payments to my debt under the contract. If you do release amounts to me to repair or replace the vehicle, I must repair or replace the vehicle to your satisfaction, and must also do whatever is necessary to give you a security interest in the repaired or replaced vehicle that is ahead of any other lien in the vehicle. You won't release any amount to me if I am in default under this contract.

**Taxes and Liens.** I will keep the vehicle free from any claims of others (for example, liens) and if I don't, you may pay any taxes, liens, or security interests against the vehicle. I agree to pay you these costs as soon as you bill me for them, plus interest on the unpaid costs due at 8% per year until paid. [illegible]

**Default.** I will be in default [illegible]

1) I fail to pay any payment in full on or before its due date, or
2) I fail to keep any other promise or agreement under this contract, or [illegible]
3) I have made any false or misleading statement on my application for credit [illegible]
4) My personal liability to you is discharged under the bankruptcy laws, or [illegible]
5) [illegible] or
6) I remove the vehicle from Minnesota for more than one month without your written permission, or
7) I use the vehicle for any unlawful purpose, or
8) I sell, lease, or otherwise transfer possession and control of the vehicle without your written permission, or
9) anything happens which you reasonably and in good faith believe endangers the vehicle or your security interest in the vehicle, or my ability to keep all my agreements under this contract, or
10) someone tries to take the vehicle from me by legal proceedings.

If I am in default, you have all of the rights provided by law and this contract, including the right to repossess (take back) the vehicle and the right to require immediate payment of everything I owe under this contract. You may do this without giving me any notice unless notice is required by applicable law. [illegible]

**Repossession.** If I am in default, I will make the vehicle available to you at a place you designate which is reasonably convenient to you and me. You may also enter my property to repossess the vehicle, but may not disturb the peace or break into a locked [illegible] property not covered by your security interest, you agree to hold such property and make it available to me for at least one month. If I fail to claim possession of such property within the one month period, I agree that you may dispose of the property without any risk of liability to me.

**Collection Costs.** I will pay any of your court costs to collect this contract from me. If you use a lawyer who is not your salaried employee to collect this contract from me, I will pay the lawyer's fee up to 15% of the amount owed under this contract. [illegible]

**Judgment.** If you get a judgment against me to collect the amount I owe you under this contract, you will credit me with a refund of the unearned Finance Charge. This credit will be calculated as if I had prepaid in full on the date judgment is entered. (See "Refund For Early Payment In Full" above.) [illegible]

**Insurance and Mechanical Breakdown Contracts.** If I purchased any insurance or a Mechanical Breakdown Contract, only the policy or certificate of insurance or the Mechanical Breakdown Contract that you give me contains the agreed terms of the insurance or contract. I will refer to the policy, certificate or contract for an explanation of my rights, and the coverage provided, and the limitations and exceptions to the coverage.

**Billing.** I may choose the name of one of us as the name you will use for billing and other mailing purposes. If I don't choose a name you may use the name of the first person to appear as Buyer on the other side of this contract for these purposes.

**Waiver and Delay in Enforcement.** You may waive (give up) or delay enforcement of any of your rights under this contract without losing them. For example, you may accept late payments from me without waiving your right to require that future payments be made when due. If you release any of us from this contract, the rest of us will not be released. You do not have to repossess the vehicle before you resort to your other legal remedies against me. You may renew or extend this contract by arrangement with any one of us.

**Law that Applies.** I agree that Minnesota Law applies to this contract. If part of this contract is unlawful, the remaining part of the contract will still be enforceable.

**Correcting Inaccurate Information Reported to Credit Bureaus.** I may notify you if you report inaccurate information about my account to any credit bureau. If the Retail Installment Contract is assigned to the third party shown on the front of this Retail Installment Contract or one of its corporate affiliates, I may notify you by writing to Department A, 206 8th Street, Des Moines, IA 50309 or by calling toll-free (800) 784-9273 and providing my name, address, account number (if known) and social security number along with a description of the inaccurate information.

**Sharing Information with Corporate Affiliates.** I agree that you (together with any of your assignees) may share with your corporate affiliates the information you have about me or my purchase. This includes information contained in my application, in this contract or from any other source. In addition, I agree that such information may be used for any purpose. If I decide I do not want you to share this information, I will inform you by writing to Enterprise Support Center, P.O. Box 5110, Mail Station 6053, Sioux Falls, SD 57117-5110 or by calling (800) 784-9273. Even if I notify you as such, I understand and agree that you may still share with your corporate affiliates information solely regarding transactions or experiences between you and me.

## ASSIGNMENT AND SELLER'S WARRANTIES

**(This assignment is not part of the sales contract between Buyer and Seller)**

For value received, the undersigned Seller hereby sells, assigns and transfers all of its right, title and interest in this Retail Installment Contract (the "Contract") and the secu described therein to the assignee shown on the reverse side and its successors, assigns and affiliates (the "Assignee"). Seller warrants that: (1) the Contract is genuine and constit the entire agreement with the Buyer, (2) the Buyer was at least 18 years old and competent at the time of sale, (3) the Contract is enforceable against the Buyer, (4) the down paym noted in the Contract was made in cash, unless otherwise noted, and no portion of the down payment was loaned to the Buyer by the Seller, directly or indirectly, or by any c connected with the Seller, (5) the Seller has no knowledge of any illegal use of the purchased vehicle described in the Contract, (6) the Seller has complied with all local, state a federal laws with regard to the sale of the purchased vehicle and with regard to the application for and granting of credit to the Buyers and guarantors, (7) the Seller has or w deliver any certificate or policies of insurance in the required period of time when applicable, (8) clear title to the purchased vehicle was transferred to the Buyers, subject to Contract, (9) that Seller has applied for a Certificate of Title in the name of the Buyer and that Assignee will be noted on the certificate as secured party entitled to first priority, ( there is now owing the amount set forth in the Contract, (11) all of Seller's obligations arising out of the sale have been and will be performed. In the event that any of the forego warranties be breached, Seller agrees to repurchase the Contract from the Assignee upon demand and will pay therefor the amount unpaid to the Assignee plus any and all c incurred by the Assignee with respect thereto. The remedies of the Assignee hereunder are cumulative and not exclusive. Seller agrees that the Assignee does not assume any of Seller's obligations under the Contract or under the sale.

If Buyer rescinds or attempts to rescind the Contract, or makes any claim or breach of warranty (whether manufacturer's or not), or if Buyer asserts any claim Buyer may h against Seller, as a defense, counterclaim, set-off, recoupment, or otherwise to any action for payment or possession brought by Assignee on the Contract or if Buyer makes a dir claim, by suit or otherwise, against Assignee which could be asserted against Seller, Seller does hereby unconditionally agree to repurchase the Contract from Assignee upon demc for the full amount then unpaid to Assignee under the Contract, whether or not the Contract is then in default. Seller in such case shall be entitled to all the rights of Assignee in Contract and in any pending action and shall assume the burden and the defense of any rescission action or claim whether the same is asserted directly or by way of defen counterclaim, set-off, recoupment or otherwise. Seller shall indemnify and save Assignee harmless from all costs, judgment, losses and expenses (including attorney fees) sustain by Assignee as a result of any claim or defense Buyer may have against Seller.

Any liability of the Seller pursuant hereto shall not be affected by any indulgence, compromise, extension or modification of terms of the Contract between the Buyer and Assignee or by the release of any party hereto, by operation of law or otherwise or the filing by the Buyer of a petition in bankruptcy. Seller waives notice of acceptance of c guarantee and notices of nonpayment and nonperformance. This Assignment and Seller's Warranties is subject to the separate dealer agreement, if any, between Seller c Assignee.

In addition to the foregoing warranties and covenants, the Seller assigns this Contract in accordance with one of the following provisions and all of the foregoing is incorporat in said provision and made a part thereof.

1. Without Recourse.

Seller ______________ By ______________ Title ______________ Date ______________

2. With Recourse. The Seller guarantees to the Assignee payment when due of every payment under the Contract when due and the balance due under the Contract up demand by the Assignee upon default under the terms of the Contract by the Buyer. The Assignee need not bring any proceeding against the Buyer for recovery hereunder [illegible]

Seller ______________ By ______________ Title ______________ Date ______________

3. Full Repurchase. The Seller will repurchase the purchased vehicle upon repossession by Assignee and will pay therefor the unpaid balance of the Amount Financed (includi accrued Finance Charge and other charges).

Seller ______________ By ______________ Title ______________ Date ______________

4. Partial Repurchase. The Seller, upon repossession of the purchased vehicle by the Assignee, will pay the unpaid balance of the Amount Financed (includi accrued interest and other charges) and receive the purchased vehicle, or in lieu thereof at the option of Seller will pay the Assignee on demand $__________ and relinquish all rights to the purchased vehicle without further obligation. In the event the purchased vehicle is not repossessed and the Buyer is in default under the terms of Contract, Seller will pay the Assignee on demand the unpaid balance of the Amount Financed (including accrued Finance Charge and other charges) but not to exceed the d amount stated above in this paragraph and will relinquish all rights to the purchased vehicle without further obligation.

Seller ______________ By ______________ Title ______________ Date ______________

5. Limited Repurchase. If the Buyer fails to pay the first ______________ installments, the Seller will repurchase the purchased vehicle upon repossession by the Assignee c will pay therefor the unpaid balance of the Amount Financed (including accrued Finance Charge plus other charges).

Seller ______________ By ______________ Title ______________ Date ______________

## ARBITRATION AGREEMENT

This Arbitration Agreement ("Agreement") is between the Seller ("Us" or "We" or "Our") including our assignees, agents, employees, officers, directors, shareholders, parent compa subsidiaries, affiliates, predecessors and successors, and the Borrower ("You" or "Your").

The parties agree as follows:

(1) **RIGHT TO ELECT TO ARBITRATE:** Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contrac or otherwise) arising out of or relating to your Retail Installment Contract or any prior or future dealings between us, resolved by binding arbitration. A Claim may include shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreeme your willingness to abide by the terms of this Agreement or the validity of this Agreement. Any such election may be made at any time. Both parties agree that neither part to initiate an arbitration proceeding before exercising remedies of self-help repossession, non-judicial foreclosure, replevin or other similar remedies. The filing of a lawsuit pursuit of other self-help remedies does not mean that either party has waived the right to subsequently elect to submit a Claim to arbitration.

(2) **RULES:** If arbitration is elected, it will be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("Rules"). If you have any que concerning the American Arbitration Association, or if you wish to obtain a copy of their Rules and forms, you may call (800) 778-7879. Any hearing will take place in the c of your residence. The arbitrator shall be neutral and either party may require that the arbitrator be a retired federal judge. The arbitrator shall apply all applicable law and provide a written decision that includes findings of fact and conclusions of law. Judgment upon the award issued by the arbitrator may be entered in any court having jurisdic

(3) **UNITED STATES ARBITRATION ACT:** The parties agree the Retail Installment Contract involves "commerce" as defined in the United States Arbitration Act ("USAA") 9, United States Code, and this Agreement shall be governed by the provisions of the USAA.

(4) **FEES & COSTS:** If you start an arbitration proceeding, you agree to pay the initial filing fee required under the Rules up to a maximum of $125. The AAA may, in the eve extreme hardship on the part of any party, defer or reduce the administrative fees. We agree to pay for any part of the filing fee and any deposit required under the Ru excess of $125. We also agree to pay the costs of the arbitration proceeding. If we start an arbitration proceeding, we will pay the filing fee, any deposit required und Rules, and the costs of the arbitration proceeding. Each party shall be responsible for their own attorney, witness, and expert fees and costs unless the Retail Installment Co (or applicable law) provides otherwise.

(5) **LIMITATION OF RIGHTS: IF ARBITRATION IS ELECTED BY EITHER PARTY UNDER THIS AGREEMENT: (A) YOU WILL NOT HAVE THE RIGHT TO GC COURT OR TO HAVE A JURY TRIAL; (B) YOU WILL NOT HAVE THE RIGHT TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDE THE RULES; (C) YOU WILL NOT HAVE THE RIGHT TO HAVE ANY CLAIM ARBITRATED AS A CLASS ACTION UNDER THE RULES OR UNDER ANY O RULES OF CIVIL PROCEDURE; (D) THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING WITH LIMITED RIGHTS TO APPEAL; (E) AGREEMENT SUPERSEDES ANY PRIOR ALTERNATIVE DISPUTE RESOLUTION AND/OR ARBITRATION AGREEMENT THAT MAY EXIST BETWEEN AND US; (F) IF ANY PROVISION OF THIS AGREEMENT IS HELD TO BE INVALID, THE INVALID PROVISION SHALL NOT AFFECT THE ENFORCEM OF ANY OTHER PROVISION OF THIS AGREEMENT.**

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT PURSUE A CLAIM IN COURT AND YOUR RIGHT TO HAVE A JURY TRIAL.**