**UNITED STATES DISTRICT COURT**
**STATE OF MINNESOTA**
**FOURTH DIVISION**

Court File No.: CV- 00-2632 ~~JEL~~ JNE/JGL

Cheritylee Ann Stevens and David Mathew Stevens,

Plaintiffs,

vs.

**AFFIDAVIT OF GREGORY J. JOHNSON**

Brookdale Dodge, Inc.

Defendant.

STATE OF MINNESOTA )
) ss.
COUNTY OF RAMSEY )

Gregory J. Johnson, being duly sworn, states and alleges as follows:

1. That I am one of the attorneys of record for Defendant Brookdale Dodge, Inc. in the above-entitled matter and that this Affidavit is made and filed in support of Defendant's Motion for Summary Judgment.

2. That attached hereto as Exhibit A is a copy of the unpublished decision in the case entitled *Vang v. Morrie's Minnetonka Ford*, 2001 WL 1589614 (D. Minn. Dec. 11, 2001).

3. That attached hereto as Exhibit B is a copy of the unpublished decision in the case entitled *Peter v. Village Imports Co.*, 2001 WL 1640130 (D. Minn. Oct. 9, 2001).

4. That attached hereto as Exhibit C is a copy of the unpublished decision in the case entitled *Tripp v. Charlie Falk Auto*, 2001 WL 1105132 (E.D. Va. 2001).

SCANNED
JUN 15 2004
U.S. DISTRICT COURT ST. PAUL

5. That attached hereto as Exhibit D is a copy of the unpublished decision in the case entitled *Malchow v. GMI Acquisition, Inc.*, 2002 WL 31185865 (D. Minn. Oct. 1, 2002).

6. That attached hereto as Exhibit E is a copy of the unpublished decision in the case entitled *Collins v. Ray Skillman Olds-GMC Truck, Inc.*, 2001 WL 1711466 (S.D. Ind. Dec. 3, 2001).

7. That attached hereto as Exhibit F is a copy of the unpublished decision in the case entitled *Crowe v. Joliet Dodge & Union Acceptance Corp.*, 2001 WL 811655 (N.D. Ill. July 18, 2001).

8. That attached hereto as Exhibit G is a copy of the unpublished decision in the case entitled *Wojcik v. Courtesy Auto Sales, Inc.*, WL 31663298 (D. Neb. 25, 2002).

9. That attached hereto as Exhibit H is a copy of the unpublished decision in the case entitled *Burns v. Elmhurst Auto Mall, Inc.*,2001 WL 521840 (N.D. Ill. May 16, 2001).

10. That attached hereto as Exhibit I is a copy of the unpublished decision in the case entitled *Leguillou v. Lynch Ford, Inc.*, 2000 WL 198796 (N.D. Ill. Feb. 14, 2000).

11. That attached hereto as Exhibit J is a copy of the unpublished decision in the case entitled *Jasper v. New Rogers Pontiac, Inc.*, 1999 WL 1024522 (N.D. Ill. Nov. 5, 1999).

12. That attached hereto as Exhibit K is a true and correct copy of pages 1, 5, 11-12, 20-22, 24, 33 of the deposition of Plaintiff Cheritylee Ann Stevens dated March 19, 2002.

13. That attached hereto as Exhibit L is a true and copy of pages 1, 5, 10-11, 47-48 of the deposition of Plaintiff David Stevens dated March 19, 2002.

14. That attached hereto as Exhibit M is a true and correct copy of MADA Form 70888, executed, in part, by Plaintiff Cheritylee Ann Stevens and dated January 11, 2000.

15. That attached hereto as Exhibit N is a true and correct copy of a letter that your

affiant sent to Plaintiffs' counsel dated January 2, 2003 and the proposed stipulation of dismissal attached thereto. Plaintiffs' counsel did not respond to this letter, necessitating Defendant's motion for summary judgment.

**FURTHER YOUR AFFIANT SAYETH NOT.**

Gregory J. Johnson

Subscribed and sworn to before me
this 20th day of February, 2003.

Notary Public

JOAN R. ERDMAN
Notary Public
Minnesota
My Commission Expires Jan 31, 2005

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Fong VANG, Plaintiff,
v.
MORRIE'S MINNETONKA FORD, a Minnesota Corporation, Defendant.

No. 01-82-(DWF/AJB).

Dec. 11, 2001.

Thomas J. Lyons, Esq., Lyons & Associates, Little Canada, appeared on behalf of Plaintiff.

Gregory J. Johnson, Esq., Johnson & van Vliet, St. Paul, appeared on behalf of Defendant.

MEMORANDUM OPINION AND ORDER

FRANK, J.

Introduction

*1 The above-entitled matter came on for hearing on December 7, 2001, pursuant to Defendant's Motion for Summary Judgment. By his Complaint, Plaintiff Fong Vang alleges that Defendant Morrie's Minnetonka Ford ("Minnetonka Ford") violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, specifically 15 U.S.C. § 1638(b)(1) and Revised Regulation Z, 12 C.F.R. § 226.17, by failing to provide him with a separate written disclosure statement, before he reviewed and signed an installment contract, containing those same written disclosures. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment.

Background

The parties have stipulated to the following facts. On November 27, 2000, Fong Vang visited Minnetonka Ford in order to purchase an automobile. To defray the cost of his purchase, Mr. Vang wanted to trade in his 1988 Honda Accord with mileage of 191,854, and Minnetonka Ford agreed to provide a trade-in allowance of $300. Mr. Vang applied the trade-in allowance and a down-payment of $1,000 to the price of a 1995 Mazda Protege LX, leaving the price at $4,995.

To effectuate the purchase, Mr. Vang executed a vehicle purchase contract which set forth the "amount due on delivery" as $5,195.18 and stated in relevant part: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." Subsequent to Mr. Vang's execution of the purchase contract, the dealership's Finance and Insurance representative ("the FI representative") completed a Ford Motor Credit Company ("FMCC") installment sale contract in order to arrange third-party financing and presented the contract to Mr. Vang for his review and signature, if Mr. Vang found the terms to be acceptable. The installment contract contained a segregated box entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURES." Within the box were listed the following disclosures: (1) ANNUAL PERCENTAGE RATE (23.25%); (2) AMOUNT FINANCED ($5,195.18); (3) FINANCE CHARGE ($1,413.70); (4) TOTAL OF PAYMENTS ($6,608.88); and (5) TOTAL SALE PRICE ($7,908.88). After reviewing the installment contract, Mr. Vang signed it, immediately above a provision which stated: "NOTICE TO BUYER: Do not sign this contract before you read it or if it contains any blank spaces. You acknowledge receipt of a true and completely filled in copy of this contract, signed by both you and the seller, at the time of signing." The FI representative removed a carbon copy of the installment contract marked "BUYER'S copy" and gave it to Mr. Vang. Mr. Vang then executed a "Conditional Delivery Agreement" which stated in relevant part: "YOU understand and agree that the vehicle has been delivered to YOU conditionally subject to approval of financing ... If financing is not approved, I will notify YOU and YOU agree to immediately return the vehicle to ME ... If financing is not approved, any installment sales contract executed for purchase of the above-described vehicle shall be null and void."

*2 After executing the documents described above, still on November 27, 2000, Mr. Vang took delivery of the Mazda Protege. On December 1, 2000, FMCC declined to extend financing to Mr. Vang based on his credit history. Minnetonka Ford advised Mr. Vang that it could attempt to arrange alternative third-party financing but that Mr. Vang would have to increase his down-payment to $1,800. Mr. Vang decided not to purchase the vehicle.

Based on the above facts, Mr. Vang brought the current action against Minnetonka Ford, alleging violation of the Truth in Lending Act. Minnetonka Ford contends, however, that it made the required and

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

EXHIBIT A

accurate disclosures at an appropriate time in compliance with TILA. As such, the parties now bring cross-motions for summary judgment.

Discussion

1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action." ' Fed.R.Civ.P. 1. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Krenik,* 47 F.3d at 957.

2. Issues

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.,* was enacted for the purpose of "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *See* 15 U.S.C. § 1601(a). The specific provision at issue here is 15 U.S.C. § 1638 which requires in part that a creditor disclose: (1) its identity; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; and (5) the total of payments. 15 U.S.C. § 1638(a). A creditor is further required to make such disclosures "before the credit is extended" and in a manner such that they are "conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization." 15 U.S.C. § 1638(b)(1). Regulation Z, 12 C.F.R. § 226.1, *et seq.,* the TILA implementing regulation, explicitly provides that:

> *3 (a) Form of disclosures.
>
> (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep ...
>
> (b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction ...

12 C.F.R. § 226.17(a) & (b). In sum, for purposes of the claim brought here, a creditor must make the required TIL disclosures to the borrower, in writing and in a form that the borrower can take with him, before the transaction is consummated.

The parties stipulate that until a third-party creditor became involved, the dealership qualified as a creditor for purposes of TILA and was thus obligated to make the required TIL disclosures. With respect to the alleged § 1638 violation, the parties do not dispute the form of disclosure, but rather its timing. Plaintiff Vang maintains that the manner in which he received the TIL disclosures on the installment contract was not before, but rather at the same time as the consummation of the transaction and therefore constitutes a violation of TILA, specifically 12 C.F.R. § 226.17(b). To the contrary, Defendant argues that indeed Mr. Vang received the disclosures before the transaction was consummated, in full compliance with TILA. The Court agrees.

Plaintiff urges the Court to follow the reasoning in *Polk v. Crown Auto, Inc.,* 221 F.3d 691 (4th Cir.2000), and several courts that have relied on *Polk,* for its holding that provision of TIL disclosures in a manner akin to the instant case does not meet the TILA timing requirement. *See also, Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087, 1091-93 (W.D.Mich.2000); *Walters v. First State Bank,* 134 F.Supp.2d 778 (W.D.Va.2001). In *Polk,* the Fourth Circuit held that oral disclosures followed by the execution of a contract and the subsequent delivery of a copy of the signed contract containing the required disclosures did not satisfy the TILA requirement that the written disclosures be provided before consummation. Defendant, however, points to a line of cases that have held to the contrary. *See Nigh v. Koons Buick Pontiac GMC Inc.,* 143 F.Supp.2d 535, 548-49 (E.D.Va.2001), *Tripp v. Charlie Falk Auto,*

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2001 WL 1105132 (E.D.Va.2001); *Diaz v. Joe Rizza Ford, Inc.*, 2001 WL 1360315 (N.D.Ill.2001).

This Court agrees with the Fourth Circuit in *Polk* when it held that the relevant TILA provisions should be read in conjunction with each other such that the borrower must be presented with the TIL disclosures, in writing, prior to consummation of the transaction, and in a form that can be carried away. However, this Court respectfully disagrees with the Fourth Circuit's interpretation of the requirement to the extent that it would invalidate the procedure followed by the Defendant in the instant case. By its current practice, Defendant presents to the borrower a copy of the contract with the requisite TIL disclosures. The borrower then has the opportunity to review the contract, including the disclosures, and then makes the decision whether or not to execute the contract. There is nothing before the Court that would support the conclusion that the borrower is somehow precluded from reviewing the unsigned contract for five minutes, five hours, or even five weeks. Either way, the borrower is provided with a written copy of the disclosures that he may take with him. In this case, Mr. Vang was given the opportunity to review the contract, and he then made the voluntary decision to execute it immediately before taking his copy with him.

*4 If the Court were to accept Plaintiff's position, then an acceptable practice would be to provide to the borrower a copy of the contract, as the Defendant is accustomed, and to also provide an additional copy of the disclosures. The borrower could still act as Mr. Vang did in this case and execute the contract immediately. However, under those circumstances, the borrower would receive *two* copies, the "borrower copy" and the additional copy, both of which could be taken with him. As the court stated in *Diaz*, this Court fails to see a meaningful distinction between separating the borrower copy before or after the execution when there is no indication that the borrower is precluded from taking the unsigned copy with him instead, if he so chooses. *Diaz*, 2001 WL 1360315, at *2.

To the extent that Plaintiff is actually arguing that the above scenario would also violate TILA because not enough time would pass between disclosure and consummation, the Court does not read TILA to impose a waiting period of any kind, but rather an opportunity for the borrower to evaluate the terms and to shop elsewhere, if he so desires. In effect, TILA leaves the duration of any "waiting period" up to the borrower. To do otherwise would appear to constrict, rather than to expand and protect, the rights of consumers and their ability to purchase. TILA was not intended to thwart impromptu purchasers, but rather to ensure the availability of information for *all* purchasers.

To the extent that consummation arguably did not occur upon Mr. Vang's execution of the installment contract because of the condition included on the purchase contract, *i.e.*, validity of the contract conditioned upon proper disclosure and acceptance of credit, the Court's determination would be no different. If, for example, consummation did not occur until financing was secured and accepted, which did not occur here, then clearly both parties would agree that Mr. Vang received the required disclosures *before* the transaction was consummated. Nonetheless, regardless of whether consummation occurred upon execution or financing and regardless of whether financing is considered a condition precedent or subsequent, the Court finds that Mr. Vang received a written copy of the required disclosures before the transaction was consummated. Accordingly, the Court finds Plaintiff's claim of a TILA timing violation to be without merit and thus does not reach the question of whether statutory damages may be appropriately awarded for a TILA timing violation.

Plaintiff also alleges that Minnetonka Ford violated TILA by failing to label the TIL disclosures as "estimates," given that the transaction was contingent upon financing approval of the disclosed terms by a third-party lender. 12 C.F.R. § 226.17(c)(2). The Court finds Plaintiff's argument on this issue to be without merit. At the time the terms were disclosed, Defendant knew them to be accurate, and Plaintiff agreed to be bound by those terms, if third-party lender approval was obtained. *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir.2000) (finding no TILA "estimates" violation because borrower would have been obligated to purchase pursuant to disclosed terms had financing condition been satisfied). Indeed, as the Court noted above in its discussion of the stipulated facts, both the purchase contract and the conditional delivery agreement contained language indicating that the transaction was conditioned upon third-party lender approval of the agreed upon terms. If those terms could not be met, as was the case here, then the parties could attempt to renegotiate the contract and new disclosures would have to be made. Contrary to Plaintiff's position, the fact that the borrower is not bound to the contract

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

unless the agreed upon terms can be obtained from a third-party lender appears to serve the interests of the consumer. The fact that a borrower may be disappointed that credit terms cannot be obtained is unfortunate but does not constitute evidence of a TILA violation.

*5 For the reasons stated, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED;

2. Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 15) is DENIED; and

3. Plaintiff's Amended Complaint (Doc. No. 8) is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

2001 WL 1589614 (D.Minn.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Dean Hermann PETER, on behalf of himself and all other similarly situated
Plaintiff,
v.
VILLAGE IMPORTS COMPANY, a Minnesota corporation, Defendants.

No. 01-12 DSD/JMM.

Oct. 9, 2001.

Eric L. Crandall, Esq., Crandall Law Office, Stillwater, counsel for plaintiff.

Gregory J. Johnson, Esq. and Johnson & van Vliet, St. Paul, counsel for defendants.

ORDER

DOTY, J.

*1 This matter is before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Based on a review of the file, record, and proceedings herein, the court denies plaintiff's motion and grants defendant's motion.

BACKGROUND

On March 29, 2000, David Hermann Peter ("Peter") visited Wayzata Mitsubishi and expressed an interest in purchasing a 2000 Mitsubishi Eclipse GT automobile. (Belisle Aff. ¶ 3; *see also* Johnson Aff. ¶ 3). Peter wanted to trade in his 1998 Ford Explorer to purchase an Eclipse. (Belisle Aff. ¶ 3). Peter agreed to purchase an Eclipse for $23,452 and agreed to accept a trade-in allowance of $16,252 on his Explorer. (*Id.*) As a result, the total taxable sale was $7,200. (*Id.*) The total amount due on delivery, adding together the total taxable sale ($7,200), applicable sales tax ($648), fees ($323), and the outstanding lien on Peter's Explorer ($11,700) was $19, 691. (*Id.*) Peter executed a purchase contract setting forth the terms of the purchase. [FN1]

FN1. Peter's memorandum in opposition to defendant's motion for summary judgment mentions that only he signed the purchase contract. While no one at the dealership signed the agreement when Peter bought the Eclipse, there is no dispute that Village Imports performed its part of the bargain and that Peter left the dealership with the Eclipse.

After Peter executed the purchase contract and filled out a credit application, he met with the finance manager in Wayzata Mitsubishi's business department. (*Id.* ¶ 4). Peter agreed to make a purchase down payment of $7,991 to reduce the amount financed from $19,691 to $11,700. (*Id.*) Wayzata Mitsubishi arranged financing for the purchase. (*Id.*) The purchase contract stated: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." (Johnson Aff. Ex. 1).

After the parties discussed financing, Peter was presented with an installment contract for his review. (Belisle Aff. ¶ 4). Financing was arranged through Mitsubishi Motors Credit of America ("MMCA") over a 36-month period at 0.00 percent annual percentage rate ("APR") with no payments for the first 90 days. (Johnson Aff. Ex. 2). The installment contract that was presented to Peter contained a segregated truth-in-lending disclosure box entitled, "DISCLOSURES PURSUANT TO TRUTH IN LENDING ACT," which also identified in bold, the "ANNUAL PERCENTAGE RATE" (0.00%), "AMOUNT FINANCED" ($11,700.00), "FINANCE CHARGE" ($0.00) "TOTAL OF PAYMENTS" ($11,700.00) and the "TOTAL SALE PRICE" of $24,243.00. (*Id.*)

Peter reviewed the installment contract, including the Truth in Lending Act (TILA) disclosures, and signed the contract. (Belisle Aff. ¶ 4.) Immediately above Peter's signature is a provision stating, in bold "NOTICE TO THE BUYER: 1. Do Not Sign This Contract Before You Read It OR If It Contains Any Blank Spaces. 2. You Are Entitled To An Exact Copy Of The Contract Before You Sign." (Johnson Aff. Ex. B). After signing, Peter handed the installment contract back to the Finance Manager. (Belisle Aff. ¶ 4). The Finance Manager then tore off the carbon copy marked "Borrower" on the bottom and gave Peter that copy. [FN2] (*Id.*) Peter then took delivery of the vehicle (Belisle Aff. ¶ 4).

FN2. In response to Wayzata Mitsubishi's request of admission, Peter acknowledged

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

EXHIBIT B

that he reviewed all of the terms of the installment contract, including the TILA disclosures, before he executed the contract and that he received a copy of the installment contract. (Johnson Aff. Ex. A).

*2 Peter filed this action against Village Imports alleging that Village Imports had engaged in unlawful practices in connection with the sale and finance of the motor vehicle, specifically, by failing to provide Peter with a copy of the retail installment contract prior to the time of execution. Village Imports now brings this motion for summary judgment, and Peter brings a motion for partial summary judgment. For the reason stated, defendant's motion is granted and plaintiff's motion is denied.

## DISCUSSION

To prevail on a motion for summary judgment, the moving party must demonstrate to the court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c). For purposes of summary judgment, a fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for the nonmoving party. *Id.* No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. However, if a plaintiff cannot support each element of its claim, summary judgment must be granted, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23. With this standard at hand, the court considers the parties' cross motions for summary judgment.

### A. No TILA Violation Has Occurred.

Peter argues that the court should enter partial summary judgment against Village Imports for violation of TILA based on Village Imports' failure to provide Peter with a "timely" copy of the finance agreement prior to the time of execution. Village Imports argues that it did provide a copy of the finance agreement in accordance with TILA.

TILA, 15 U.S.C. § 1601 *et seq.* (1994), as implemented by Regulation Z, 12 C.F.R. pt. 226 (2000), was enacted by Congress as a tool "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ... and to protect the consumer against inaccurate and unfair credit billing ... practices." [FN3] 15 U.S.C. § 1601(a); *see also First Nat'l Bank v. Office of the Comptroller,* 956 F.2d 1456, 1461 (8th Cir.1992). To meet this end, TILA mandates that creditors make specific disclosures when extending credit to consumers. *See* 15 U.S.C. § 1638(a). These disclosures include the identity of the creditor, the amount financed, the finance charge and the total number of payments. *Id.* TILA also requires that before consummation of the deal, consumers be given a copy of the credit term that they can keep to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available." 15 U.S.C. § 1601(a). Because TILA is to be broadly construed to provide protection for the consumer, any failure to disclose information as required by TILA or Regulation Z results in a technical violation. *Riggs v. Gov't Emp. Financial Corp.,* 623 F.2d 68 (9th Cir.1980).

FN3. In his memorandum of law in support of his motion for partial summary judgment Peter raises an allegation that the terms of the contract are not those that were orally negotiated by the parties. Since this claim was never pleaded in the underlying complaint the court will not address it. The court further notes that TILA is concerned with disclosures concerning the cost of credit. Peter's challenge to the bargain reached by the parties does not fall under the purview of TILA. TILA "is not intended as a vehicle for pursuing contract actions" whereby the purchaser can challenge the terms of the bargain. *Paull v. Chrysler Credit Corp.,* 544 F.Supp. 848, 851 (N.D.Ill.1982), *aff'd* 705 F.2d 944. Thus, Peter's claim concerning the oral agreements will not be considered by the court in determining the propriety of summary judgment.

*3 Village Imports is a creditor as defined by 15 U.S.C. § 1602(f). Peter is a consumer as defined by 15 U.S.C. § 1602(h). The deal that took place on March 29, 2000, between Peter and Village Imports was a credit sale under 15 U.S.C. § 1602(g). *See also*

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*12 C.F.R. § 226.2(a)(16)* (defining "credit sale" as "a sale in which the seller is a creditor").

Peter argues that the disclosure of the credit terms contemporaneous with his obligation to sign the sales contract failed to provide him with an opportunity to "shop" for a better interest rate. [FN4] While the Eighth Circuit has never directly addressed this issue, the court believes that giving a buyer the credit terms on a form that he is to sign complies with the timing requirements of TILA. The retail installment contract given to Peter contained all of the credit and financing terms of the transaction. Peter was given the opportunity to read the contract before he signed it. Peter did not become obligated on the credit transaction until he signed the contract. If Peter did not like the terms, he could have chosen not to sign at the time and taken the agreement with him to "shop" for a better rate. Peter made the choice to sign immediately and did not shop around. Village Imports cannot be held liable for Peter's decision.

FN4. The court finds this argument peculiar since Peter obtained an interest-free loan from Village Imports through MMCA. It is difficult to conclude that there may be a creditor willing to give a lower rate of interest than 0.00 percent.

Peter cites *Polk v. Crown Auto, Inc.* for the proposition that providing a buyer a retail installment contract itself for the buyer to sign does not satisfy the mandate and policy of TILA. 221 F.3d 691 (4th Cir.2000). The court disagrees. The principal holding in *Polk* is that an auto dealership cannot give a buyer a copy of his credit terms after the consummation of a transaction. *Id.* The dealer must provide a detailed disclosure of the credit terms in writing before consummation of the transaction. *Id.* at 692. Furthermore, *Polk* is distinguishable because in that case the dealer explained the credit terms orally, had the buyer sign forms and then gave the buyer the full written disclosures in a form that he could keep. *Id.* at 691. Here, Peter was given an unsigned copy of the retail installment contract (which contained the TILA disclosures), he reviewed it and then signed it. The court finds that Village Imports satisfied TILA when it gave Peter the unsigned contract containing the TILA disclosures and Peter had the opportunity to defer signing it if he found the terms unacceptable.

B. No Actual or Statutory Damages

Even if the court adopted Peter's overly broad interpretation of TILA, Village Imports would still be entitled to summary judgment since Peter cannot demonstrate either statutory or actual damages. Statutory damages are only available for violations of 15 U.S.C. § 1638(a)(2), (3), (4), (5), (6) and (9). Otherwise, an individual is limited to suing for actual damages. 15 U.S.C. § 1640(a)(4). Village Imports's alleged failure to provide timely disclosures is a purported violation of 15 U.S.C. 1638(b) for which *only* actual damages are available. *Id.* And Peter cannot assert any actual damages here since he received an interest rate of 0.00 percent. In other words, the court does not believe that Peter can reasonably contend that he suffered any actual damages on the basis of his alleged inability to shop around for a better rate since the one he received in the retail installment contract he signed with Village Imports was 0.00 percent. In sum, even if TILA were applicable, Peter would not be entitled to recover any statutory or actual damages.

CONCLUSION

*4 Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment is granted;

2. Plaintiff's motion for partial summary judgment is denied; and

3. Plaintiff's complaint is dismissed with prejudice

LET THE JUDGMENT BE ENTERED ACCORDINGLY.

2001 WL 1640130 (D.Minn.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, E.D. Virginia.

Arthur TRIPP, et al. Plaintiff.
v.
CHARLIE FALK AUTO, et al. Defendant.

No. CIV. 3:00CV512.

Aug. 22, 2001.

MEMORANDUM OPINION

SPENCER, District J.

*1 This matter is before the Court on the Parties' Motions for Summary Judgment. For the reasons discussed below, the Defendants' Motion is GRANTED and the Plaintiffs' Motion is DENIED.

Procedural History

On August 8, 2000, a Complaint filed with the Clerk's Office named Arthur and Meldredth Tripp as the Plaintiffs. On September 29, 2000, Plaintiffs filed an Amended Complaint adding Timothy Shepherd, Christie Shepherd and others similarly situated as Plaintiffs. The Amended Complaint sets forth five causes of action: Violations of the Truth in Lending Act; Violations of the Federal Odometer Act; Conversion; Violations of the Virginia Consumer Protection Act; and Violation of Va.Code § 8.9-507 (UCC). Charlie Falk's Auto Wholesale, Inc. (CFAW) is named in all five claims. Future Finance Company, Inc. (Future) is named in two claims. The Individual Defendants, Charlie Falk, Sr., Katherine Falk, and Fred Hailey, are only named in one claim.

On November 7, 2000, this Court issued an order denying the Defendants' Emergency Motion for Temporary Sealing and granting their Motion to Stay Litigation for Thirty Days. During that thirty-day period, the Defendants filed Motions to Dismiss in addition to Motions (1) to Quash, (2) for Protective Order, (3) to Transfer Case, (4) to Stay, and (5) for a Limit of Discovery to Class Discovery. On January 3, 2001, this Court issued an Order granting the Defendants' Motion to Stay All Discovery Pending Resolution of Dispositive Motions, and Limit of Discovery to Class Discovery, and for Protective Order.

This Court granted the motion to dismiss the Individual Defendants and denied CFAW's and Future Finances' motions to dismiss. This Court has also taken under advisement the outstanding discovery motions of the Parties pending the conclusion of Phase I discovery and the disposition of Phase I summary judgment motion. Phase I issues are limited to those specifically applicable to and arising specifically from the Tripp transaction on August 7, 1999. The summary judgment motions now before this Court are those focused on Phase I issues alone.

Undisputed Facts

Plaintiffs negotiated a deal at the Broad Street location of Charlie Falk's Auto Wholesale (CFAW) on August 7, 1999, for the purchase of a 1994 Ford Taurus. The Tripps intended to finance the purchase. After the Plaintiffs had selected the vehicle and negotiated the basic terms of the deal, a CFAW employee placed several documents before them, highlighting and explaining important clauses in each. Among these documents were a Buyer's Order; a Motor Vehicle Installment Sales Contract, Truth-in-Lending Disclosures, Promissory Note and Security Agreement; an Application for Certificate of Title and Registration; a Re-Assignment of Title by Virginia Motor Vehicle Dealer form; a document titled Important Notice; and a Future Finance Company GAP Waiver.

The Buyer's Order contains an odometer disclosure of 67,154 miles and includes a paragraph titled "Seller's Right to Cancel" which articulates the buyer's understanding and agreement that the sale is "contingent upon Future Finance Company, Inc.... approving and purchasing the [retail installment sale] contract from [CFAW]." Buyer's Order, Paragraph 10. This Paragraph also contains the buyer's understanding and agreement that "in the event the contract is not purchased from [CFAW] for whatever reason, the contract shall be voidable at the option of [CFAW]." *Id.* In the event of a voided contract under this Paragraph the "Buyer shall receive Buyer's cash downpayment and other payments Buyer may have made to Seller... Buyer understands and agrees that Buyer will be responsible for an amount of money equal to one-half (1/2) the allowable Internal Revenue Service rate per mile for the number of miles Buyer placed on the vehicle and that this amount, along with any charges for physical damage or expenses to recover the vehicle, if applicable, will be deducted from the money Buyer is to receive." *Id.*

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

EXHIBIT C

*2 The Motor Vehicle Installment Sale Contract, Truth-in-Lending Disclosures, Promissory Note and Security Agreement (Credit Contract), contains both the TILA disclosures and a clause under the heading "Agreement to Return Vehicle if Financing is not Approved" which is identical to Paragraph 10 in the Buyer's Order. The Credit Contract also reflects the inclusion of a $395.00 processing fee in the amount financed. The Important Notice contains the language of Buyer's Order Paragraph 10 in addition to an affirmation above the signature line which reads: "All buyers and co-buyers are requested to read this notice carefully and sign below acknowledging complete understanding of the content."

The Re-Assignment of Title by Virginia Motor Vehicle Dealer (Re-Assignment Form) and Application for Certificate of Title and Registration (title Application) forms contain odometer disclosure showing the mileage on the Taurus as 67,154 on the date of purchase, August 7, 1999. The Re-Assignment Form and the GAP Waiver identify Future Finance as the lienholder. CFAW required the Plaintiff to have them process the title documents for the Taurus with the DMV. The articulated purpose of this requirement is to ensure that the lienholder's interest is properly recorded. The Plaintiffs were also required to procure insurance naming Future Finance as the payee.

Mr. and Mrs. Tripp signed each of the documents placed before them thereby consummating the deal and contractually binding themselves. The deal, as negotiated on August 7, 1999, required the Tripps to make a $1,000 downpayment. On August 7, 1999, before driving the Taurus off the lot, Mr. and Mrs. Tripp made a payment of $500. The balance was paid in two installments on August 18, and 24, 1999.

At some later date, CFAW represented to the Tripps that Future Finance did not approve the deal as negotiated but would reconsider it if they were willing to add $500 to their downpayment. The Tripps refused. CFAW repossessed the Taurus on or about August 24, 1999. Mr. Tripp went to the Broad Street location of CFAW on or about August 25, 1999, and requested the immediate return of his downpayment. He was told that he could only receive a refund that day if he went to the Norfolk dealership. Mr. and Mrs. Tripp traveled to Norfolk and spoke with Bradley Furman. Mr. Furman again informed the Tripps of the option to purchase the vehicle with an increased downpayment. The Tripps again rejected this offer, and requested a refund of their downpayment. Mr. Furman told them they were entitled to $656.80 after the contractual mileage charge was deducted and that they would be required to sign a Release in order to receive the refund that day. The Tripps signed the Release and accepted their refund.

This Release bars "any and all actions, causes of action, suits, debts, obligations, sums of money, accounts, covenants, contracts, agreements, promises or any claims, demands or rights of any kind whatsoever, in law or equity, which Tripp ever had,, [sic] now has or hereafter may, shall or may have by reason of any matter, cause or thing pertaining to the purchase and/or financing of one automobile from CFAW." *See* Release.

*3 There is agreement that the Plaintiffs were presented with the copies that they signed as those documents were explained by a CFAW employee. Thus, the pivotal questions are whether the Tripps were (1) given the opportunity to review the documents; (2) able to take the unexecuted documents with them to think about and shop with; and (3) whether they should have been made specifically aware of this option.

Issues Presented

*The Release*

The pivotal and potentially dispositive issue in this case is the validity of the Release signed by the Plaintiffs on August 25, 1999. If the Release is valid and binding then the Plaintiffs are barred from asserting any of their claims against CFAW. In the alternative, if the Release is invalid, this Court must decide whether CFAW's actions in the August 7, 1999, transaction with Mr. and Mrs. Tripp were violative of either or both the Federal Odometer Act and the Truth-in-Lending Act (TILA).

*Federal Odometer Act Violations*

This Court must determine whether CFAW's actions during the August 7, 1999, transaction violated the placement requirement of the Odometer Act. If a violation is found, this Court must further decide what type of damages are warranted. Determining the existence of an Odometer Act violation on these facts requires deciding (1) whether the Act allows for the use of a Re- Assignment Form by a Dealer where space remains on the title; (2) whether the Act requires the Plaintiffs to prove CFAW's intent to defraud; and (3) whether CFAW ever transferred

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

ownership of the Taurus to Mr. and Mrs. Tripp.

*Truth-in-Lending Violations*

The questions here are whether the Truth-in-Lending Act's pre-consummation requirement was satisfied by CFAW's employee's explanation and presentation of a single set of the disclosures contemporaneously with his request that the Tripps sign the documents in order to memorialize the deal. Whether the financing information was properly disclosed and labeled on the Credit Contract?

Discussion

*The Release*

Virginia has consistently followed the "plain meaning" rule when construing written agreements. More precisely, "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.... This is so because the writing is the repository of the final agreement of the parties." *See Berry v. Klinger,* 225 Va. 201, 208, 300 S.E.2d 792 (1983) (internal quotations omitted). Virginia has also long recognized that a party may enter into an agreement in which he waives a significant right. *See Gordonsville Energy, LP v. Virginia Electric and Power Co.,* 257 Va. 344, 355, 512 S.E.2d 811 (1999) ; *Blue Cross of Southwestern Va. v. McDevitt & Street Co.,* 234 Va. 191, 196-97, 360 S.E.2d 825,(1987) (waiver of right to claim damages); *Flintkote Co. v. W.W. Wilkinson, Inc.,* 220 Va. 564, 570, 260 S.E.2d 229 (1979) (waiver of right to jury trial on amount of attorney's fees); *VNB Mortgage Corp. v. Lone Star Indus., Inc.,* 215 Va. 366, 369, 209 S.E.2d 909, 912 (1974) (waiver of right to file mechanic's lien). Thus, generally, a party may waive by contract any right conferred by law or contract if that party had knowledge of the right and intended to waive it. *See Gordonsville,* 257 Va. at 356, 512 S.E.2d 811 (citing *Roenke v. Virginia Farm Bureau Mut. Ins. Co.,* 209 Va. 128, 135, 161 S.E.2d 704 (1968); *Woodmen of the World Life Ins. Soc. v. Grant,* 185 Va. 288, 299, 38 S.E.2d 450, (1946)).

*4 The first question then is whether the Release signed by the Tripps is a valid contract. The creation of a valid contract requires an offer, acceptance and the exchange of valuable consideration. The Tripps only received from CFAW that which they were already entitled to, their money back. Therefore the Release is not supported by adequate consideration and it is not a valid contract. Because the Release is unenforceable this Court must reach the Odometer and Truth-in-Lending Act claims.

*Federal Odometer Act Violations*

Virginia is a strict title state in which ownership does not pass until title passes. *See Thomas v. Mullins,* 153 Va. 383, 149 S.E. 494 (1929); *Rawl's Auto Auction v. Dick Herman Ford, Inc.* 690 F.2d 422, 426-27 (4th Cir.1982) (citing *Thomas v. Mullins* ). If, a buyer contracts for the seller to deliver title to the DMV for the completion of vehicle registration and tag work, the seller need not deliver the title to the buyer [at the time of sale]. *See* Va.Code § 46.2-628. 49 U.S.C. § 32705(a)(1) requires a transferor to either disclose the mileage registered on the odometer or certify his knowledge that the mileage registered is incorrect. Under 49 U.S .C. § 32702 transferring ownership means changing ownership by sale, gift, or any other means. 49 C.F.R. § 580.5 interprets the Federal Odometer Act's provisions to allow the disclosure of mileage by a transferor on either or both the title and other reassignment documents. Specifically, 49 C.F.R. § 580.5(a) addresses itself to the situation where ownership is transferred prior to the issuance of title. Section 580.5(b) addresses the content requirements of the documents used to reassign title. It requires the inclusion of space to make the required disclosures as of the time of transfer of ownership. Subsection (c) articulates the transferor's ability to choose between making the requisite disclosures on the title or the documents used to reassign title. The exception to Subsection (c)'s choice allowance is the circumstance where a vehicle is titled in the name of the transferor. In that situation disclosures must be made on the title. *See* 49 C.F.R. § 580.5(c).

49 U.S.C. § 32710 creates a private right of action for a violation of the Odometer Act and provides for the recovery of either three times actual damages or $1,500, whichever is greater. Nonetheless, the Odometer Act is not a strict liability statue. Under 49 U.S.C. § 32710, a dealer is only liable to a private person if that dealer violates the Acts's requirements with the intent to defraud. *See Nigh v. Koons Buick Pontiac GMC, Inc. et al,* C.A. 00-1634-A (E.D.Va.2001) (pending publication) (May 1, 2001 Order); *Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932, 941-42 (W.D.Va.2000) ("even if [plaintiff] can show that an Odometer Act violation occurred, she cannot avoid summary judgment unless she can provide evidence sufficient to show that [the dealer] committed the violation with an intent to defraud."). The Plaintiff must also demonstrate

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

reasonable reliance on misrepresented or inaccurate information provided by a dealer in order to establish that he was defrauded. *Kline v. Nations Bank of Virginia, N.A.*, 886 F.Supp. 1285, 1286 (E.D.Va.1995).

*5 To begin, the odometer reading was properly disclosed on the Re- assignment of Title Form. More importantly however, the Plaintiffs have failed to assert or establish CFAW's specific intent to defraud them as to the mileage on the vehicle. Intent to defraud is necessary for civil liability to flow from violations of the Odometer Act. *Compton,* 121 F.Supp.2d at 941; *Oettinger v. Lakeview Motors,* 675 F.Supp. 1488, 1492-94 (E.D.Va.1988). The intent that is relevant is the intent to deceive the transferee about the accuracy of the mileage of the vehicle.

Acceptance of Plaintiff's allegations that CFAW never transferred title to the Vehicle to them would require the conclusion that ownership was never transferred. The requirement to make Odometer Act disclosures is only triggered by the transfer of ownership. Therefore, if CFAW never transferred title of the vehicle to the Tripps, there was no transfer of ownership and the Odometer Act is not applicable to the transaction. In the alternative, this Court could conclude that ownership in this transaction was passed upon the signing of the Re-assignment of Title form, which is recognized as a legitimate means of transferring title and therefore would effectuate a valid transfer of ownership. In this latter instance CFAW would have transferred ownership of the Taurus to the Tripps in a transaction governed by the strictures of the Odometer Act. However, rather than deciding this issue of state law which has gone heretofore undecided, this Court concludes that in either circumstance CFAW discharged all duties owed the Tripps as to odometer disclosure. The Defendants' motion for summary judgment is GRANTED as to the Odometer Act claims.

*Truth-in-Lending Act Violation*

The TILA is intended to function as a tool "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." *See* 15 U.S.C. § 1601(a). Section 1638(a) of the TILA requires creditors to disclose the amount financed, the total number of payments, the finance charges, the annual percentage rate, the identity of the creditor, and an itemization of the amount financed. *Id.* 12 C.F.R. § 226.17(a)(1)(b) specifies how the credit terms identified in Section 1638(a) should be disclosed to a buyer. It requires a creditor to make these disclosures "clearly and conspicuously in writing, in a form that the consumer may keep...before consummation of the transaction." *See* 12 C.F.R. § 226.17(a)(1)(b) (Regulation Z); *see also* 15 U.S.C. § 1638(a) (requiring disclosures to be made "before the credit is extended."). Consummation occurs when a consumer signs a credit contract thereby binding himself to the credit terms. *See Compton,* 121 F.Supp.2d at 936; 12 C.F.R. § 226.2(a)(13).

The credit terms disclosed to the consumer must "reflect the terms of the legal obligation of the parties." *See* 12 C.F.R. § 226.17(c)(1). In the event the creditor is uncertain of any of the required disclosures, they are to be made based on the "best information reasonably available" and the creditor is required to "state clearly that the disclosure is an estimate." *See* 12 C.F . R. § 22.17(c)(2).

*6 TILA requires the disclosure of all finance charges and disallows their inclusion in the amount financed. *See* 12 C.F.R. § 226.18. Under TILA, a finance charge is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." *See* 15 U.S.C. § 1605(a). Regulation Z defines a finance charge as a "charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or condition of the extension of credit." *See* 12 C.F.R. § 226.4(a).

Any failure to properly disclose information as required by either the TILA itself or its implementing Regulation Z, results in a technical violation of the Act. *See Walker v. College Toyota, Inc.,* 399 F.Supp. 778 (W.D.Va.1974) (Courts construe the TILA broadly so as to ensure that it will provide protection for consumers). Actual damages are the only remedy available for a dealership's failure to make timely disclosures, which is a violation of 15 U.S.C. § 1638(b). *See* 15 U.S.C. § 1640(a)(4) (indicating statutory damages are only available for violations of 1638(a)(2), (3), (4), (5), (6), and (9)).

The processing fee assessed against the Plaintiffs is charged to both credit and cash customers. *See* Doe Affidavit. Documents released in discovery reveal that CFAW, in its regular course of business, correctly included the processing fee in the amount financed. *See Alston v. Crown Auto, Inc.,* 224 F.3d 332 (4th Cir.2000). ("Because [dealer's] processing

fee is payable in comparable cash transactions...the processing fee was not a 'finance charge ." '); *Polk v. Crown Auto, Inc.*, 228 F.3d 541 (4th Cir.2000) (affirming summary judgment for the Defendant on this point).

The Tripps were provided disclosures on the Credit Contract and had the opportunity to read the contract before signing. This opportunity is sufficient to satisfy the pre-consummation requirement of TILA. *See Nigh* at *9-10,12 (When a consumer is presented with all the written disclosures on the credit contract prior to signing the contract, the consumer's opportunity however brief, to review and reject the terms satisfies TILA); *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir.2000)(*Polk I* ).

Future Finance's approval and purchase of the Credit Contract signed by the Tripps was a condition of their financing. If the financing condition had been satisfied, then Plaintiffs and Defendants would have been obligated under the terms of the contract. The fact that the financing condition never came about does not make the credit terms estimates. Additionally, the Tripps' transaction with CFAW was consummated on August 7, 1999, and if the financing condition had been met, the effective date of the transfer of title would have been August 7, 1999.

The statute makes clear that statutory damages are not available for TILA timing violations. Thus, where a dealer has violated the pre-consummation timing requirement only actual damages are available. In this circumstance the only possible actual damage would be that the car dealer's failure to make the disclosures prevented the consumer from getting a better deal. The Tripps acknowledged in depositions that they had no desire or intention to shop around. The Plaintiffs have presented no evidence of any actual damages nor have they presented evidence of detrimental reliance. Thus, they are not entitled to either actual or statutory damages. The Defendant's motion for summary judgment is GRANTED on the TILA claims.

## Conclusion

*7 The Release signed by the Tripps is unenforceable thus it does not bar the Plaintiffs' claims. However, the Plaintiffs have failed to establish the intent to defraud necessary to prevail on their Odometer Act Claims and have failed to establish either actual damages or their entitlement to statutory damages. Accordingly, the Defendants' motion for summary judgment is GRANTED and the Plaintiffs' cross-motion for summary judgment is DENIED.

The only counts of the Complaint that remain are those that assert violation of state law. This Court declines to continue its exercise of pendant jurisdiction over them. Accordingly, they are DISMISSED.

## ORDER

This matter is before the Court on the Parties' Motions for Summary Judgment. For the reasons stated in the accompanying Memorandum Opinion, the Defendants' Motion is GRANTED and the Plaintiffs' Motion is DENIED.

All other motions in this case previously taken under advisement by this Court are hereby DISMISSED as moot.

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

2001 WL 1105132 (E.D.Va.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Nicholas MALCHOW, Plaintiff,
v.
GMI ACQUISITION, INC., d/b/a Car/Truck City,
Defendant.

No. Civ.01-1662 RHK/RLE.

Oct. 1, 2002.

Thomas J. Lyons, Thomas Lyons & Associates, Saint Paul, Minnesota, and Thomas J. Lyons, Jr., P.A., Saint Paul, Minnesota, for Plaintiff.

Daniel J. Boivin and Konstandinos Nicklow, Meshbesher & Spence, Ltd., Minneapolis, Minnesota, for Defendant.

MEMORANDUM OPINION AND ORDER

KYLE, J.

Introduction

*1 This action arises out of Plaintiff Nicholas Malchow's purchase of a used truck from Defendant GMI Acquisition, Inc., doing business in the Pine City, Minnesota, area as Car/Truck City. Malchow brought suit in federal court alleging that GMI violated the Truth in Lending Act ("TILA") by (1) failing to deliver the requisite disclosures to him in a form he could keep prior to him signing the documents for the transaction and (2) treating the disclosures in the retail installment sales contract as estimates without marking them as such. Malchow also complains that GMI violated Minnesota's Motor Vehicle Retail Installment Sales Act ("MVRISA"), Minn.Stat. § 168.71(a)(1), by the manner in which it documented the transaction. Malchow further contends that GMI invaded his privacy when it caused employees of a repossession company to be sent to his father's home to locate and repossess the truck after Malchow stopped making payments to GMI.

Before the Court is GMI's Motion for a Judgment on the Pleadings or, Alternatively, for Summary Judgment. For the reasons set forth below, the Court will grant GMI's motion with respect to the TILA claim and will dismiss the pendant state law claims over which the Court has supplemental jurisdiction.

Background

On March 26, 2001, Malchow purchased a truck from GMI, agreeing to finance the purchase through the dealership. Malchow complains that the circumstances under which he signed the documents for the transaction were coercive; the sales agent for GMI held the documents to the table, preventing him from picking them up and reading them. Malchow further asserts that he did not actually receive copies of the vehicle purchase contract and retail installment contract until after he had signed them. In addition, although the sales documents indicated GMI's receipt of a $5,000 down payment that was not included in the purchase price being financed, Malchow complains that the documents failed to reflect his agreement with GMI to pay the $5,000 down payment to GMI in installments. After Malchow signed the financing documents, GMI assigned the loan to Pine City State Bank.

Malchow asserts that the retail installment contract he signed also did not reflect his agreement with GMI regarding a service contract and credit insurance. Malchow claims that GMI told him that these products were necessary to obtain financing for the vehicle but that he could cancel them after thirty days. When he tried to cancel the service contract and credit insurance, however, GMI would not let him do so. Malchow alleges that GMI told him that the bank required him to keep the service contract and insurance. Malchow went to Pine City State Bank to try to cancel the products. The bank's agent told him that it would not include credit insurance and a service contract on a loan unless the borrower (i.e., Malchow) specifically requested them. Malchow contends that the bank instructed and advised him to stop making payments to GMI on the down payment.

*2 After Malchow stopped paying installments to GMI on the down payment, GMI retained a collection agency, First National Repossessor, Inc. ("FNR"), to repossess the truck. Employees of FNR went to the home of Malchow's father. Presenting themselves as agents of the United States Census Bureau, FNR's employees began asking Malchow's father questions about his son. Malchow's father became concerned and threatened to call the sheriff, at which point the FNR employees admitted who they really worked for and why they were there. Among other things, FNR's employees told Malchow's father that Malchow was

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT

delinquent on his payments for the truck.

Analysis

I. Standard of Decision

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings may only be granted if the moving party clearly establishes that no material issue of fact remains to be resolved and the moving party is entitled to judgment as a matter of law. *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir.2001). In determining whether material issues of fact exist, the court must accept all facts pled by the non-moving party as true and draw all reasonable inferences in favor of the non-moving party. *Id.; Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c).

On a motion for summary judgment, the court must view the evidence in the record, including any affidavits submitted in support of and in opposition to summary judgment, together with whatever inferences may be reasonably drawn from that evidence, in the light most favorable to the nonmoving party. *See Graves v. Arkansas Dep't of Fin. & Admin.,* 229 F.3d 721, 723 (8th Cir.2000); *Calvit v. Minneapolis Pub. Schs.,* 122 F.3d 1112, 1116 (8th Cir.1997).

> If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*St. Jude Med. Inc. v. Lifecare Int'l., Inc.,* 250 F.3d 587, 595 (8th Cir.2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). GMI has attacked the legal sufficiency of all three causes of action asserted in Malchow's Amended Complaint. The Court begins with the TILA claim.

II. The TILA Claim

GMI presents two arguments against Malchow's TILA claim. First, GMI asserts that Malchow fails to state an actionable TILA claim because there are no damages for the alleged violations. GMI points out that Malchow has alleged no *actual* injury arising from GMI's alleged violations and seeks no *actual* damages; Malchow has requested only statutory damages, as provided for in § 1640(a)(2)(A)(i) of the TILA. GMI argues that statutory damages are not available for Malchow's claim because the provisions he alleges have been violated are not those for which statutory damages can be awarded.

*3 Second, GMI argues that its conduct toward Malchow complied with the TILA. GMI asserts that it satisfied the statutory disclosure requirements of § 1638(b), as construed in *Vang v. Morrie's Minnetonka Ford,* 2001 WL 1589614 (D.Minn. Dec. 11, 2001) (Frank, J.) and *Peter v. Village Imports Co.,* 2001 WL 1640130 (D.Minn. Oct. 9, 2001) (Doty, J.), because it presented Malchow with the required terms of the transaction before he signed the contract. GMI contends that, if Malchow had wished to, he could have taken the forms away and engaged in comparison shopping for credit terms. As for Malchow's allegation that GMI violated the TILA by treating the disclosures as "estimates" without marking them as such, GMI contends that this Court has already rejected the substance of Malchow's argument in another case. For the reasons set forth below, the Court concludes that GMI's argument regarding statutory damages is dispositive of the TILA claim.

Malchow concedes that he suffered no actual injury and incurred no actual damages as a result of GMI's alleged TILA violations; he acknowledges that he is seeking only the statutory damages described in § 1640(a)(2)(A)(i) for violations of the timing requirements set forth in 15 U.S.C. § 1638(b)(1). (Pl.'s Mem. Opp'n to Summ. J. at 20 .) The civil liability provision of the TILA, § 1640(a), states in pertinent part as follows:

> *Except as otherwise provided in this section,* any creditor who fails to comply with any requirement imposed under [15 U.S.C. §§ 1631-1649], including any requirement under section 1635 of this title, or [15 U.S.C. §§ 1666 to 1666j or §§ 1667 to 1667f] with respect to any person is liable to such person in an amount equal to the sum of-
>
> (1) any actual damage sustained by such person as a result of the failure; [and]
>
> (2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction,....
>
> * * * * *

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*... In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title,....*

15 U.S.C. § 1640(a) (emphasis added). Thus, the statutory damages authorized in subparagraph (2)(A)(i) are available for violations of any requirement of 15 U.S.C. §§ 1631-1649, "[e]xcept as otherwise provided in this section." *See Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 990 (7th Cir.), *cert. denied*, 531 U.S. 820 (2000). Malchow argues that "the failure to deliver disclosures in the manner provided by § 1638(b)(1) must be considered a failure to disclose the required terms under § 1638(a)." (Pl.'s Mem. Opp'n to Summ. J. at 21.) Hence, GMI's failure to *timely* disclose the "amount financed," "finance charge," "annual percentage rate," "total of payments," and "number, amount and due dates of payments" before extending credit to Malchow constituted a failure to disclose those terms as required by § 1638(a), triggering GMI's liability for statutory damages.

*4 The Court of Appeals for the Seventh Circuit has considered and rejected the argument Malchow makes here.

> Plaintiffs insist that information has been "disclosed" in compliance with § 1638 only if all of the TILA and all of Regulation Z have been followed. On this understanding, although the lenders informed the borrowers of correctly calculated finance charges and annual percentage rates, and made all other mandatory disclosures, they did not comply with the sections requiring these disclosures, because they did not make the disclosures in the form required by other parts of the statute and regulations. The lenders may have informed borrowers of the statutory items, plaintiffs insist, but they did not "disclose" these items. Thus, according to plaintiffs, any violation of § 1632(a), § 1638(a)(8), or § 1638(b)(1) also violates § 1638(a)(3) (which requires the lender to disclose the finance charge), § 1638(a)(4) (which requires the lender to express the finance charge as an annual percentage rate), and so on. Because § 1638(a)(3) and (a)(4) are on the list of violations eligible for statutory damages, plaintiffs say that they must prevail. Yet accepting this argument would destroy the point of § 1640(a). *What sense would it make to omit § 1632, § 1638(a)(1), (a)(2) (in part), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), and all of § 1638(b), (c), and (d) from the candidates for statutory damages if they came in through the back door on the theory that all formal shortcomings infect the disclosures of the items that are on the list?* Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a).

*Brown*, 202 F.3d at 991 (emphasis added). [FN1] Congress structured § 1638 so that the requirements of *what* a creditor must disclose are separate and distinct from the requirements of *when and how* the creditor must make those disclosures. [FN2] The plain language of § 1640(a) provides that statutory damages are available "*only* for failing to comply with *the requirements of* ... paragraph (2) ... (3), (4), (5), (6), or (9) of section 1638(a)." 15 U.S.C. § 1640(a) (emphasis added). Had Congress intended to allow the recovery of statutory damages for violations of the timing requirements of subsection 1638(b)(1), it would have included that subsection in the sentence enumerating the provisions for which statutory damages are available.

FN1. Malchow urges the Court to follow the reasoning of, *inter alia*, Judges Enslen and Hillman of the United States District Court for the Western District of Michigan, who have disagreed with Judge Easterbrook's analysis in *Brown*. *See Daenzer v. Wayland Ford, Inc.*, 193 F.Supp.2d 1030 (W.D.Mich.2002) (Enslen, J.); *Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F.Supp.2d 878 (W.D.Mich.2001) (Hillman, J.). The Court does not find their analyses persuasive and observes that, even within the Western District of Michigan, opinion is divided as to whether a violation of § 1638(b) can give rise to a claim for statutory damages. *See Kilbourn v. Candy Ford-Mercury, Inc.*, 209 F.R.D. 121, 125-28 (W.D.Mich.2002) (Quist, J.) (analyzing the reasoning in *Brown* and *Lozada* and holding that statutory damages are not available for violations of the requirements of § 1638(b)).

FN2. Indeed, Malchow acknowledges that "[p]ut simply, 15 U.S.C. § 1638(a) tells the lender *what* has to be disclosed, while 15 U.S.C. § 1638(b) tells the lender *how* to disclose it." (Pl.'s Mem. Opp'n to Summ. J. at 21 (emphasis added).)

Judge Easterbrook noted that Congress added the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

portion of § 1640(a) under consideration to the TILA "in 1980 to curtail damages awards for picky and inconsequential formal errors." *Brown,* 202 F.3d at 991 (citing the Truth in Lending Simplification and Reform Act, Pub.L. 96-221, 94 Stat. 132, 168 (1980)). He observed that "[i]t would hardly be appropriate to undo Congress' decision by reading matters of form into the substantive provisions for which statutory damages are authorized." *Id.* This Court finds Judge Easterbrook's reasoning persuasive. Applying that same analysis to the facts of this case, the Court concludes that statutory damages are not available for the TILA violations Malchow has alleged. Having failed to state a cause of action for which relief can be granted, the Court will dismiss the TILA claim with prejudice.

III. Supplemental Jurisdiction

*5 Pursuant to 28 U.S.C. § 1367(c), a district court may, under certain circumstances, decline to exercise supplemental jurisdiction over state law claims that are otherwise so related to the claim or claims in the action over which the court has original jurisdiction as to form part of the same case or controversy. 28 U.S.C. § 1367(c). The district court's power to exercise jurisdiction under § 1367(a) is ordinarily determined on the pleadings; however, "the court's decision to exercise that jurisdiction 'is one that remains open throughout the litigation.'" *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1287 (8th Cir.1998) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139-40 (1966)). In deciding whether a federal court should exercise supplemental jurisdiction after all federal claims have been resolved, the court must look to the factors set forth in § 1367(c), including whether the pendant claims raise novel or complex issues of state law, and whether they substantially predominate over the federal question claim that has been resolved. *See Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1037 (8th Cir.1999).

After the district court dismisses claims over which it has original jurisdiction, it is within the Court's discretion to dismiss the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). "[W]hen state and federal claims are joined and all federal claims are dismissed ... the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity." *American Civil Liberties Union v. City of Florissant,* 186 F.3d 1095, 1098-99 (8th Cir.1999). In this case, Malchow's claim for "intrusion upon seclusion" raises novel questions of state law with respect to a common law cause of action that is evolving and on which Minnesota's appellate courts have provided little guidance. In addition, Malchow's state statutory MVRISA claim involves issues distinct from those presented by his TILA claim. In light of the foregoing, the Court will decline to exercise supplemental jurisdiction over these claims and will dismiss them without prejudice.

Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, IT IS ORDERED that Defendant GMI Acquisition, Inc.'s Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment (Doc. No. 24) is GRANTED as to Count II of the Amended Complaint, alleging violations of the Truth in Lending Act. That claim is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that, as to Counts I and III of the Amended Complaint, the Court hereby declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, those claims are hereby DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

2002 WL 31185865 (D.Minn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jon P. COLLINS and Anita S. Collins, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
RAY SKILLMAN OLDS-GMC TRUCK, INC., and General Motors Acceptance Corporation, Defendants.

No. IP 00-1281-C-T/K.

Dec. 3, 2001.

Clifford W. Shepard, Indianapolis, IN, for Plaintiff.

Alan S. Brown, Locke Reynolds LLP, William N. Ivers, Stewart & Irwin, John C. Trimble, Lewis & Wagner, Indianapolis, IN, for Defendant.

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [FN1]

FN1. Though this Entry is a matter of public record and is being made available to the public on the court's web site, it is not intended for commercial publication either electronically or in paper form. The reason for this caveat is to avoid adding to the research burden faced by litigants and courts. Under the law of the case doctrine, the ruling or rulings in this Entry will govern the case presently before this court. *See, e.g., Trs. of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Pyramid Elec.*, 223 F.3d 459, 468 n. 4 (7th Cir.2000); *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995). However, a district judge's decision has no precedential authority and, therefore, is not binding on other courts, on other judges in this district, or even on other cases before the same judge. *See, e.g., Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir.1998) ("a district court's decision does not have precedential authority"); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir.1998) ( "district court opinions are of little or no authoritative value"); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 571 (7th Cir.1987) ("A single district court decision ... has little precedential effect. It is not binding on the circuit, or even on other district judges in the same district."). Consequently, though this Entry correctly disposes of the legal issues addressed, this court does not consider the discussion to be sufficiently novel or instructive to justify commercial publication of the Entry or the subsequent citation of it in other proceedings.

JOHN DANIEL TINDER, Judge.

*1 Plaintiffs, Jon P. Collins and Anita S. Collins, sued Defendants, Ray Skillman Olds-GMC Truck, Inc., and General Motors Acceptance Corporation ("GMAC") for damages alleging violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and Regulation B, as well as the Indiana Credit Services Organization Act ("CSOA"), Indiana Code § 24-5-15-1 *et seq.* in connection with Retail Installment Contract for the purchase of a motor vehicle. Defendant Ray Skillman filed a motion for summary judgment, and Plaintiffs filed a cross-motion for summary judgment. Plaintiffs have abandoned their claims under the ECOA, so the pending motions address only the claims under TILA and the CSOA. This entry constitutes the court's decision on these motions.

Factual Background

On or about August 16, 1999, Plaintiffs, Jon P. Collins and Anita S. Collins, purchased a motor vehicle from Defendant, Ray Skillman Olds-GMC Truck, Inc. ("Ray Skillman"). On that date, the Collinses executed a Motor Vehicle Retail Installment Contract ("Contract") for the purchase of the vehicle. Under the Contract's terms, they agreed to finance $26,585.70 for the purchase of the vehicle. They were initially offered an annual interest rate of 6.9 percent. Knowing that they could get a lower interest rate elsewhere, they rejected that offer and subsequently were offered and accepted an annual interest rate of 3.9 percent.

The Contract was presented in quadruplicate form to the Collinses for their review, approval and signature. At the time it was presented, the Contract contained the disclosures of which the substance and form are in the manner required by TILA and Regulation Z. One copy of the Contract was designated buyer's copy.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

EXHIBIT E

The Collinses did not ask for the buyer's copy or any other copy of the Contract to keep prior to signing the Contract. They were not offered to retain a copy before they signed it. The buyer's copy of the Contract was not torn off and handed to them before they signed it.

Robert Griffith, one of Ray Skillman's Business Managers, testified that if a customer were to request a copy of the Motor Vehicle Retail Installment Contract to take away with him or her prior to signing or if a customer simply attempted to leave with a copy of the contract before signing it, he or she could do so. He also testified, however, that in his experience this has never happened.

Ray Skillman applied for financing on behalf of the Collinses with GMAC. Because their credit had not yet been approved, Dale Everett, the Ray Skillman Business Manager who dealt with the Collinses, obtained their permission to keep their copy of the Contract until credit approval. Their credit was approved shortly thereafter, and they received their copy of the Contract in the mail. GMAC paid Ray Skillman for the assignment of the Contract.

The Collinses have admitted that they have not suffered any actual damages as a result of the alleged TILA violation.

*2 On September 21, 2001, the court, pursuant to the stipulation of Plaintiffs and GMAC, entered an Order Of Dismissal With Prejudice, dismissing with prejudice the cause against GMAC. Thus, Ray Skillman is the only Defendant to Plaintiffs' claims at this time.

On November 19, 2001, the court heard oral argument on the summary judgment motions. Plaintiffs indicated that they are no longer pursuing their claim under ECOA, and they have admitted that they are no longer pursuing that claim. (Pls.' Resp. Ray Skillman's Requests for Admissions No. 2.)

Discussion

Both Ray Skillman and the Collinses move for summary judgment on all claims. Summary judgment should be granted only where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.,* 242 F.3d 713, 720 (7th Cir.2001). "With cross-motions, [the] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001).

A. Claim Pursuant to TILA And Regulation Z

The Collinses claim that Ray Skillman violated TILA and implementing Regulation Z. The court finds that summary judgment motion should be granted Ray Skillman because the Collinses have no right to recover under TILA as statutory damages are unavailable for the violation alleged and they have admitted to having no actual damages. Even if the Collinses could prove actual damages, Ray Skillman would be entitled to summary judgment because they cannot prove the alleged violation.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a); *Szumny v. Am. Gen. Fin., Inc.,* 246 F.3d 1065, 1070 (7th Cir.2001). Because TILA is a remedial statute, it should be construed liberally in favor of the consumer. *See Ellis v. Gen. Motors Accept. Corp.,* 160 F.3d 703, 707 (11th Cir.1998); *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3rd Cir.1998). TILA and Regulation Z, promulgated by the Federal Reserve Board to implement TILA, require creditors to make certain disclosures in connection with consumer credit transactions. 15 U.S.C. § 1638; 12 C.F.R. § 226.18. Both Regulation Z and the Federal Reserve Board's official commentary to Regulation Z are accorded deference. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566 (1980) (explaining that the Court "has often repeated the general proposition that considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration.... This traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in setting [the statutory] machinery in motion ....") (internal quotations omitted); *Clay v. Johnson,* 264 F.3d 744, 748 (7th Cir.2001) (stating that the Federal Reserve Board's official staff commentary to Regulation Z is "dispositive" unless "demonstrably irrational") (citing

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*Milhollin*, 444 U.S. at 565); *Szumny*, 246 F.3d at 1069 (stating "Because the Federal Reserve Board is the agency charged with TILA's administration, we accord its regulation deference" and describing the official commentary to Regulation Z as an "authoritative interpretation" of TILA and Regulation Z).

*3 Plaintiffs claim that Ray Skillman failed to comply with the timing and form of disclosure requirements of TILA and Regulation Z. Thus, they allege a violation of 15 U.S.C. § 1638(b)(1) and 12 C.F.R. § 226.17(a) and (b). Ray Skillman contends it did not violate TILA.

1. No Actual Damages and No Entitlement to Statutory Damages

The Collinses have admitted that they suffered no actual damages as a result of the alleged violation, so if they have a claim for damages then it must be based on statutory damages. The Seventh Circuit's decision in *Brown v. Payday Check Advances*, 202 F.3d 987 (7th Cir.), *cert. denied*, 531 U.S. 820 (2000), compels the conclusion that no statutory damages are available for the alleged TILA violation in this case. The *Brown* plaintiffs alleged that the defendants violated § 1632(a), § 1638(a)(8) and § 1638(b)(1) and sought only statutory damages under § 1640(a)(2). *Id.* at 990-91. The Seventh Circuit said that § 1640(a) statutory damages are available in connection with disclosures under § 1638 "*only* for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 1638(a) of this title...." *Id.* at 991 (emphasis in *Brown* ). The court concluded that the word "only" "confines statutory damages to a closed list." *Id.* Because the violations alleged by the plaintiffs did not fall within that list, the Seventh Circuit held the plaintiffs were not entitled to statutory damages. *Id.* at 991-92. The court rejected the plaintiffs' attempts to use the "back door" theory that lack of compliance with §§ 1632(a), 1632(a)(8) and 1638(b)(1) is also a violation of § 1638(a)(3), § 1638(a)(4), and so on, for which statutory damages are available. *Id.* at 991. The court said: "Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a)." *Id.* Thus, *Brown* holds that statutory damages are available "only for violations of" the subsections specifically enumerated in § 1640(a). *Id.* at 991-92.

The Collinses contend that the *Brown* court erred in its statutory construction of TILA's damages provision and that the reasoning in *Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F.Supp.2d 878, 887-89 (W.D.Mich.2001) (holding that statutory damages are available under § 1640(a)(2) for violations of § 1638(b)(1)), is more complete and sound. *Brown* is controlling precedent and this court is not in a position to second guess the Seventh Circuit's decision. Arguments that the *Brown* court erred must be made at the court of appeals rather than before the district court. The Collinses maintain that the alleged violation of TILA is under § 1638(b), which governs the timing and form of disclosures, and is not itself a disclosure. This reasoning was adopted by the *Lozada* court, *see* 145 F.Supp.2d at 888, but nevertheless is at odds with *Brown*. The Collinses also attempt to show an entitlement to statutory damages under a back door theory that the alleged failure to make timely written disclosures was not a disclosure at all, but such an argument was plainly rejected in *Brown*. Neither *Jackson v. Check 'N Go of Ill., Inc.*, 193 F.R.D. 544 (N.D.Ill.2000), nor *Donnelly v. Illini Cash Advance, Inc.*, No. 00 C094, 2000 WL 1161076 (N.D.Ill. Aug. 16, 2000), lend support to Plaintiffs' claim that defendants have been unsuccessful in extending *Brown* to cases like this. In those cases the plaintiffs alleged a violation of a subsection specifically enumerated under § 1640(a)(2), namely § 1638(a)(9). *Jackson*, 193 F.R.D. at 548; *Donnelly*, 2000 WL 1161076, at *4-5.

*4 At least three other district courts have held that actual damages are the only available remedy for a violation of TILA's timing of disclosure requirement. *Tripp v. Charlie Falk Auto*, No. CIV. 3:00CV512, 2001 WL 1105132, at *6 (E.D.Va. Aug. 22, 2001) (granting summary judgment on plaintiff's claim that car dealer violated TILA's time of disclosures requirement); *Crowe v. Joliet Dodge & Union Acceptance Corp.*, No. 00 C 8131, 2001 WL 811655, at *4 (N.D.Ill. July 18, 2001) (dismissing plaintiff's claim for statutory damages for defendant's alleged failure to give disclosures in a form plaintiff could keep prior to consummation of the transaction in violation of § 1638(b)(1)); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F.Supp.2d 535, 549 (E.D.Va.2001) ("Notwithstanding the timeliness of Koons' disclosures to Nigh, Koons is also entitled to summary judgment on the timing issue because Nigh cannot demonstrate actual damages. The only remedy for failing to timely make disclosures is actual damages."). These district court decisions are consonant with the Seventh Circuit's holding in

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*Brown*. Plaintiffs argue that *Nigh's* discussion of the availability of statutory damages is dicta as the court found the creditor did not violate TILA's timing of disclosure provisions. But the court's reasoning is an alternative ground for its holding rather than dicta. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) (stating "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum"); *cf. Wilder v. Apfel*, 153 F.3d 799, 803-04 (7th Cir.1998) (referring to "dicta" as "integral elements of the analysis underlying the decision" and the "essentials" of a decision).

The court concludes that statutory damages are available "only for violations of" the subsections specifically enumerated in § 1640(a). Subsection (b)(1) of § 1638 is not specifically enumerated in § 1640(a). Thus, the court holds that statutory damages are unavailable for violations of TILA's timing and form of disclosure requirements under § 1638(b)(1) and Regulation Z, the violations alleged in this case. Because the Collinses are not entitled to statutory damages under § 1640(a) and they have admitted to having no actual damages, they cannot prevail on their TILA claim and Ray Skillman is entitled to summary judgment on that claim.

2. Refusal to Disclose in Retainable Form Prior to Consummation Not Proved

Even if the Collinses could prove actual damages or were entitled to statutory damages under TILA, summary judgment in favor of Ray Skillman would be appropriate because the Collinses cannot show that Ray Skillman violated TILA and Regulation Z. The parties agree and the court finds that the Collinses became contractually obligated when they signed the Contract. Thus, their signing of the Contract constitutes consummation of the transaction. There is no dispute that the Contract contained all required TILA disclosures before the Collinses signed it. The sole issue is whether Ray Skillman complied with the timing and form of disclosure requirements.

*5 Regulation Z which governs the form and timing of the disclosures provides in pertinent part:

(a) Form of disclosures.

(1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep....

(b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction.

12 C.F.R. § 226.17(a) and (b). Plaintiffs claim that Ray Skillman failed to comply with these requirements because even though it showed them the TILA disclosures, it did not hand them a written copy of the disclosures separate from the copy of the Contract they were to sign prior to their signing the Contract.

In arguing that a creditor is required to give the consumer a physical copy in writing of the TILA disclosures, the Collinses rely heavily on *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir.2000). In *Polk*, the car dealership explained the credit terms to the buyer but did not disclose the terms in writing in a form he could take with him. After the parties consummated the credit transaction for the sale of a truck, the dealership gave the buyer copies of the retail installment sales contracts which contained the credit terms. *Polk*, 221 F.3d at 691. The buyer alleged the dealership violated TILA and Regulation Z by not disclosing the credit terms prior to consummation of the transaction. *Id.* at 692. The district court read subpart (a) independently of subpart (b) of § 226.17 and held that TILA and Regulation Z were satisfied where the dealership made the required disclosures in some form before consummation and later made the disclosures in writing in a form the buyer could keep. *Id.* The Fourth Circuit found that the district court erred and held that the dealership was required to make the TILA disclosures to the buyer in writing in a form that he could keep before consummation of the credit transaction. *Id.* The grant of summary judgment to the dealership was reversed and the case remanded for judgment in favor of the buyer. *Id.*

Some district courts have interpreted *Polk* as requiring that a creditor give a copy of the TILA disclosures to the consumer in a form he or she can keep prior to consummation of the transaction. *See, e.g., Walters v. First State Bank*, 134 F.Supp.2d 778, 781-82 (W.D.Va.2001) (relying on *Polk* and holding bank violated Regulation Z where consumer was not given copy of credit contract which contained TILA disclosures until after she signed it); *Holley v. Gurnee Volkswagen & Oldsmobile*, No. 00 C 5316, 2001 WL 243191, at *3 (N.D.Ill. Jan. 4, 2001) (citing *Polk* and stating "car dealers must give customers a copy of the RIC they can keep before they sign it"); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 337 (W.D.Mich.2000) (stating that courts "have uniformly held that pre-consummation delivery of a copy of the disclosures is necessary to meet the requirements of the regulations" and citing *Polk* ). Even if this is a correct interpretation of *Polk*, where the credit

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

contract contains the required disclosures, nothing in *Polk*, nor for that matter TILA or Regulation Z, requires a creditor to provide a separate copy of the contract to the consumer before he or she signs it. That is, neither *Polk* nor TILA or Regulation Z requires a creditor to separate the consumer's copy of the credit contract from the other copies of the contract and give the copy to the consumer before the consumer signs the contract. Such a requirement was rejected very recently in *Diaz v. Joe Rizza Ford, Inc.*, No. 00 C 7082, 2001 WL 1360315 (N.D.Ill. Nov. 2, 2001).

*6 The evidence in *Diaz* established that the defendant car dealer used a three copy-form of the retail installment contract which contained the TILA disclosures. The terms were negotiated, then the form was filled out, and the customer had the opportunity to review the form and sign it. The top copy was then separated from the other copies and given to the customer. The plaintiff argued that this violated TILA and Regulation Z because she was not given a copy of the disclosures in a form she could keep prior to consummation. *Diaz*, 2001 WL 1360315, at *1. The court understood Regulation Z to require the car dealer to give the customer the TILA disclosures in a form she could keep before consummation of the transaction and concluded that Regulation Z was not violated. *Id.* The court said that the overriding purpose of TILA is to promote the informed use of credit and protect consumers from changes in credit terms, and found the plaintiff was informed and protected because she had taken her copy. *Id.* at *2. The court also found: "nothing to suggest that [the plaintiff] could have not taken away all three copies or the top copy ... without executing them, if she had so desired. And, she was in physical possession of all three copies when she signed." *Id.* According to the court, there was no "meaningful distinction between separation of the copies before or after [the plaintiff] signed." *Id.* Summary judgment was granted the defendant. *Id.*

*Diaz* is consistent with an interpretation of *Polk* as requiring that a creditor give a copy of the TILA disclosures to the consumer in a form he or she can keep prior to consummation of the transaction. The consumer had "her" copy of the TILA disclosures before she signed the contract, and she had an opportunity to review the terms before consummating the transaction. And, as the court in *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F.Supp.2d 535 (E.D.Va.2001), explains, *Polk* does not state that the retail installment contract cannot be the document that the consumer may keep. *Id.* at 548-49. Indeed, the Official Staff Commentary to Regulation Z provides that the disclosures may be made on the same document as the credit contract, provided they are segregated from the rest of the document. Official Staff Commentary on Regulation Z, 12 C.F.R. Pt. 226, Supp I, § 226.17 at 390.

Furthermore, the *Nigh* court is correct: *Polk* is directed to the timing of the disclosures rather than the form of the disclosures. *Nigh*, 143 F.Supp.2d at 548 ("The *Polk* court's principal holding was that a(sic) auto dealership (or other creditor) cannot give a buyer/debtor a copy of his credit terms after the consummation of a transaction; the dealer must provide a detailed disclosure of the credit terms in writing *before* consummation of the transaction."). Nothing in *Polk* addresses the meaning of the language "in a form that the consumer may keep" in Regulation Z. *Nigh*, however, does address this issue.

*7 In *Nigh*, the plaintiff-consumer claimed the defendant violated TILA and Regulation Z by failing to make the disclosures before consummation of the transaction. The plaintiff had visited the car dealership on three separate occasions in connection with the purchase of a truck. On the first visit, a representative of the dealer discussed the credit terms with him, then filled in the credit terms on a Retail Installment Sales Contract ("RISC") and had the consumer sign the RISC. The consumer returned on two occasions when the down payment was increased and an erroneous charge was removed from the RISC. The consumer signed the RISC on both occasions. *Nigh*, 143 F.Supp.2d at 539. The plaintiff claimed the defendant violated TILA and Regulation Z because it did not provide him with a copy of the credit terms before he signed the RISCs. *Id.* He also argued that contemporaneous disclosure did not serve TILA's purpose as he could not "shop" around for a better interest rate. *Id.* at 548.

The court held that giving the consumer the disclosures on the RISC before the consumer signs it complies with Regulation Z's timing requirement. *Id.* at 548-49. The court explained that the RISC contained the required disclosures, the plaintiff had the opportunity to read the RISC before signing it, and consummation did not occur until he signed the RISC. *Id.* The court said that the plaintiff could have chosen not to sign the RISC and could have taken it with him to shop for a better interest rate. *Id.* The court also held that providing the disclosures on the RISC complies with Regulation Z's form of disclosure

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

requirement. *Id.* The court rejected the claim that simply showing a consumer the disclosures on the credit contract prior to signature violates TILA and Regulation Z's timing requirements. *Nigh,* 143 F.Supp.2d at 549 & n. 3. It also rejected the argument that a creditor must provide the consumer a separate copy of the TILA disclosures before consummation of the transaction. *Id.*

Thus, *Nigh* holds that a creditor complies with the timing and form requirements of TILA and Regulation Z by providing the consumer with the required disclosures on the contract that he or she is to sign before the consumer signs the contract. *Nigh* has been followed and cited with approval in subsequent decisions. The court in *Tripp v. Charlie Falk Auto,* No. CIV. 3:00CV512, 2001 WL 1105132, at *6 (E.D.Va. Aug. 22, 2001), relied on *Nigh* and held that providing consumers the TILA disclosures on the credit contract and giving them the opportunity to review them before signing satisfies TILA and Regulation Z. The court in *Crowe v. Joliet Dodge & Union Acceptance Corp.,* No. 00 C 8131, 2001 WL 811655, at *3 (N.D.Ill. July 18, 2001), also found *Nigh's* reasoning persuasive. The court, however, denied the defendant's motion to dismiss, citing the different standards of review between the motion to dismiss in that case and the summary judgment motion in *Nigh.*

*8 Plaintiffs cite *Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932 (W.D.Va.2000), for the proposition that disclosure contemporaneous with consummation of the transaction is insufficient under TILA and Regulation Z. *Compton* does not so hold. The evidence established that the buyer signed the credit contract, consummating the transaction, before she signed the form which the car dealer contended contained the required disclosure. *Id.* at 936. In addition, the form contained an inaccurate disclosure in violation of TILA. *Id.* Moreover, the Federal Reserve Board's official commentary to Regulation Z states that the disclosures need not be made by any particular time before consummation. Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp I, § 226.17 at 392. Thus, a disclosure made only a minute before consummation complies with the timing requirements.

This court agrees that Regulation Z requires a creditor to give the consumer the TILA disclosures in a form he or she can keep before consummation of the transaction. However, like the plaintiffs in *Diaz* and *Nigh,* the Collinses have not shown that Ray Skillman failed to comply with this requirement. Ray Skillman provided the Collinses the Contract containing the TILA disclosures for their review before signing. The Contract, indisputably, was in writing, and was in quadruplicate form, with one copy designated as the buyer's copy. Thus, the TILA disclosures were in writing and, unlike Plaintiff's counsel's example at oral argument of a poster on the wall, were in a form capable of being kept or taken away. Furthermore, the Collinses have not come forward with any evidence tending to show that the TILA disclosures were not made in a form that they could keep. [FN2] To state it differently, there is no evidence that they could not have kept or taken away with them a copy of the Contract containing the TILA disclosures before they signed it. In fact, the undisputed evidence is that if they had asked for a copy to take with them or simply attempted to leave with a copy before signing, they could have done so. Because the court agrees that there is no "meaningful distinction" between separation of a consumer's copy from the other copies of a credit contract containing the TILA disclosures before or after signature, Plaintiffs' contention that Ray Skillman was required to provide them with a written copy of the disclosures separate from the copy of the Contract they were to sign prior to their signing is rejected. Moreover, TILA's purpose was fulfilled in this case as the Collinses were informed about available credit elsewhere and able to negotiate an interest rate lower than that initially offered them.

FN2. It is noted that the evidence establishes that the Collinses did not keep a copy of the Contract, but rather gave Ray Skillman their permission to keep their copy pending credit approval and received their copy in the mail a few days later. None of these facts, however, create a genuine issue as to whether the TILA disclosures were in a form that the Collinses could have kept had they chosen to do so.

The court finds that the Collinses cannot establish that Ray Skillman violated the timing and form of disclosure requirements of TILA and Regulation Z. This is another reason why Ray Skillman should be granted summary judgment on the TILA claim.

B. Claim Under CSOA

*9 Because the Collinses are no longer pursuing their claim under the ECOA and Ray Skillman is entitled to summary judgment on their claim under TILA, the court in its discretion declines to exercise

supplemental jurisdiction over the claim under the CSOA against Ray Skillman. 28 U.S.C. § 1367(c)(3). The CSOA claim is DISMISSED WITHOUT PREJUDICE to refiling in the appropriate state forum within thirty (30) days of this date.

Conclusion

For the foregoing reasons, Ray Skillman's motion for summary judgment should be GRANTED as to the claim under TILA, Plaintiffs' motion for summary judgment should be DENIED, and the court declines to exercise supplemental jurisdiction over the claim under the CSOA which should be DISMISSED WITHOUT PREJUDICE to refiling in the appropriate state forum within thirty (30) days of this date.

Plaintiffs' Motion For Class Certification is DENIED. Since the Collinses cannot prove that Ray Skillman failed to make the TILA disclosures in a form that they could keep before consummation of the transaction, they cannot establish that they are proper representatives of the class for which certification is sought.

Final judgment shall be entered accordingly.

ALL OF WHICH IS ORDERED this 3rd day of December 2001.

2001 WL 1711466 (S.D.Ind.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works