C

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Kevin CROWE Plaintiff,
v.
Joliet DODGE and Union Acceptance Corp. Defendants.

No. 00 C 8131.

July 18, 2001.

MEMORANDUM AND OPINION

HIBBLER, District J.

*1 Kevin Crowe ("Plaintiff") filed his Third Amended Complaint against Joliet Dodge ("Defendant Joliet Dodge") and Union Acceptance Corporation ("Defendant UAC") arising out of Plaintiff's purchase of an automobile through a financing contract. Plaintiff alleges violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1602 *et seq.* (Counts I(1) and C) [FN1]; the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.* (Counts II and D); rejection or revocation, 810 ILCS 5/2- 721, 5/ 2-601 *et seq.* (Counts F, G and O); breach of implied warranty of merchantability under the Magnuson-Moss Act, 15 U.S.C § 2310(d) (Count H); violation of the Federal Odometer Act, specifically the disclosure requirements, 49 U.S.C. § 32101 *et seq* . (Counts I(I) and P); violation of the Illinois Odometer Act, 625 ILCS 5/3-112.1(e) (Count J); violation of the Credit Services Organizations Act ("CSOA"), 815 ILCS 605/1 *et seq.* (Count K); common law fraud under Illinois law (Count L); ratification and acceptance of illegal conduct and/or fraud (Count M); and violation of the Illinois Sales Finance Agency Act ("ISFAA"), 205 ILCS 660 *et seq.* (Count N). Further, with his complaint, Plaintiff filed a petition for injunctive relief and declaratory judgment (doc.# 26). Defendants filed the present motion to dismiss all counts and the petition, pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 32). For the reasons noted herein, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's petition is GRANTED in part and DENIED in part.

FN1. The headings for the sixteen causes of action in the Plaintiff's complaint, the third complaint filed in this matter, switch between roman numerals and letters and skip a fifth claim, i.e. what would have been Count V or E. Needless to say, such sloppiness confuses an already poorly drafted complaint.

MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. This Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993). Because Plaintiff's allegations are taken as true, Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Hartford Fire Insurance Co. v. California,* 509 U.S. 764 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994). This Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993). However, this Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago,* 777 F.Supp. 1437, 1440 (N.D.Ill.1991).

*2 In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this court's review is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes. Fed.R.Civ.P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

FACTS AND BACKGROUND

On September 6, 2000, Plaintiff purchased a 1997



EXHIBIT E

Chevrolet Blazer from Defendant Joliet Dodge, pursuant to a financing credit agreement, i.e. the Retail Installment Contract ("RIC"). Defendant Joliet Dodge allegedly told Plaintiff the 14.95% finance rate was the best rate Defendant could obtain for Plaintiff for the vehicle. Plaintiff further alleges Defendant sold a limited warranty to Plaintiff with inconsistent representations and failed to give Plaintiff his written Truth in Lending disclosures in a timely manner. Defendant Joliet Dodge later transferred Plaintiff's consumer credit contract to Defendant UAC, a sales finance agency.

As part of the sale, Defendant Joliet Dodge provided Plaintiff with an odometer statement, which stated the vehicle's mileage. However, Defendant Joliet Dodge allegedly failed to disclose to Plaintiff the vehicle's certificate of title signed by the previous owner and did not ask Plaintiff to sign the odometer statement on the back of the title. Instead, Plaintiff alleges Defendant asked him to sign a power of attorney to complete the sale; later, Defendant Joliet Dodge allegedly obtained a new certificate of title for Plaintiff.

On September 7, Plaintiff discovered the vehicle's mileage figure is allegedly incorrect, with the actual mileage of the car being higher due to a defective odometer. Plaintiff informed Defendant Joliet Dodge of the error and malfunction on September 9 and attempted to reject and revoke acceptance of the vehicle, but Defendant refused to recognize this rejection or revocation. Soon after, Defendant Joliet Dodge allegedly explained to Plaintiff if a General Motors car dealer confirmed the odometer did not spin, then Defendant would honor Plaintiff's rejection or revocation of acceptance. Plaintiff complied with Defendant's offer and confirmed the odometer was broken; however, Defendant allegedly refused to take the car back, to cancel the RIC or to refund Plaintiff all of his money. Plaintiff wrote to Defendant UAC and explained the situation, but Defendant UAC failed to respond and react to Plaintiff's satisfaction. In response, Plaintiff filed the present complaint.

## ANALYSIS

### Truth-in-Lending Act (Counts I(1) and C)

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Walker v. Wallace Auto Sales Inc.*, 155 F.3d 927, 932 (7th Cir.1998). In keeping with this purpose, TILA requires creditors to clearly disclose finance terms under the credit transaction. *See* 15 U.S.C. § 1638(a). Despite its broad purpose of protecting consumers from being misled about the cost of credit, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997).

*3 Under its authority "to elaborate and expand the legal framework governing commerce in credit" and pursuant to TILA, the Federal Reserve Board implemented governing regulations, commonly known as Regulation Z. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980); 12 C.F.R. § 226 (1999). These regulations mandate the disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the finance charge, the annual percentage rate, total of payments, and total sale price. *See* 12 C.F.R. § 226.17(a), 226.18(b)(d)(e)(g)(j).

In the present case, Plaintiff alleges Defendant Joliet Dodge violated TILA by failing to give Plaintiff proper disclosures in a form Plaintiff could keep prior to consummation of the transaction. Compl. ¶ 10, 24. Defendant responds it fulfilled its obligations under TILA, but even if Plaintiff can establish a technical violation, he cannot establish statutory or actual damages upon which relief may be granted.

Plaintiff's allegation pleads the bare minimum required to state a claim for a TILA violation. 16 U.S.C. § 1638(b)(1)("Form and Timing of Disclosures"); *see Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir.2000); *Polk v. Crown Auto Inc.*, 221 F.3d 691, 692 (4th Cir.2000). Defendant Joliet Dodge cites a recent case from the Eastern District of Virginia to challenge *Polk*. *Bradley Nigh v. Koons Buick Pontiac GMC, Inc.*, No. Civ. A. 00-1634-A, 2001 WL 432224, at *9-10 (E.D.VA. April 20, 2001). The court in *Nigh* held *Polk* does not state the RIC cannot be the document the purchaser may keep for rate comparison shopping, i.e. the RIC alone may fulfill the TILA requirements. "(G)iving a buyer the credit terms on the form that he is to sign complies with the timing requirements of the Act.... The *Polk* court's goal was to clarify the timing issue of the statute, not to clarify the form of the disclosure (e.g. in the form of the RISC to be signed as opposed to in a separate writing)." *Nigh*, 2001 WL 432224, at *9-10. While

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

this Court finds the reasoning in *Nigh* persuasive, the *Nigh* court had a motion for summary judgment before it and relied in large part upon the plaintiff's deposition testimony and other discovery. Here, the Court has before it a motion to dismiss, with a significantly different standard of review, and the Court cannot say under this limited statement of facts, if proved, that Defendant Joliet Dodge's actions and inactions would not be a violation of TILA. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claim for actual damages.

Concerning actual and statutory damages, to establish a TILA claim, Plaintiff must plead damages. *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir.2000). Defendant asserts the TILA claim should be dismissed because Plaintiff failed to plead actual damages and is ineligible for statutory damages. Plaintiff adequately alleged actual damages. Compl. ¶ 29-31, 32(a)(1), 45-48, 48(a)(1). However, Plaintiff failed to plead statutory damages. 15 U .S.C. § 1640(a)(2).

*4 Although TILA provides for both actual and statutory damages, statutory damages are limited to certain circumstances. Section 1640 contains a provision limiting recovery of statutory damages to certain types of violations. It provides:

> [I]n connection with the disclosures referred to in section 1638 of this title, a creditor shall have limited liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) [which provides for statutory damages] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title....

15 U.S.C. § 1640(a)(4). This provision has been interpreted to mean a TILA plaintiff may recover statutory damages only if the defendant violated Sections 1635, 1638(a)(2), or any other listed subsection of 1638(a). *Grant-Davis v. Toyota on Western Inc.*, No. 95 C 0043, 1995 WL 124128, at *9 (N.D.Ill.1995). The Seventh Circuit made clear the statute confines statutory damages to this closed list and Plaintiff must allege a violation which is eligible for statutory damages in order to recover. *Brown*, 202 F.3d at 991. Further, the Seventh Circuit stated explicitly plaintiffs may not use "back door" theories to wedge their inapplicable facts into § 1640(a). *Id.* "Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a)." *Id.* Here, Plaintiff has alleged a violation of § 1638(b)(1), which is not one of the enumerated statute sections eligible for statutory damages; thus, Plaintiff has not pleaded statutory damages for the TILA violation. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's prayer for statutory relief under TILA. Compl. ¶ 32(b) and ¶ 49(b).

Illinois Consumer Fraud and Deceptive Business Practices Act (Counts II and D)

In the present case, Plaintiff alleges ICFA class action claims against Defendants arising out of the RIC with Defendant Joliet Dodge and an alleged lack of TILA disclosures and individual claims against Defendants based upon these actions as well as the defective odometer.

"Unlike TILA, the ICFA 'does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation." *Greisz v. Household Bank (Illinois)*, 8 F.Supp.2d 1031, 1043 (N.D.Ill.1998) (citing *Lanier v. Associates Finance, Inc.*, 499 N.E.2d 440, 447 (Ill.1986)). To prove a violation of the ICFA, Plaintiff must allege (1) Defendant engaged in a deceptive act or practice; (2) Defendant intended that Plaintiff rely on that deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the act proximately caused damage. *Williams v. Thomas Pontiac, Inc.*, No. 99 C 882, 1999 WL 787488, at * 3 (N.D.Ill. Sept. 24, 1999) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970-71 (7th Cir.1999)). Because TILA and Regulation Z are laws administered by the Federal Reserve Board, a "defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act." *Lanier*, 499 N.E.2d at 447.

TILA-derived claims (Complaint ¶ 35(a), 51(a))

*5 In Count II, ¶ 35(a), and Count D, ¶ 51(a), Plaintiff alleges Defendant Joliet Dodge's failure to provide him with the requisite TILA disclosures prior to the consummation of the transaction, as stated above, serves as an unfair and deceptive act under ICFA.

Defendant Joliet Dodge argues Plaintiff may not

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

recover under ICFA for an alleged TILA violation that is already addressed by both TILA and MVRISA. Defendant cites a single case to support its theory and that case is inapplicable to the present facts. *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617 (7th Cir.2000).

In *Perez*, the Seventh Circuit held the Illinois odometer fraud statute established the maximum amount that may be awarded for a vehicle's mileage, and the car buyer could not circumvent the statute to obtain a punitive award in excess of the statutory maximum, simply by joining the statutory claim with a common law fraud claim based upon the same deception. *Id.* at 624. Further, the car buyer could recover punitive damages under the common law only if the car dealer made additional misrepresentations not covered by the odometer fraud statute. *Id.* Defendant argues the holding in *Perez* prohibits Plaintiff from alleging causes of action for TILA, MVRISA and ICFA. Defendant is mistaken. The court in *Perez* stated when a statute provides for punitive awards (e.g. tripling of actual damages under the Illinois Odometer Act), a plaintiff may not bypass the legislature's intent by obtaining common law punitive damages. *Id.* "What point would the statutes serve if in the end the common law of fraud were the effective authority to award damages?" *Id.* The present matter concerns the proper pleading of causes of actions, not the correct determination of damage awards per *Perez*. Plaintiff may derive an ICFA claim from the facts surrounding its TILA claim. Thus, Defendant's objections are premature; Plaintiff eventually has to select his remedies, and if that time arrives, the holding in *Perez* will be applicable. Until then, Plaintiff may plead for relief in the alternative. Fed.R.Civ.P. 8(a). Therefore, the Court DENIES Defendants' motion to dismiss the ICFA claims derived from alleged TILA violations. Compl. ¶ 35(a), 51(a).

Defendant UAC argues Defendant Joliet Dodge's failure to show Defendant Joliet Dodge adequately complied with TILA's disclosure requirements does not automatically hold Defendant UAC liable. Under 15 U.S.C. § 1641(a), an assignee is liable for TILA violations only where the violation is apparent on the face of the documents assigned. *See Walker*, 155 F.3d at 936; *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692-93 (7th Cir.1998); *Rivera v. Grossinger Autoplex, Inc.*, No. 00 C 442, 2000 WL 796158, at *4 (N.D.Ill. June 19, 2000). "For the purposes of this section, a violation apparent on the face of the disclosure includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned ..." 15 U.S.C. § 1641(a). Defendant UAC maintains even if Defendant Joliet Dodge violated TILA by not providing Plaintiff a copy of the requisite disclosures, Defendant UAC cannot be liable because the violation was not apparent on the face of the documents Defendant Joliet Dodge assigned to it. Defendant UAC's analysis is correct. The alleged disclosure violation at issue here involves only when the TILA disclosures were made by Defendant Joliet Dodge and are not the type of disclosure violations which are "apparent on the face." *Id.* After the buyer signs a RIC and the seller/initial creditor assigns a fully executed RIC to an assignee, the assignee cannot review the "four corners" of the "document assigned" to determine if the buyer received TILA disclosures preconsummation or ascertain the number of copies of the RIC which were in the buyer's packet. *See Walker*, 155 F.3d at 936; *Taylor*, 150 F.3d at 694. Further, Plaintiff attempts to avoid the limitation on assignee under Section 1641(a) by asserting "on information and belief" that Defendant UAC had "actual knowledge" of certain "facts." From these purported facts, Plaintiff concludes Defendant UAC's knowledge of Plaintiff's alleged failure to receive timely TILA notices from Defendant Joliet Dodge. However, the inquiry under Section 1641(a) is not concerned with the assignee's "knowledge." For the assignee to be subject to ICFA liability here, the purported TILA violation must be apparent from the face of the assigned contract. *Id.; see also Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 199 (3rd Cir.2000). Plaintiff's TILA claim, i.e. the timing of the receipt of TILA disclosures, is not the type of asserted TILA violation that can satisfy this "apparent on the face" standard. Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from alleged TILA violations as they apply to Defendant UAC. Compl. ¶ 35(a), 51(a).

MVRISA-derived claims (Complaint ¶ 35(b)-(c), 51(b)-(c))

*6 In Count II, ¶ 35(b) and (c), and Count D, ¶ 51(b) and (c), Plaintiff alleges Defendants previously and presently violated the Illinois Motor Vehicle Retail Installments Sales Act (MVRISA) and therefore committed misleading and deceptive acts under ICFA. [FN2]

FN2. Plaintiff states ICFA § 2E claims against Defendant Joliet Dodge only, i.e. the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

complaint asserts no claim against Defendant UAC. (Compl.¶ 35(b); Pl.'s Resp. to Def. UAC's Mot. Dismiss at 4, n. 1.)

Section 2E of the ICFA provides that a MVRISA violation also constitutes an ICFA violation when three or more MVRISA violations, "as determined in any civil or criminal proceeding," have been committed by the violator in the same calendar year. 815 ILCS 505/2E. Based solely "on information and belief," Plaintiff alleges Defendant Joliet Dodge has such multiple convictions or violations and should thus be held liable under the fraud statute. However, the mere allegation of the single violation is insufficient.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Seventh Circuit has stated clearly that Rule 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud." *Id.* "Although the states of mind may be pleaded generally the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). Thus, Plaintiff must plead the time, place and content of the allegedly fraudulent misrepresentation, as well as the parties to that communication. *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1050 (7th Cir.1998); *see also Taylor v. Bob O'Connor Ford, Inc.,* No. 97 C 720, 2000 WL 876920, at *2 (N.D.Ill. June 29, 2000). Further, a plaintiff must plead a complaint alleging a violation of the ICFA with the same level of particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 593 (Ill.1996). In the present matter, a review of Plaintiff's third amended complaint reveals it inadequately sets forth a claim for violation of the ICFA based upon a violation of Section 2E. Plaintiff's assertion alone is insufficient to sustain a fraud cause of action; Plaintiff must cite the actual court decisions wherein Defendant was found to have violated the MVRISA. "A single violation of the Retail Installment Sales Act is not per se a violation of the Consumer Fraud Act. If it were, there would be little reason for the limitations imposed by sections 2E and 2F of the Consumer Fraud Act." *Weather-Seal-Nu-Sash, Inc., v. Marx,* 596 N.E.2d 780, 782 (3rd Dist.1992)(referring to *Lanier,* 499 N.E.2d at 448 (Simon, J., concurring)). While the Court is cognizant of the traditional pleading standards, Plaintiff's failure to identify these three prior convictions and/or violations is fatal to his Section 2E fraudulent or deceptive practices claim. Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from alleged unnamed MVRISA violations. Compl. ¶ 35(b), 51(b).

*7 Section 2F of the ICFA provides that "any person who is held in any civil or criminal proceeding to have willfully and materially violated" MVRISA is also guilty of an unlawful act under the ICFA. 815 ILCS 505/2F. Thus, a plaintiff may use a prior MVRISA conviction or violation to support an ICFA cause of action. However, only the Attorney General or the State's Attorney may bring an action for a violation of MVRISA; a private action under the ICFA depends upon the findings of the suit brought under MVRISA. *Tirado v. Z Frank, Inc.,* 522 F.Supp. 405, 408 (N.D.Ill.1981); *Hoover v. May Department Stores Co.,* 395 N.E.2d541, 545-46 (Ill.1979); *McCoy v. MTI Vacations, Inc.,* 650 N.E.2d 605, 607-08 (1st Dist.1995). Thus, a court must have previously held Defendants had "wilfully and materially" violated MVRISA if a plaintiff wishes to plead a ICFA claim under Section 2F. Further, unlike Section 2E, multiple violations of MVRISA are not required. "Under section 2F of the Consumer Fraud Act, a single [MVRISA] violation may constitute a Consumer Fraud Act violation if the [MVRISA] violation was 'willful' and 'material.'" ' *Weather-Seal-Nu- Sash, Inc.* 596 N.E.2d at 782; *see Fidelity Financial Services, Inc. v. Hicks* 574 N.E.2d 15 (Ill.1991). While multiple violations are not necessary under Section 2F, a plaintiff must cite to the prior single MVRISA conviction and/or violation in its pleading when it is filing its ICFA cause of action. *Fidelity Financial Services, Inc.* 574 N.E.2d at 20; *DiLeo,* 901 F.2d at 627; *Taylor,* 2000 WL 876920 at *2. Here, the third amended complaint fails to indicate any court has found Defendants have committed wilful and material violations of MVRISA. Thus, the Court concludes Plaintiff has failed to state a cause of action under the ICFA based upon a purported MVRISA violation. "Mere assertions of wilful and material violations of MVRISA are not adequate to obtain relief under the CFA." *Tirado,* 522 F.Supp. at 408; *see also Smith v. Sears Roebuck & Co.,* 419 N.E.2d 673 (4th Dist.1981). Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from an alleged unnamed MVRISA violation. Compl. ¶ 35(c), 51(c). Consequently, Defendant UAC is dismissed from Count II.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Credit Report and Buyers Guide claims (Complaint ¶ 51 (g) and (i))

In Count D, ¶ 51(g), Plaintiff asserts Defendant Joliet Dodge "and/or" UAC "have caused information pertaining to the delinquency of Mr. Crowe to be placed in the (sic) Mr. Crowe's credit report" and thus performed an unfair and deceptive act under ICFA. In Count D, ¶ 51(i), Plaintiff alleges Defendant Joliet Dodge failed to provide him with the federally-required Buyers Guide. Plaintiff's assertion regarding the credit report does not state a consumer fraud claim. Rather, it merely alleges a breach of contract action and Illinois courts, apparently suspicious of the motives of plaintiffs' attorneys' fees, repeatedly caution against transforming every breach of contract into consumer fraud. *Long v. Wix Auto,* No. 00 C 5842 (N.D.Ill January 4, 2001) (Mot. to Dismiss Op.)(Judge Zagel); *Golembiewski v. Hallberg Ins. Agency,* 635 N.E.2d 452, 460 (1st Dist.1994). "Every individual breach of contract between two parties... does not amount to a cause of action cognizable under the (ICFA)... If the (ICFA) did apply, then common law breach of contract actions 'would be supplemented in every case with an additional and redundant remedy." ' *Golembiewski,* 635 N.E.2d at 121 (quoting *Exchange National Bank v. Farm Bureau Life Ins. Co,* 438 N.E.2d 1247, 1250 (Ill.1982)). However, the complaint adequately pleads an ICFA claim concerning the purported failure to provide a Buyers Guide; further, the claim raises factual issues that should not be decided on a motion to dismiss. *Sorce v. Naperville Jeep Eagle, Inc.,* 722 N.E.2d 227, 232 (2nd Dist.1999). Therefore, the Court GRANTS Defendants' motion to dismiss the credit reporting claim, Compl. ¶ 51(g), and DENIES the motion to dismiss the Buyers Guide claim, Compl. ¶ 51(i).

APR representation (Complaint ¶ 51(j))

*8 In Count D, ¶ 51(j), Plaintiff asserts Defendant Joliet Dodge's finance person "affirmatively represented" to Plaintiff he would try and find the best interest rate, and "acting as Mr. Crowe's agent and fiduciary on this undertaking," he failed to deliver the lowest rate available to Plaintiff. Defendant states correctly it was not required to secure the lowest rate for Plaintiff. However, Plaintiff maintains Defendant offered to secure such a rate and this material misrepresentation offends the ICFA.

The Seventh Circuit recently held a car dealer generally does not act as the customer's agent when arranging financing and, therefore, does not owe a duty to the customer to act in his or her best interest. *Balderos v. City Chevrolet,* 214 F.3d 849, 853 (7th Cir.2000). However, this relationship between buyer and seller must be evaluated on an individual basis.

> (A)n automobile dealer is not its customers' agent, obviously not in selling cars but only a little less obviously in arranging financing. If the buyer pays cash and arranges his own financing, the dealer is not in the picture at all. If the buyer wants to buy on credit, he recognizes that his decision does not change the arms' length nature of his relation to the dealer. He knows, or at least has no reason to doubt, that the dealer seeks a profit on the financing as well as on the underlying sale. This is in general, not in every case; it is a question of fact whether the contract express or implied between a particular dealer and a particular customer constitutes the former an agent for the latter in procuring financing.

*Id.; see also American Ins. Corp. v. Sederes,* 807 F.2d 1402, 1405-06 (7th Cir.1986).

As pleaded, there is no basis to hold Defendant Joliet Dodge as a fiduciary. The complaint fails to suggest Defendant agreed to serve as Plaintiff's agent in dealing with a finance company; instead, Plaintiff concludes Defendant was "in essence, acting as Mr. Crowe's agent and fiduciary in this undertaking." Compl. ¶ 51(j). However, since questions of fact should not be decided on a motion to dismiss, the Court will allow this issue to be pursued during discovery and allow Defendant to raise it again on summary judgment, if it so chooses. *Sorce,* 722 N.E.2d at 232. Therefore, the Court DENIES Defendants' motion to dismiss the claim of misrepresenting the APR. Compl. ¶ 51(j).

Documentary fee representation (Complaint 51(l) and (m))

In Count D, ¶ 51(l) and (m), Plaintiff alleges Defendant Joliet Dodge's RIC form misrepresented the documentary fee would be paid to others when the fee would actually be retained by Defendant, ¶ 51(l), and the documentary fee was pre-printed on the form, ¶ 51(m), and thus violated the ICFA.

The documentary fee is listed under the sub-heading "Amount Paid to Others for You * WE MAY BE RETAINING A PORTION OF THIS AMOUNT". [FN3] Plaintiff maintains this sub-heading is false, i.e. no amount of the documentary fee was paid to others, and thus Defendant deceived him. However,

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Plaintiff's theory lacks merit. The sub-heading clearly states a total amount will be paid to third parties and Defendant notes with an asterisk the amount it retains. The documentary fee is so noted with an asterisk and thus the buyer knows the fee is such a retained amount.

FN3. In its response to Defendant Joliet Doge's motion to dismiss, Plaintiff misquotes this sub-heading as "Amounts Paid to Others for You." This mistake is relevant, as the actual heading states a singular amount which reflects a total or collective fund.

*9 Plaintiff relies upon *Pawlikowski v. Toyota Motor Credit Corp.*, 722 N.E.2d 767, 775 (2nd Dist.1999), to support its proposition. However, Plaintiff selectively quotes *Pawlikowski* and twists the Appellate Court's analysis. In that case, the Second District found its facts similar to *Martin v. Heinhold Commodities, Inc.*, 643 N.E.2d 734 (Ill.1994), where the Illinois Supreme Court held the defendant actively misrepresented on a commodities disclosure statement both the purpose and recipient of the charges collected from the plaintiff. *Id.* In the present case, Plaintiff fails to suggest any such active deception; rather, the captions on the RIC identify both the actual purpose and recipient of the fees. Further, the MVRISA authorizes car sellers to collect documentary fees, specifically allowing a seller in a RIC to "add a 'documentary fee' for processing documents and performing services related to closing of a sale." 815 ILCS 375/11.1. Defendant charged $48.82 for the documentary fee; the maximum fee permitted for FY 2000 was $50.48, as set by the Illinois Attorney General.

Plaintiff's allegations concerning the documentary fee are unfounded; the RIC openly and clearly itemizes the fees for licenses, titles, taxes and documentary fees and Plaintiff fails to explain how this is misleading or unfair. Therefore, the Court GRANTS Defendants' motion to dismiss the claims of misrepresenting the documentary fee. Compl. ¶ 51(l) and (m).

Vehicle's mileage representation (Complaint ¶ 51(n))

In Count D, ¶ 51(n), Plaintiff alleges when Defendant Joliet Dodge signed the odometer disclosure statement it misrepresented the actual mileage of the car and deceived Plaintiff. Defendant argues again that the Seventh Circuit's holding in *Perez v. Z Frank* applies. *Perez*, 223 F.3d at 624. However, as stated above, the Court believes *Perez* goes to selecting remedies, not pleading a cause of action, and thus does not apply at the present time. Plaintiff has adequately plead a cause of action based upon deception or fraud. Therefore, the Court DENIES Defendants' motion to dismiss the claim of misrepresenting the car's mileage. Compl. ¶ 51(n).

Rejection or Revocation (Counts F, G and O)

In Counts D (¶ 51(d)), F, G and O, Plaintiff alleges he attempted to reject or revoke acceptance of the defective car, but Defendant Joliet Dodge would not honor Plaintiff's rejection or revocation. Defendant argues the rights of rejection and revocation are not causes of actions, but instead are remedies; thus, Defendant maintains they should be dismissed as claims and instead reserved as prayers for relief.

Defendant correctly categorizes rejection and revocation as buyer's rights upon improper delivery. 810 ILCS 5/2-601 *etal.* However, these rights may convert to legitimate causes of action when a defendant has denied them as remedies earlier, i.e. the dishonor of rejection or revocation creates a separate claim. *Buechin v. Ogden Chrysler-Plymouth, Inc.*, 511 N.E.2d 1330, 1338 (2nd Dist.1987); *Presto Manufacturing Co., Inc., v. Formetal Engineeing Co.*, 360 N.E.2d 510, 513-14 (2nd Dist 1977) [FN4]; *Breitung v. Canzano*, 660 N.Y.S.2d 765, 766 (N.Y.App. Div 1997). Since the timeliness and reasonableness of Plaintiff's rejection and/or revocation are fact questions, the Court will not decide these issues on a motion to dismiss. Further, Plaintiff alleged he wrote Defendant UAC to inform it of Defendant Joliet Dodge's inaction and Defendant UAC similarly refused to honor Plaintiff's rejection and/or revocation. Compl. ¶ 51(o). These claims require factual discovery; Defendant will be permitted to renew its challenges on summary judgment. *Sorce*, 722 N.E.2d at 232. Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's causes of action for rejection and revocation in Counts D (¶ 51(n) and (o)), F, G, and O.

FN4. Plaintiff cites *Presto* for support, but incorrectly states it stands for "approving pleading rejection and revocation of acceptance as counterclaims." Pl.'s Resp. to Def. UAC Mot. To Dismiss at 27. The Appellate Court stated repeatedly rejection and revocation were defenses, rather than counterclaims. *Id.* at 514. The distinction reflects the challenge in understanding these

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

concepts in the present matter.

Breach of Implied Warranty of Merchantability under Magnuson-Moss (Counts D and H)

*10 In Counts D, ¶ 51(h) and (p), and Count H, Plaintiff alleges Defendant Joliet Dodge violated the Magnuson-Moss Act when it attempted to waive the implied warranty of merchantability in the RIC at the same time it sold Plaintiff a service contract (¶ 51(h)) and when Defendant was unable to repair the car pursuant to the warranty (¶ 51(p) and Count H).

Defendant's Buyers Order form plainly disclaims the warranty of merchantability. However, the Magnuson-Moss Act prohibits disclaimers of the implies warranty of merchantability when the supplier inters into a service contract with the purchaser. 15 U.S.C. § 2308(a)(2). Here, Defendant Joliet Dodge sold Plaintiff a service contract and was the party to the service contract. Thus, Plaintiff has sufficiently pleaded a claim as to fulfill its notice pleading requirement. Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's causes of action for breaches of the Magnuson-Moss Act in Counts D (¶ 51(h) and (p)) and H.

Illinois and Federal Odometer Acts (Counts I(I), J and P)

In Counts I(I), J [FN5] and P, Plaintiff alleges Defendant Joliet Dodge provided him with a false odometer statement of the car's mileage and failed to disclose the car's actual, higher mileage, thus violating the federal and Illinois odometer statutes. 49 U.S.C. § 32705; 625 ILCS 5/3-112.1(e). Defendant argues Plaintiff failed to allege Defendant possessed the requisite knowledge component and thus failed to state a claim. Plaintiff alleged Defendant acted "with intent to defraud" and such pleading is sufficient to sustain the odometer statute actions. The parties' factual disputes merit and require discovery. For instance, the origin of the defective odometer and the facts surrounding it are sufficiently in dispute that a motion to dismiss is precluded. *Sorce,* 722 N.E.2d at 232; *See Holley v. Gurnee Volkswagen and Oldsmobile, Inc.*, No. 00 C 5316, 2001 WL 243191, at *3 (N.D.Ill. Jan. 4, 2001). Therefore, this court cannot say under this set of facts, if proved, that Defendant's actions and inactions would not be a violation of the odometer acts. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claims. Therefore, the Court DENIES Defendants' motion to dismiss the claims under the Illinois and federal odometer acts under Counts I(I), J and P.

FN5. Plaintiff withdrew its allegations in ¶ 63(a) and 65(a): "(Defendant Joliet Dodge) altered or caused to be altered the odometer of the car with the intent to change the numbers of miles thereon".

Common Law Fraud under Illinois law (Count L)

In Count L, Plaintiff incorporates the above facts and alleges common law fraud. Defendant argues Plaintiff has failed to state a fraud with the requisite detail. As stated above, while the federal courts require notice pleading, allegations of fraud must be plead further with sufficient particularity. Fed.R.Civ.P. 9(b).

While Plaintiff appears to have simply slapped a cause of action for common law fraud onto the end of his complaint, throughout his complaint he has stated the necessary level of detail required to sustain the claim. *See* ¶ 11, 18, 51(j). For instance, to support the allegations of deception concerning the financing of the vehicle and the best available APR, Plaintiff alleged the name of Defendant's employee, what he said and when he said it. For the allegation of deception concerning the malfunctioning odometer, Plaintiff again stated the employee's name, the content of their conversation and when the conversation occurred. Therefore, the Court DENIES Defendants' motion to dismiss the common law fraud claims under Count L.

Ratification and Acceptance of Illegal Conduct and/or Fraud (Count M)

*11 In Count M, Plaintiff alleges Defendant UAC became aware of Defendant Joliet Dodge's allegedly deceptive conduct when it received Plaintiff's letter; Defendant UAC's inaction ratified this conduct and Defendant accepted the benefits of Defendant Joliet Dodge's illegal conduct and/or fraud. Defendant UAC argues "Ratification and acceptance of illegal conduct and/or fraud" are not causes of action, but rather remedies.

In violation of Rule 53 of the Local Rules of the Seventh Circuit Court of Appeals, Plaintiff cites an unpublished opinion to support his theory. [FN6] *Neece v. John Hancock Mutual Life Ins.* Co., 914 F.2d 260 (7th Cir.1990). In *Neece,* the Seventh Circuit discussed ratification as the law of principal and agent, i.e. the adoption and confirmation by the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

principal of an act or contract performed or entered into by the agent, and similarly discussed retention of benefits. *Id.* However, the court addressed these "claims" as theories of recovery in the contract dispute before it, specifically, as strategies for secondary liability, not an independent cause of action. *Id.; see also Zekman v. Direct American Marketers,* 695 N.E.2d 853, 859 (Ill.1998) ("Knowingly receiving the benefits of another's fraud... more closely resembles a form of secondary liability.") Plaintiff cites a number of cases which define and discuss agency theory, but none of these cases support his assertion there are independent causes of action for "ratification" or "acceptance of the benefits of fraud." Further, the Illinois Supreme Court stated unambiguously the ICFA does not prohibit acceptance of the benefits of fraud.

FN6. In a footnote, Plaintiff states the case is not offered for its "precedential value, but rather for its thorough discussion of Illinois law." If this were true, then Plaintiff simply would have analyzed and applied the cases cited within this unpublished opinion. Further, Plaintiff would not have discussed the facts of the case or quoted from it.

> (T)he plain language of section 2 of the (ICFA) does not include anything that makes it unlawful to knowingly receive the benefits of another's fraud. As this court stated in *Laughlin v. Evanston Hospital,* '(t)he language of the (ICFA) shows that its reach was to be limited to conduct that defrauds or deceives consumers or others.' To allow plaintiff to recover for (defendant) knowingly receiving the benefits of (another defendant's) fraud would require us to read into the statute violations that are not a part of the statutory text.... (W)e cannot extend liability to those who knowingly receive the benefits of another's fraud.

*Zekman,* 695 N.E.2d at 859 (citing *Laughlin v. Evanston Hospital,* 550 N.E.2d 986 (1990)).

"Under *Zekman*... 'knowingly receiving the benefits of another's fraud' does not violate the ICFA. Rather, the statute covers only 'actions directly done by the perpetrator of the fraud." ' *Vance v. National Benefit Assoc.,* No. 99 C 2627, 1999 WL 731764, at *5 (N.D.Ill. Aug. 30, 1999) (quoting *Zekman,* 695 N .E.2d at 859). Here, the complaint fails to allege sufficient direct involvement by Defendant UAC; Defendant UAC's only involvement was that the RIC was assigned to it after Plaintiff entered into the transaction. *Id.* While Plaintiff wrote a letter to Defendant UAC, its nonresponsiveness falls short of direct approval and authorization of the allegedly deceptive activity. *See also Franks v. Rockenbach Chevrolet Sales, Inc.,* No. 95 C 6266, 1998 WL 919714, at *2-5 (N.D.Ill,. Dec. 30, 1998). Therefore, the Court GRANTS Defendants' motion to dismiss the claims for "ratification and acceptance of illegal conduct and/or fraud" under Count M.

Illinois Sales Finance Agency Act (Count N)

*12 In Count N, Plaintiff alleges the RIC violated the SFAA on its face and Defendant UAC purchased this RIC. Defendant states there is no private cause of action and both parties agree that non-liability under TILA is a complete defense. Thus, since Defendant UAC was dismissed from the TILA-derived ICFA claims above for a lack of assignee liability on the face of the relevant document, this claim is dismissed. Further, contrary to Plaintiff's arguments, there is no private cause of action under Section 8.4 of the SFAA, the section upon which Plaintiff relied to support his claim. 205 ILCS 660/8.4. Section 8.4 delineates the criteria for the Illinois Department of Financial Institutions to evaluate applications for a license, requests for a renewal of a license, or efforts to suspend a license. The section does not list prohibited activities which empower a private citizen with a right of action under the SFAA. The Court finds the analysis and conclusion in a recent Northern District of Illinois case illustrative. *Rivera v. Grossinger Autoplex, Inc.,* No. 00 C 442, 2000 WL 796158, at *6 (N.D.Ill. June 19, 2000). In *Rivera,* the court concluded "the cause of action created in § 15.5 (of the SFAA) does not authorize a private cause of action for engaging in conduct described in § 8.4." *Id.* As in the present case, the court in *Rivera* held the plaintiff's argument that a private right of action exists for asserted violations of Section 8.4 "is without support in either the language of the statute or case law." *Id.* Therefore, the Court GRANTS Defendants' motion to dismiss the SFAA claims under Count N.

Plaintiff's motion for injunctive relief and declaratory judgment

In his petition for injunctive relief and declaratory judgment, Count D (¶ 51(e)) and Count K, Plaintiff alleges Defendant Joliet Dodge violated the Credit Services Organizations Act (CSOA). Defendant argues car dealerships are not "credit services organizations" and the provisions of the CSOA do not apply to Defendant.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

The Court explained recently why it is presently accepting the proposition the CSOA applies to car dealerships, and thereby, Defendant Joliet Dodge may be held liable for the alleged failure to comply with its requirements as a matter of law. *Harris v. Castle Motor Sales, Inc.*, No. 00 C 5455, 2001 WL 477241 (N.D.Ill May 4, 2001). The Court will repeat its analysis and conclusion below.

When a federal court applies state law, it should attempt to resolve the issue before it as if it were the highest court of the state that provides the state law. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416- 17 (7th Cir.1997); *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997). Thus, this court must attempt to predict how the Illinois Supreme Court would decide the matter. *Id.* (citing *Smith v. Equitable Life Assurance Soc'y*, 67 F.3d 611, 615 (7th Cir.1995)). However, if an Illinois Appellate Court has ruled on this issue, while not automatically binding, the Illinois court decision may control, "unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.; see also Knoblauch v. DEF Express Corp.*, 86 F.3d 684, 687 (7th Cir.1997) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S . Ct. 1776, 1783 (1967)).

*13 The CSOA is an infrequently used and rarely interpreted cause of action, and this court has little direction from Illinois' highest court and certainly no persuasive guidance. While the Illinois Supreme Court has yet to resolve the issue of whether the CSOA is applicable to car dealerships such as Defendant, that Court will soon provide some guidance, as it recently granted leave to appeal the decision of the Illinois Appellate Court, Third District, in *Midstate Siding & Window Co., Inc. v. Rogers*, 309 Ill.App.3d 610, 722 N.E.2d 1156 (Ill.App.Ct.1999); *Midstate Siding Window Co., Inc. v. Rogers*, 189 Ill.2d 661, 731 N.E.2d 765 (Ill.2000). Therefore, this court must exercise its best judgment to determine how the Illinois Supreme Court will rule on this issue.

The Illinois Appellate Court's decision presents plausible authority to hold Defendant liable under the CSOA, and Judge Guzman similarly found that court's logic persuasive in his motion to dismiss opinion in *Jaffi v. Lynch Ford*, No. 99 C 7852 (N.D.Ill Aug. 25, 2000)(minute order). However, this court is also aware of Judge Holderman's motion for summary judgment ruling in *Fogle v. William Chevrolet/GEO*, No. 99 C 5960, 2000 WL 1129983 (N.D.Ill Aug 9, 2000). Since this is a motion to dismiss and the Illinois Supreme Court presumably will hand down its decision soon, this court will not dismiss this count at this time.

Further, while the Court has granted the first two elements of Plaintiff's petition, i.e. the CSOA provides that credit services organizations must include certain disclosures in their contracts and Defendant Joliet Dodge is a credit services organization, the Court will not grant Plaintiff's request, i.e. the Court does not find Defendant failed to provide the required disclosures and thus violated the CSOA. Such factual conclusions merit discovery and the Court cannot and will not say with this bare statement of facts that Defendant's conduct would violate the CSOA. Therefore, the Court DENIES Defendants' motion to dismiss the petition for injunctive relief and declaratory judgment, Counts D (¶ 51(e)) and Count K. Further, the Court GRANTS in part and DENIES in part Plaintiff's petition for injunctive relief and declaratory judgment.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Motion to Dismiss. Plaintiff's petition is GRANTED in part and DENIED in part..

IT IS SO ORDERED.

2001 WL 811655, 2001 WL 811655 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

H

Only the Westlaw citation is currently available.

United States District Court,
D. Nebraska.

Janet WOJCIK and Oswald Lorenzo Giron, Plaintiff,
v.
COURTESY AUTO SALES, INC., a Nebraska Corporation, and CMAC, Inc., a Nebraska Corporation, Defendants.

No. 8:01CV506.

Nov. 25, 2002.

MEMORANDUM AND ORDER

JOSEPH F. BATAILLON, District Judge.

*Introduction*

*1 Before me is the plaintiffs' motion for partial summary judgment, Filing No. 36, and the defendants' motion for summary judgment, Filing No. 34. The motions are supported and opposed by briefs and by indexes of evidence, Filing Nos. 37, 35, 38.

The plaintiffs purchased a used vehicle in March 2001 from defendant Courtesy Auto Sales (Courtesy) and financed it through defendant CMAC, Inc. (CMAC). After the plaintiffs allegedly missed payments, the defendants repossessed the vehicle. The plaintiffs filed this complaint, alleging that the defendants violated the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.;* the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.;* and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* Filing No. 1. The plaintiffs also raise a state law pendent claim for conversion. *Id.* The defendants have counterclaimed for the deficiency that allegedly existed after they sold the repossessed vehicle. Filing No. 4 at 3-4.

*Factual Background*

In March 2001, plaintiff Wojcik purchased a 1992 Explorer from Courtesy. She paid $2300 down and financed the remainder of the $6995 purchase price through CMAC. Courtesy and CMAC are owed by the same individual and are located in the same building. Larry Shellenberger is the general manager of both entities. Filing No. 35, Defendants' Index of Evid., Ex. 3, Shellenberger Aff., ¶¶ 1, 13. CMAC makes direct loans to individuals to finance the purchase of used cars from Courtesy. *Id.,* ¶ 15.

The date on the one-page Nebraska Purchase Contract is March 2, 2001. *Id.,* Ex. 1, Wojcik Dep., Ex.1 (hereafter, Wojcik Dep.). The contract describes the vehicle and notes the cash price, fees, and Wojcik's down payment. A section of the contract labeled "Additional Equipment--Options or Work to Be Done" contains no handwritten or typed notations. Another section of the contract labeled "Buyer's Certification" is pre-printed. In it, the buyer certifies that the contract contains all the terms and conditions of the agreement between the buyer and the dealer and that the buyer has read the contract and received a copy. The certification also contains a "Notice to Buyer," which states, "Do not sign this instrument before you read it, or, if it contains blank spaces. You are entitled to a copy of the instrument you sign. Buyer states that the amounts shown on this instrument were quoted before he/she agreed to the sale." Finally, the certification tells the buyer that the vehicle is being sold "as is" and that the dealer "expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose." A Courtesy employee apparently showed Wojcik the contract on March 2, but she claims that she did not sign it until March 6. Wojcik Dep., 25:13-26:9. Wojcik testified that she "looked at" the contract but "didn't, like, read all the fine detail." Wojcik Dep., 24:15-19.

*2 Wojcik agreed to make thirty payments of $235.50 each. Payments were due on or before the tenth of each month. Plaintiff Giron, who is Wojcik's fiance, co-signed the promissory note but not the Nebraska purchase contract, the buyer's guide, or the limited warranty documentation. *Id.,* Exs.1-4. Wojcik and Giron stated that they signed the paperwork just before closing time on March 6, 2001. According to their deposition testimony, neither read any of the paperwork, but merely signed their names where directed by a Courtesy employee who, according to the plaintiffs, seemed to be in hurry to leave work. *Id.,* 44:5-12; Ex. 2, Giron Dep., 21:10-11, 83:24-84:11 (hereafter, Giron Dep.). Apparently, neither asked for more time to review the paperwork before signing. Woj. Dep., 76:5-23; Giron Dep., 84:12-19.

Neither Wojcik nor Giron had any credit problems before Wojcik purchased the vehicle from the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT G

defendants. *Id.*, 74:21-75:12. Neither checked on his or her own credit report before shopping for a vehicle at Courtesy. *Id.*, 90:19- 92:4. Wojcik testified that a Courtesy employee told her that because she and Giron were "so young, that we didn't have credit, and purchasing the vehicle, that every month that we were on time or whatever, that they would send us to good collection." *Id.*, 92:9-13. Wojcik and Giron did not discuss their past credit rating with any Courtesy employee. *Id.*, 92:24-93:1. No Courtesy or CMAC employee told them that the defendants could "fix" the plaintiffs' prior bad credit, even had it existed. Giron Dep., 60:17-22; 64:7-13.

The promissory note signed by the plaintiffs has a section called "Optional Credit Insurance." Wojcik Dep., Ex. 1. It states that credit insurance is not required to obtain credit and that the lender will not provide any coverage to the buyer unless the buyer wants it. The spaces for credit life and disability insurance coverages are checked, each with two typed X's. The premium quoted for the credit life insurance is $97.14 with a term of thirty months; the premium for the credit disability insurance is $248.21, also with a term of 30 months. Wojcik's signature then appears, just below a line stating, "My signature below means I want only the insurance coverages quoted above. If none are quoted, I have declined all coverages you offered." Despite the language emphasizing the optional nature of the coverage, Wojcik claims that at the time she signed, she did not know what credit life insurance was and was not given time to ask about it. She further claims that she was led to believe that the coverage was required. *Id.*, 41:21-43:19. Wojcik testified that she did not read this section of the promissory note before signing it because the defendants were rushing her out the door at closing time. *Id.*, 34:1-19; 43:20-44:12.

Just below Wojcik's first signature on the promissory note is another section stating, in boldface, the following:

*3 Notice to Consumer:

1. Do not sign this agreement before you read it.
2. You are entitled to a copy of this agreement.
3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with the law.

SIGNATURES: I AGREE TO THE TERMS SET OUT ON THE FRONT AND BACK OF THIS AGREEMENT. I HAVE RECEIVED A COPY OF THIS DOCUMENT ON TODAY'S DATE.

*Id.*, Ex. 1 at 1. A term on the back of the note labeled "PREPAYMENT" provides that a "partial prepayment will not excuse any later scheduled payments until this note is paid in full." *Id.*, at 2. Another term on the back labeled "DEFAULT" provides that a buyer defaults by failing "to make one or more payments on time or in the amount due." *Id.* Wojcik and Giron's signatures both appear on the front page of the note, along with that of Linjo Leeds, the finance manager. Wojcik testified that she did not read the promissory note before signing it, but that she did receive copies of all the paperwork she signed.

Likewise, neither Wojcik nor Giron read the Buyer's Guide before Wojcik signed it. The guide described a limited warranty in which the dealer agreed to pay 50% of the labor and 50% of the parts for covered systems that failed during the duration of the warranty. *Id.*, Ex. 2 at 1. The systems covered included the engine, the transmission/transfer case, and the drive axle. The warranty was for 360 days or 12,000 miles, whichever occurred first. The guide stated, in capital letters just above Wojcik's signature, "PRE-PURCHASE INSPECTION: ASK THE DEALER IF YOU MAY HAVE THIS VEHICLE INSPECTED BY YOUR MECHANIC EITHER ON OR OFF THE LOT." *Id.* Before the plaintiffs took possession of the vehicle, however, they neither test drove it nor had a mechanic inspect it. Nor did Giron, who has training and has been employed as a mechanic, inspect the vehicle before taking possession of it. Giron Dep., 22:10-24:21. Wojcik claims that one of Courtesy's employees orally told the plaintiffs that if any warranted repairs needed to be done and the plaintiffs could not pay for them, the cost of the repairs would be added to the end of the payments without interest. Wojcik Dep., 29:19-30:14.

Neither Wojcik nor Giron read the limited warranty. *See id.*, Ex. 3. Wojcik's signature appears twice on the document, the first time beneath a paragraph written in capital letters stating the buyer has read the limited warranty and understands it. Wojcik testified that the Courtesy employee went over what the warranty covered, but that she herself did not read or examine the warranty's provisions.

The plaintiffs allege that they had numerous problems with the vehicle after they took possession, including difficulties with the transmission, alignment, tie rods, and wheel bearings. The plaintiffs claim that the defendants breached their oral promise

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

to repair the vehicle if the plaintiffs brought it back. Giron Dep., 26:12-27:11; Wojcik Dep., 57:3-23. The plaintiffs also allege that the defendants breached the limited warranty by failing to properly repair the transmission, requiring the plaintiffs to take the vehicle to several repair shops. Wojcik Dep., 53:8-64:15. The plaintiffs say that they finally took the vehicle to the defendants and announced they would make no more payments until the defendants repaired the transmission, but that the defendants claimed they could find nothing wrong with it. *Id.*, 59:17-62:24.

*4 Wojcik claims that the plaintiffs were current on payments when the defendants repossessed the vehicle, *id.*, 64:16-19, but CMAC served the plaintiffs with a Notice to Cure Default on April 11, 2001, *id.*, Ex. 5. Wojcik testified that the plaintiffs made two payments in April 2001, the first of which was late, and then regular, on-time payments in May, June, and July. *Id.*, 45:12-46:12. Wojcik also testified, however, that she made no payment in August 2001 because she believed the two April payments put her one payment ahead, despite the "prepayment" provision quoted above. *Id.*, 128:3-25. The defendants repossessed the vehicle on September 5, 2001. The plaintiffs had driven the vehicle 8,000 miles. *Id.*, 112:5-7. After repossession, the defendants allowed Giron to take the license plates and other personal belongings from the vehicle. Wojcik testified that two children's toys, several cassette tapes, light bulbs, receipts, and insurance papers--worth approximately $50 total--were not returned to the plaintiffs after it was repossessed. *Id.*, 122:16-125:1.

### *Legal Standard*

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the non-existence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir.1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir.1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### *Discussion*
### *Count I: Truth in Lending Act*

*5 *Plaintiffs' Motion.* The plaintiffs seek partial summary judgment on their first cause of action for violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA). The plaintiffs maintain that because the defendants allegedly did not provide them in a timely manner with the disclosures which the TILA requires, the defendants are strictly liable for statutory damages.

The plaintiffs say that they took the vehicle under a closed end credit plan, which requires the creditor to make the required disclosures to the debtor before extending credit. *See* 15 U.S.C. § 1638(a) (listing the required disclosures); 15 U.S.C. § 1638(b) (stating that disclosures required in subsection (a) must be made "before the credit is extended" and in a "conspicuous[ ]" manner, "separated from all other terms, data or information"). Regulation Z, promulgated by the Federal Reserve Board to carry out the TILA, requires a creditor in a closed end credit plan to make the disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a). The creditor must

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

make the disclosures "before the consummation of the transaction," 12 C.F.R. § 226.17(b), *i.e.*, before "the time that a consumer becomes contractually obligated on a credit transaction," 12 C.F.R. § 226.2(a)(13). The plaintiffs contend that because they did not receive the required disclosures from the defendants before the agreement was consummated" but only when they signed the paperwork, the defendants technically violated the TILA and hence are liable for statutory damages.

Successful plaintiffs in an individual action may recover statutory damages for "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. § 1640(a)(2)(A)(i). With this timing argument, the plaintiffs are claiming they are entitled to statutory damages only for the alleged violation of section 1638(b). "The plaintiffs in this instance are making claims for statutory damages for non-disclosure pursuant to *15 U.S . C. § 1638(b)(1).*" Plaintiffs' Brief for Partial Summary Judgment at 12 (italics in original); *see also* Plaintiffs' Brief Opposing Defendants' Motion for Summary Judgment at 7-8.

Subsection 1638(b)(1), however, deals only with the timing and form of the disclosures required by section 1638(a). A violation of subsection 1638(b)(1) does not trigger a grant of statutory damages. The statute authorizing statutory damages, section 1640(a), states, "In connection with the disclosures referred to in section 1638 of this title, a creditor shall have liability determined under paragraph (2) [of section 1640(a) ] *only* for failing to comply with the requirements of ... (3), (4), (5), (6), or (9) of *section 1638(a)*. ..." 15 U.S.C. § 1640(a)(2)(B) (emphasis added). Since subsection 1638(b)(1) is not included in this list of sections triggering an award of statutory damages, the plaintiffs here are without a remedy for the violation they allege. "Had Congress intended to allow the recovery of statutory damages for violations of the timing requirements of subsection 1638(b)(1), it would have included that subsection in the sentence enumerating the provisions for which statutory damages are available." *Malchow v. GMI Acquisition, Inc.*, 2002 WL 31185865, *4 (D.Minn. Oct.1, 2002). Thus, even assuming that the TILA was technically violated by providing the plaintiffs with the required disclosures contemporaneously with their signatures on the promissory note, the violation is not one entitling the plaintiffs to statutory damages. [FN1] The plaintiffs' motion for partial summary judgment is therefore denied insofar as it is based on an alleged violation of the timing requirements of 15 U.S.C. § 1638(b)(1).

FN1. I specifically do not address as part of the plaintiffs' motion for partial summary judgment the issue of whether the timing of the disclosures here violated the TILA, since the unavailability of the relief the plaintiffs seek renders the issue moot. Although the Eighth Circuit has not directly addressed the issue, other courts presented with nearly identical facts are divided. *Cf., e.g., Vang v. Morrie's Minnetonka Ford,* 2001 WL 1589614, at *3-4 (D.Minn.) (TILA only requires that borrower have an opportunity to review disclosures before deciding to execute the agreement; TILA imposes no "waiting period"), *with Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir.2000) (TILA's "before consummation" requirement not satisfied by oral disclosures followed by execution of a contract and the subsequent delivery of a copy of the signed contract containing the required disclosures). I conclude that the cases finding that an opportunity to review disclosures before consummation satisfies the TILA are the better reasoned and likely would apply here. The defendants did not require the plaintiffs to sign the promissory note before the time CMAC made the required disclosures. If the plaintiffs felt rushed about signing, as they claim, nothing precluded them from taking a copy of the promissory note with them for further pre-signature review.

*6 The plaintiffs also claim that they are entitled to summary judgment because the defendants' disclosure forms violated the mandatory disclosure requirements of 15 U.S.C. § 1638(a) "by failing to state the total amount due over the term of the loan, and for listing two interest rates on the fact [sic] of the disclosure documents." Plaintiffs' Brief for Partial Summary Judgment at 13. Additionally, the plaintiffs claim that the defendants " 'packed' or added in" and then failed to disclose a prepaid finance charge and charges for credit life and disability insurance. *Id.* at 14. Section 1638(a) requires the creditor in a closed ended credit plan to express the finance charge as an "annual percentage rate" and to state the sum of the amount financed and the finance charges as the "total of payments." 15 U.S.C. § 1638(a)(2)(B)(4)-(5). The plaintiffs contend that the two interest rates given in the promissory note confused them, that they would not have agreed to the credit insurance had they been told it was optional, and that they were never told the total amount of the payments.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

The defendants respond that the promissory note which the plaintiffs signed complies with all the TILA disclosure and computation requirements. CMAC holds a small loan license from the State of Nebraska and must, as a condition of its license, comply with the TILA regulations as enforced by the Nebraska Department of Banking. CMAC apparently submitted this loan to the department for review after the plaintiffs filed suit and received a letter from the district examiner stating that all amounts for the APR, agreed rate, origination fees, and insurance premiums "were in compliance with the applicable statutes and regulations." Filing No. 35, Ex. 4 at 1. CMAC argues that since the department found that the disclosures in the promissory note met the requirements imposed by the TILA, the plaintiffs can have no claim under TILA. Further, CMAC argues that the plaintiffs are asking the court for relief even though both admit that they read none of the documentation connected to the transaction before they signed the promissory note, despite conspicuous warnings on the face of the documents to do so. "Surely, *some* responsibility lies on the Plaintiffs to at least read the warnings that TILA and other consumer protection statutes require." Defendants' Brief Opposing Plaintiffs' Motion for Partial Summary Judgment at 3 (emphasis in original).

I generally agree. In a box starting approximately a third of the way down the first page, the promissory note clearly states the annual percentage rate as 25.81%, the finance charge as $1916.65, the amount financed as $5148.35, and the total payments as $7065.00. This information plainly, conspicuously, and unambiguously fits the disclosure requirements of subsections 1638(a)(2)(B)(4)- (5) and subsection 1638(b)(1). The TILA does not make a lender responsible for a borrower's failure either to read, understand, or question such basic information as this or to heed warnings phrased in plain English that a document should not be signed until read. The plaintiffs' youth and inexperience may have accounted for their unfamiliarity with how credit transactions work, but--hard lesson that it is--youth and inexperience cannot excuse the plaintiffs' failure to read the loan documents before signing them. The plaintiffs were shown the required TILA disclosures before the transaction was consummated and had the opportunity to review them.

*7 Accordingly, the plaintiffs' motion for partial summary judgment for the defendants' alleged violation of the disclosure, form, and timing requirements of 15 U.S.C. §§ 1638(a) and (b) is denied.

*Defendants' Motion.* The defendants also move for summary judgment on the plaintiffs' TILA claim.

Courtesy argues that as a car dealership licensed by the Nebraska Motor Vehicle Dealers Licensing Board, it is not a "creditor" under the TILA. A TILA creditor is one who both 1) regularly extends consumer credit payable in more than four installments and 2) is the person to whom the debt arising from the transaction is initially payable. 15 U.S.C. § 1602(f). The plaintiffs contend, without offering any supporting authority, that because Courtesy and CMAC share facilities, management, and ownership, Courtesy must be found a creditor along with CMAC. I find, however, that Courtesy and CMAC are separate corporate entities. Because Courtesy does not itself loan money, finance purchases, charge interest, or repossess collateral upon default, it cannot be a "creditor" for purposes of the TILA or Regulation Z. I therefore grant as a matter of law Courtesy's motion for summary judgment on the plaintiffs' TILA claim.

CMAC contends that it is also entitled to summary judgment on the TILA claim. I agree.

First, because I have already found that statutory damages are not available to the plaintiffs for the alleged violation of subsection 1638(b)(1), CMAC is entitled to summary judgment on that claim.

Second, because I have already found that CMAC did not violate subsections 1638(a)(2)(B)(4)-(5), the plaintiffs cannot recover the statutory damages they request. CMAC is thus entitled to summary judgment on that claim.

Third, even if CMAC were found to have technically violated section 1638(a), the plaintiffs could not establish that they sustained any actual damage as a result of the violation. *See* 15 U.S.C. § 1640(a)(1) (consumer may recover actual damages proximately related to the creditor's violation). To recover actual damages, plaintiffs must show that they relied to their detriment on an inaccurate disclosure. *Peters v. Jim Lupient Oldsmobile,* 220 F.3d 915, 917 (8th Cir.2000). Since none of the defendants' TILA disclosures were inaccurate--and since the plaintiffs admit that they never read the disclosures, that they did not shop anywhere else for other vehicles or credit, and that they were given a copy of the disclosures contemporaneously with signing the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

note--the plaintiffs cannot establish detrimental reliance. The court would be required to find, as a matter of law, that the plaintiffs could not require actual damages under the TILA.

Accordingly, CMAC's motion for summary judgment on the plaintiffs' TILA cause of action is granted.

*Count II: Credit Repair Organizations Act*

The plaintiffs allege in their second cause of action that the defendants routinely advertise that the purchase of a car from the defendants will help consumers improve their credit record and history. The plaintiffs further allege that Courtesy made untrue and misleading representations about services it would provide to the plaintiffs in connection with credit repair services in violation of the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* (CROA). Filing No. 1, Complaint, ¶¶ 18, 20. The defendants contend, however, that the CROA does not apply to them and that they are entitled to summary judgment as a matter of law. I agree.

*8 The purpose of the CROA is to provide prospective buyers of the services of a credit repair organization, who are often consumers "of limited economic means and who are inexperienced in credit matters," 15 U.S.C. § 1679(a)(2), with "the information necessary to make an informed decision" about such a purchase, as well as to "protect the public from unfair or deceptive advertising and business practices" by credit repair organizations. 15 U.S.C. § 1679(b). Under the CROA, a "credit repair organization" sells, provides, or performs services either to improve a consumer's credit record, history, or rating or to assist or advise a consumer with respect to the consumer's credit record, history, or rating.15 U.S.C. § 1679a(3). The CROA prohibits any person from making or using untrue or misleading representations to a consumer about the services of the credit repair organization or from defrauding or deceiving a consumer about the offer or sale of the services of the credit repair organization. 15 U.S.C. § 1679b(a)(3)-(4).

A car dealership could obviously fit into the credit repair organization category. But while I agree with the assertions in the plaintiffs' responsive brief that the plaintiffs' deposition testimony shows them to be naively inexperienced in credit matters, and that in general consumer protection statutes are to be construed liberally in favor of consumers, Plainitff's Brief Opposing Defendants' Motion for Summary Judgment at 11-12, common sense alone dictates that a plaintiffs' status as an inexperienced consumer cannot convert a used car dealership into a credit repair organization. [FN2]

FN2. In fact, at least one court has said that Congress did not intend to include auto dealerships "who arrange for purchase financing ancillary to their primary business of selling and leasing motor vehicles," in the definition of a credit repair organization. *See Sannes v. Jeff Wyler Chevrolet, Inc.*, 1999 WL 33313134, * 4 (S.D.Ohio).

First, despite the allegation in the plaintiffs' complaint that Courtesy advertised its services as a credit repair organization, the plaintiffs testified that when they first started looking for a used car, they had never seen or heard any public representations by Courtesy that it offered credit repair services. The plaintiffs were therefore not lured to Courtesy by any credit repair advertising or promotion; rather, they were essentially walk-in trade. Nor have the plaintiffs offered any documentary or physical evidence that the defendants engaged in any advertising, solicitation, or promotion about credit repair services. Courtesy and CMAC were in no way similar to a company found to be a credit repair organization based upon its representations in advertising that it could obtain or provide car financing for anyone, no matter how bad his or her credit and that it could restore good credit. *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 2002 WL 215530, *3 (N.D.Ill.)
.

Second, Giron testified that he saw something on a wall at Courtesy's office about helping first time buyers build credit, but that the defendants said nothing to him about fixing his bad past credit. Giron Dep., 18:5-21, 63:18- 64:9. Wojcik also testified neither Courtesy nor CMAC said anything about her poor credit rating; rather, an employee told them that since they were young people without credit, they could build a good credit record for themselves by making their car payments on time. Wojcik Dep., 91:20-97:1. The fact of the matter is that neither Giron nor Wojcik had any credit problems to repair when they purchased the vehicle from Courtesy. Even if the advice which the employee offered the plaintiffs about building a good credit record somehow converted Courtesy and CMAC into credit repair organizations, the defendants could not be liable under the CROA because the advice was not false, misleading, fraudulent or deceptive. Making payments on time does improve a consumer's credit

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

rating.

*9 Third, even assuming the defendants were credit repair organizations and that the defendants' advice about building good credit was a prohibited practice, the defendants could not be liable under the CROA. By definition, a credit repair organization offers its services "in return for the payment of money or other valuable consideration." 15 U.S.C. § 1679a(3)(A). The documentary evidence clearly shows that the defendants did not charge the plaintiffs any additional fee for any alleged credit repair service. *See Sannes v. Jeff Wyler Chevrolet, Inc.*, 1999 WL 33313134, * 3 (S.D.Ohio).

Accordingly, the defendants' motion for summary judgment on the plaintiffs' CROA cause of action is granted as a matter of law.

*Count III: Magnuson-Moss Warranty Act*

The plaintiffs' complaint alleges that the defendants failed to honor the plaintiffs' warranty and an "implied warranty of merchantability for the vehicle's fitness for a particular use" in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (MMWA). Filing No. 1, Complaint, ¶ 23. The defendants contend they are entitled to summary judgment because the MMWA does not apply to the type of agreement between plaintiffs and the defendants.

Despite the parties' assumption that the MMWA applies to this situation, neither has addressed the jurisdictional limitations created by section 2310(d) of the MMWA. That section provides in part that a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with an obligation under a warranty or a service contract may bring a suit for damages and other legal and equitable relief in a federal district court, 15 U.S.C. § 2310(d)(1)(B), but only if each individual claim is at least $25 and the entire amount in controversy is at least $50,000 (exclusive of interests and costs), 15 U.S.C. § 2310(d)(3)(A)-(B). This minimum $50,000 amount in controversy "limits the availability of a federal forum for individual consumer actions." *Barnette v. General Motors Corp.*, 434 F.Supp. 1167, 1168 (D.Neb.1977) (plaintiff claiming damages of $7,000 for defective automobile barred from bringing suit in federal district court under the MMWA). The burden of establishing this jurisdictional amount in controversy rests on the plaintiffs. *Rose v. A & L Motor Sales*, 669 F.Supp. 75 (W.D.Pa.1988).

While the complaint does not state the exact amount of the plaintiffs' alleged damages, the documentary evidence and deposition testimony submitted in connection with the motions for summary judgment establish that the plaintiffs' alleged actual damages fall far short of $50,000 jurisdictional minimum. Further, I have already held that the plaintiffs cannot recover damages for either their TILA or CROA claims; the plaintiffs' claim for statutory and actual damages therefore cannot be considered in determining whether the plaintiffs have met the $50,000 jurisdictional requirement. Finally, the plaintiffs' attorney's fees cannot be used to meet the $50,000 amount in controversy. *See Sanford v. Ektelon/Prince Sports Group, Inc.*, 1999 WL 33537914, *7 (D.Neb.1999).

*10 Because the plaintiffs' MMWA claim thus does not meet the $50,000 amount in controversy requirement, it cannot be heard by this court. Without passing on the merits of the plaintiffs' warranty claim, I note that an individual consumer action such as this would have been better brought before a state court. Accordingly, I will grant summary judgment on the defendants' motion for summary judgment, but dismiss the plaintiffs' MMWA warranty claims without prejudice to their being brought in state court. *See Huson v. General Motors Acceptance Corp.*, 108 F.3d 172, 174 (8th Cir.1997).

Count IV: State Law Conversion

The sole remaining claim is the plaintiffs' state law conversion claim. The plaintiffs allege that when the defendants wrongfully repossessed the vehicle, they also took possession of certain items of the plaintiffs' personal property, which, apparently, the defendants have not returned. Filing No. 1, Complaint, ¶¶ 26-30.

In a situation such as this, where a federal court has dismissed all claims that fell within its original jurisdiction, the court may decline to exercise supplemental jurisdiction [FN3] over pendent state law claims. 28 U.S.C. § 1367(c). Federal courts are encouraged to "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir.1990). Given the simplicity of the conversion claim and its low dollar value, it would be inappropriate for this court to decide what is essentially a matter for the county court. Accordingly, I will grant the defendants' motion for summary judgment, but I dismiss the plaintiffs' conversion claim without prejudice subject

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

to it being brought in state court.

FN3. A federal district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

IT IS THEREFORE ORDERED:

1. The plaintiffs' motion for partial summary judgment, Filing No. 36, is denied;

2. The defendants' motion for summary judgment, Filing No. 34, is granted;

3. Counts I and II of the plaintiffs' complaint, Filing No. 1, are dismissed with prejudice, but Counts III and IV are dismissed without prejudice; and

4. Judgment for the defendants shall be entered by separate order.

2002 WL 31663298 (D.Neb.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

United States District Court, N.D. Illinois, Eastern Division.

Charmira BURNS, Plaintiff,
v.
ELMHURST AUTO MALL, INC., d/b/a Elmhurst Kia, Defendant.

No. 00 C 5732.

May 16, 2001.

MEMORANDUM OPINION AND ORDER

ANDERSEN, District J.

*1 After failing to obtain financing for a vehicle purchased by Charmira Burns (Burns), Elmhurst Auto Mall, Inc. ("Elmhurst") repossessed the vehicle. In response, Burns filed a four Count Complaint. In her Complaint, Burns alleges: a violation of the Equal Credit Opportunity Act (Count I), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II), a violation of Section 9-503 of the Uniform Commercial Code (Count III), and a violation of the Truth in Lending Act (Count IV). Pursuant to Federal Rule of Civil Procedure 12(b)(6) defendant Elmhurst Auto Mall, Inc. has brought a Motion to Dismiss Counts I, III, and IV of the Complaint. For the following reasons, the motion to dismiss is granted in part and denied in part.

BACKGROUND

For the purposes of this motion the following facts are taken as true. On March 17, 2000, Burns went to Elmhurst and decided to purchase a red Kia Sephia. At that time, Burns gave a $500 cash down payment and entered into a Retail Installment Contract ("RIC") and a Consent Rider For Inability To Finance ("Rider"). Pursuant to these agreements, Burns agreed that in the event that Elmhurst was unable to assign its rights, title and interest in the RIC to a sales finance agency, Burns was to return the vehicle to Elmhurst's place of business within two days of such notice, and Elmhurst was to return all of Burns' deposits. The Rider did not indicate that the dealership or creditor must notify her of a failure to obtain financing within a specific number of days.

Following the signing of the RIC, Burns claims that Elmhurst, through its employee, represented to her that financing for her purchase had been obtained and that she owned the car. Unbeknownst to Burns, financing had not yet been obtained for her purchase of the vehicle. Elmhurst, allegedly repossessed the vehicle before April 17, 2000, the date the first payment was due, and did not return any of Burns' down payment or personal belongings that were in the vehicle. Elmhurst never notified Burns in writing that her application for financing had been denied. In addition, Elmhurst never notified Burns in writing as to the reasons why her application for financing had been denied.

STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests whether the plaintiff has stated a claim, not whether the plaintiff will prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). In deciding a motion to dismiss, the court must assume all facts in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff. *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 648 (7th Cir.1997). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

DISCUSSION

*I. Count I: The Alleged Violation of the Equal Credit Opportunity Act*

*2 Burns alleges in Count I that Elmhurst violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., by failing to comply with the written notification requirements provided for therein. The ECOA entitles applicants to written notification of denial of credit and a statement of the reasons of such actions. See 15 U.S.C. § 1691(d)(2). Burns alleges that she did not receive a written notice from Elmhurst despite the rejection of her credit application, nor did she receive the reasons for the decision.

"Any person who regularly arranges for the extension, renewal, or continuation of credit" is charged with issuing a statement to applicants explaining why credit was denied. 15 U.S.C. § 1691a(e). Elmhurst Auto Mall regularly refers applicants to creditors and selects creditors to whom

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

EXHIBIT H

credit applications can be made. Thus, Elmhurst is included in the definition of creditor found in ECOA. However, no provision of ECOA requires a creditor who does not participate in the credit decision to separately report to the applicant.

The ECOA states that "where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed." 15 U.S.C. § 1691(d)(4). This section foresees that multiple entities may be involved, but only requires one notification to the applicant. Thus, if only one credit agency is used and the credit agency, not the automobile dealer, notifies the applicant in writing and states the reasons for the denial, the ECOA reporting requirement is met.

While Burns received several credit denial letters, it is unclear who sent the letters, when she received them and whether the letters stated the reasons as to why she was denied credit. At this stage of the litigation, it is unclear whether the credit denial letters comply with the requirements of the ECOA. However, plaintiff alleges that she was not properly notified and that the reporting requirements of the ECOA were not met. Therefore, Elmhurst's motion to dismiss Count I is denied.

II. *Count III: The Alleged Violation of Section 9-503 of the Uniform Commercial Code*

Count III alleges a violation of section 9-503 of the Uniform Commercial Code ("UCC"). Pursuant to that provision, a secured party has the right to take possession of the collateral upon default unless otherwise agreed. See 810 ILCS 5/9-503. Burns contends that she was not in default when Elmhurst engaged in self-help repossession. Thus, Burns argues, Elmhurst was not entitled to repossess her vehicle. This claim is dismissed because Elmhurst was the owner of the vehicle and had a contractual right to possess the vehicle because the contract was canceled. Further, Burns admits that she was not in default, so she cannot recover under section 9-503 of the UCC.

*3 According to the contract signed by Burns, Elmhurst could cancel the contract if financing could not be obtained. Once the credit application was rejected, Elmhurst had a contractually derived right to cancel the contract. At this point, Burns no longer had any legal interest in the vehicle. Burns does not argue that the contractual provision was invalid. Thus, Elmhurst's right to the vehicle and its ownership of the vehicle is undisputed. Elmhurst was not exercising a creditor's right to repossess a vehicle that secured a debt; Elmhurst was only repossessing its own vehicle. Therefore, Count III is dismissed.

III. *Count IV: The Alleged Violation of the Truth in Lending Act*

In Count IV, Burns alleges that Elmhurst represented to her that financing had been obtained when in fact it had not, thereby violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602 et seq. Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit practices." 15 U.S.C. § 1601(a); *Brown v. Marquette Sav. & Loan Ass'n.*, 686 f.2d 608, 612 (7th Cir.1982). Creditors must clearly and accurately reveal to consumers the cost of credit, including all finance charges. 15 U.S.C. § 1605, 1638, 1632; 12 C.F.R. § 226.18 (1995). The stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold. *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973). The disclosures made prior to the consummation of a credit transaction must accurately reflect the cost of the transaction. 15 U.S.C. §§ 1601, 1638; 12 C.F.R. § 226.17(b); *Jasper v. New Rogers Pontiac, Inc.*, No. 99 C 5195, 1999 WL 1024522 (N.D.Ill. Nov. 5, 1999).

Burns entered into a binding contract with Elmhurst. A condition subsequent was used to cancel the contract. This set of facts does not undermine the validity of the TILA disclosures. Accurate disclosures do not become violations because they are rendered inaccurate by subsequent events. "If information disclosed in accordance with [TILA] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." 15 U.S.C. § 1634. Since the disclosure was accurate when the contract was completed, the lack of available financing at the rate disclosed does not render the disclosures actionable. Thus, Burns fails to

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

state a claim under TILA, and Count IV is dismissed.

CONCLUSION

For the foregoing reasons, Elmhurst's motion to dismiss is GRANTED in part and DENIED in part. Defendant Elmhurst's motion to dismiss Count III and Count IV is GRANTED. Defendant Elmhurst's motion to dismiss Count I is DENIED.

2001 WL 521840 (N.D.Ill.), 45 UCC Rep.Serv.2d 247

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works